**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL MCCLANAHAN, ET AL.**                              **CIVIL ACTION**

**VERSUS**

**SCOTT WILSON, ET AL.**                              **NO.:   17-01720-JWD-RLB**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION FOR PROTECTIVE ORDER ASSERTING LEGISLATIVE PRIVILEGE**</u>

**MAY IT PLEASE THE COURT:**

Defendant, Councilman Scott Wilson, through undersigned counsel, respectfully submits this Memorandum in Support of his Motion for Protective Order against Plaintiffs, Michael McClanahan, Gary Chambers, and Eugene Collins. Mr. Wilson asserts that he is entitled to legislative privilege, which prohibits questioning regarding any of his mental impressions, opinions, or motives in performance of legislative functions, including chairing meetings of the East Baton Rouge Metropolitan Council.

**A.  FACTUAL BACKGROUND**

On May 10, 2017, the Metropolitan Council ("Council") for the City of Baton Rouge/ East Baton Rouge Parish ("City/Parish") convened a regularly scheduled, open and public meeting. The Council serves as the governing body for the City/Parish, and conducts such meetings in accordance with the dictates and local and state law, including Louisiana's Open Meetings Law, LSA-R.S. 42:11, *et seq*. Further, members of the public regularly attend such meetings, both to observe and to offer public comment, pursuant to rights enshrined in Louisiana's Constitution, Art. XII, § 3, and the Open Meetings Law, LSA-R.S. 42:14.

Meetings are conducted pursuant to an Agenda, prepared and distributed prior to each and every meeting both to ensure the meetings are conducted in an orderly fashion, and critically, to

1

provide notice to members of the public of Council affairs and business. The Agenda for the May 10, 2017 meeting contained 79 individual items, including three emergency items, four appointments, and sixteen items subject to public hearing.

Mr. Wilson, co-Defendant in this matter, currently serves as President Pro Tempore of the City/Parish. Among the duties of the President Pro Tempore is the responsibility to conduct meetings of the Council. This includes chairing the meeting, reading Agenda items, opening the floor to public comment, and ensuring the business of the meeting is properly conducted in accordance with local rules and ordinances, and the Open Meetings Law.

Plaintiffs in this matter, Messrs. Michael McClanahan, Gary Chambers, and Eugene Collins, were members of a group that sought to disrupt the Council over concerns regarding the death of Mr. Alton Sterling, Sr. Quoting their Petition: "A number of community members, including Plaintiffs, decided to go to the Metro Council and voice their viewpoint. In their view, the Baton Rouge government **should** *not* **return to business-as-usual** without first resolving how to respond to the killing of a member of the community by BRPD officers."[1] (emphasis added)

During their respective comments, Mr. Wilson interrupted each speaker for attempting to address matters that were neither presently before the Council nor open for public comment. With Messrs. McClanahan and Chambers, Mr. Wilson explicitly attempted to direct both men back to the Agenda item at hand, and both refused to comply. All were ultimately removed from the podium and Council chambers for disrupting the public body, presumably what Plaintiffs refer to as "business-as-usual."

Plaintiffs have filed this suit alleging violation of their constitutional rights, and seeking declaratory relief, costs, and attorney fees. They have served discovery on Defendants, including

---

[1] R.Doc. 2, ¶ 28.

fifty requests for admission, ten requests for production, and seventeen interrogatories. Defendants have responded to most, but file this Protective Order asserting that four interrogatories and four requests for admission intrude upon the motivations of Mr. Wilson in performing a legislative function. Such intrusion violates the common-law legislative privilege afforded to state and local public servants under Federal Rule of Evidence 501. Specifically, the written discovery at dispute are **Interrogatory nos. 1-4** (included in Exhibit A) and **Request for Admission nos. 5-6** and **21-22**. (included in Exhibit B).

Further, while attempting to amicably resolve discovery matters pursuant to Fed.R.Civ.P. 37(a)(1), counsel for Plaintiffs raised the prospect of Mr. Wilson's deposition, which would necessarily elicit testimony regarding Mr. Wilson's actions at the May 10 meeting. Counsel for Defendants voiced concern that Plaintiffs could attempt to circumvent the legislative privilege by seeking testimony regarding Mr. Wilson's thought processes, deliberations, and consultations with other members of City/Parish government regarding advice and guidance on legal matters and other policy considerations, including performance of the duties of the President Pro Tempore.

Accordingly, and in addition to the above mentioned discovery, Defendants urge this Honorable Court to issue a protective order preempting any **deposition** of Mr. Wilson as such would only intrude upon his thought processes and motivations in performing a legislative function, and would not lead to discovery of any facts not available though less intrusive means.

**B. LAW**

The law is clear that individual legislators are immune from liability for their legislative acts performed during legislative functions.[2] That legislative immunity gives rise to a general evidentiary privilege, allowing legislators to refuse to provide certain evidence in a civil lawsuit

---

[2] *Hall v. Louisiana*, CIV.A. 12-657-BAJ, 2014 WL 1652791, at *8 (M.D. La. Apr. 23, 2014) (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951)).

related to their legislative activities.[3] Although local and state legislators are not afforded an absolute legislative privilege like members of Congress who are afforded absolute immunity,[4] local and state legislators are, nonetheless, afforded a qualified legislative privilege.[5] Moreover, the state lawmaker's "legislative privilege is governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence."[6]

Furthermore, this Court has recognized the existence of a common law state legislative privilege that may yield in certain circumstances.[7] To determine whether legislators must disclose certain evidence, this Court "balance[d] the interest of the party seeking the evidence against the interest of the one claiming the privilege by considering the following factors:" (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.[8]

In considering these factors, "the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.'"[9] Lastly, this Court has explicitly "recognize[d] that inquiries

---

[3] *Id.*

[4] The Speech or Debate Clause of the First Amendment gives federal legislators "two distinct privileges: (1) freedom from questioning, which is in the nature of a testimonial privilege, and (2) freedom from liability, which means that reference may not be made in court to a defendant's legislative activities." *U.S. v. Swindall*, 971 F.2d 1531, 1544 (11th Cir.1992) (member of the U.S. House of Representatives); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502–03 (1975).

[5] *Hall*, 2014 WL 1652791 at *8 (citing *Rodriguez v. Pataki*, 280 F.Supp.2d 89, 93–94 (S.D.N.Y.2003); *Hobert v. City of Stafford*, 784 F.Supp.2d 732, 763 (S.D.Tex.2011) (recognizing a qualified privilege for local legislators)).

[6] *Id.* (quoting *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y.2012); *Village of Arlington*, 429 U.S. at 268 (recognizing a testimonial privilege for state legislators and severely limiting, but not foreclosing, the possibility of piercing the privilege in discriminatory-intent claims)).

[7] *Id.*

[8] *Id.* at * 9 (citing *Perez v. Perry*, No. 11–360, 2014 WL 106927, at *2 (W.D.Tex. Jan. 8, 2014)).

[9] *Id.* (citations omitted).

regarding the specific motives of individual legislators, or advice and recommendations used by those legislators to support their decision, will encourage timidity and hamper the legislative process."[10]

## C. DISCUSSION

All discovery at issue in this Protective Order constitutes a direct intrusion into Mr. Wilson's deliberative thought process while performing a legislative function. Turning to Interrogatory nos. 1-3, the "legal" basis for performing the acts in question is readily ascertainable. Louisiana has an Open Meetings Law with which the Metropolitan Council is required to comply. Further, local ordinances specify the role of the President Pro Tempore in chairing the Council meeting, and Defendants have already asserted their defense that "reasonable, view point neutral restrictions" were placed on Plaintiffs' speech.[11] The "factual" basis, as addressed below, may be surmised through less intrusive means.

Interrogatory no. 4 and Request for Admission nos. 5, 6, 21, and 22 inquire into Mr. Wilson's mental thoughts and impressions, and his motivations in performing a legislative act. Furthermore, questions of what is "germane" require a subjective analysis, and seek not a "fact" but rather Mr. Wilson's deliberations and thought processes. Finally, any deposition would almost exclusively concern Mr. Wilson's mental impressions and motivations at the May 10 meeting, or any advice he may have sought out in performing his legislative duties. Both are unacceptable intrusions upon the legislative privilege. As to any negligible facts Plaintiffs could elicit from Mr. Wilson through a deposition, at least one court has barred a deposition where legislative matters are so entwined with all other issues that "the dividing line cannot be thoughtfully maintained."[12]

---

[10] *Id.* at *10.

[11] R.Doc. 10, Seventh Defense.

[12] *Villareal v. Dallas County,* 2011 WL 4850258 at *3 (N.D.Tex. 2011).

**1. Legislative Privilege**

The Supreme Court has long recognized a legislative privilege that protects anyone acting in a legislative capacity, including staff, from incurring civil liability for or testifying about legislative acts.[13] While the privilege for members of Congress and their staffs is grounded in art. I, § 6, cl. 1 of the Constitution, state legislators hold a similar, though less expansive, privilege under federal common law.[14] The rationale behind such legislative privileges is that "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability."[15]

Further, federal common-law immunity for state legislators was recognized by the Supreme Court and then extended to "regional legislators" to the extent they act in a capacity similar to members of the state legislature.[16] Therefore, to assert a claim to legislative privilege, it is first necessary to demonstrate Defendant was performing a legislative act.

**2. Legislative Acts and Functions**

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."[17] In other words, the intent or motivation of the official performing the act has no bearing on whether the act is legislative or administrative. To determine whether an action is "legislative," this Court previously cited two tests, first set forth by this Circuit in *Hughes v. Tarrant County*:

> The first test focuses on the nature of the facts used to reach the
> given decision. If the underlying facts on which the decision is based

---

[13] *See, e.g., Gravel v. United States,* 408 U.S. 606, 615-16 (1972).

[14] *See, Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731-32 (1980).

[15] *See, Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998); *see also id.* at 55 (noting that it is not "consonant with our scheme of government for a court to inquire into the motives of legislators") (*quoting Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

[16] *Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268 at *2, *citing, Lake Country Estates, Inc., v. Tahoe Reg. Planning Agency*, 440 U.S. 391, 402-06 (1979); *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

[17] *Vaughn v. St. Helena Parish Police Jury*, 192 F.Supp.2d 562, 576 (M.D.La. 2001); *quoting, Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

> are "legislative facts," such as "generalizations concerning a policy
> or state of affairs," then the decision is legislative. If the facts used
> in the decision making are more specific, such as those that relate to
> particular individuals or situations, then the decision is
> administrative.
>
> The second test focuses on the "particularity of the impact of the
> state action." If the action involves establishment of a general
> policy, it is legislative; if the action singles out specific individuals
> and affects them differently from others, it is administrative.[18]

As to Mr. Wilson, the action at issue is chairing a meeting of Metropolitan Council, and necessarily exercising concurrent judgment in enforcing topic and time constraints, including whether public remarks being offered are germane to the Agenda item open for comment, in accordance with state and local law. All comments must be germane to the particular item on the floor. It is a general policy enforced by the chair, using his best judgment and discretion.

To the knowledge of Defendants, neither the Fifth Circuit nor its district courts has ever addressed whether chairing a public meeting constitutes a legislative act. However, one district court case held that a chairman's decision to reorder agenda items at a public meeting was entitled to legislative immunity (and necessarily constituted a legislative act).[19] The judge cited *Hughes*, noting legislative acts were shielded by immunity where the individual performing them "maintains a degree of discretion and policymaking."[20]

The Fifth Circuit clarified *Hughes* with its decision in *Craig,*[21] where it re-examined the Supreme Court's holding in *Bogan v. Scott-Harris*.[22] It observed, "The [Supreme] Court reasoned that the officials' actions were '**integral steps** in the legislative process.'"[23] (emphasis added)

---

[18] *Hall v. Louisiana*, 974 F.Supp.2d 944, 956 (M.D.La. 2013); *citing, Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).
[19] *Sullivan v. Chastain*, 2005 WL 984348 at *4 (W.D.Tex. 2005)
[20] *Id., citing, Hughes v. Tarrant County*, 948 F.2d 918, 920-21 (5th Cir. 1991).
[21] *Craig v. Police Jury Grant Parish*, 265 Fed.Appx. 185 (5th Cir. 2008).
[22] *Bogan v. Scott-Harris*, 523 U.S. 44, 53, 118 S.Ct. 966, 140, L.Ed.2d 79.
[23] *Craig,* 265 Fed.Appx. at 191; *quoting, Bogan*, 523 U.S. at 55.

Therefore, in *Craig*, the Fifth Circuit concluded that receiving a complaint from a resident, discussing the issue, holding public hearing, and passing an ordinance were *all* integral steps in the legislative process, in that they led to passage of an ordinance that, in substance, bore the hallmark of legislation.[24]

This free exercise of *discretion* plays a large role in performance of legislative acts. "The exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability."[25] The Fifth Circuit, in *Minton*, suggested the appropriate inquiry would be whether an action, "under the statutory scheme of Louisiana," involved a degree of discretion and public-policy-making traditionally associated with legislative functions or merely an administrative application of existing policies.[26]

Louisiana imposes certain enumerated requirements to which all public bodies, including the Metropolitan Council, must adhere before they may take *any action* on a legislative item.

> [E]ach public body conducting a meeting which is subject to the notice requirements of R.S. 42:19(A) shall allow a public comment period at any point in the meeting prior to action on an agenda item upon which a vote is to be taken. The governing body may adopt reasonable rules and restrictions regarding such comment period.[27] (emphasis added)

The Metropolitan Council cannot conduct business, or provide appropriate representation to the people of East Baton Rouge Parish, without orderly public comment. Because of this, local government is entitled to enforce reasonable rules and restrictions to ensure orderly progress of the meeting. Defendants in this matter urge that Mr. Wilson's actions at the May 10, 2017 Council

---

[24] *Id.* at 192.
[25] *Bogan v. Scott-Harris*, 523 U.S. 44, 53, 118 S.Ct. 966, 140, L.Ed.2d 79.
[26] *Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 135 (5th Cir. 1986); *citing, Hornsby v. Allen*, 326 F.2d 605, 608-09 (5th Cir. 1964); *Jacobson v. Tahoe Regional Planning Agency*, 558 F.2d 928, 943 (9th Cir. 1977); *Kinderhill Farm Breeding Associates v. Appel*, 450 F.Supp. 134 (S.D.N.Y. 1978); *Adler v. Lynch*, 415 F.Supp. 705 (D.Neb. 1976).
[27] La. R.S. 42:14(D).

meeting must be "legislative" in nature. They were performed under a statutory scheme in Louisiana governing the legislative process, were integral steps in that process, and required the exercise of discretion to ensure the investigatory role served by the comment period was adhered to by all attendees. Failure to enforce reasonable rules on the public comment period paralyzes the local government's ability to function, and distorts the ability of councilmembers to gather information from the public on specific items. Mr. Wilson's actions were essential to the legislative process and are therefore legislative acts.

### 3. Application of Legislative Immunity

The Supreme Court has never directly addressed whether a general legislative privilege arising from the doctrine of legislative immunity applies to local legislators.[28] But it has recognized it with other legislative actors. For example, in *Eastland*, while discussing the Speech and Debate Clause, the Court alluded to a privilege inherent in the doctrine of legislative immunity, recognizing "a private civil action…creates a distraction and forces Members to divert their time, energy, and attention form their legislative tasks to defend the litigation. Private civil actions may also be used to delay and disrupt the legislative function."[29] (emphasis added)

It was considered in a local context in *Village of Arlington Heights*.[30] That suit entailed an Equal Protection violation alleged against the municipality for denying a zoning change. Such violations necessarily entail proof of discriminatory intent or purpose by the legislative body. Such proof requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[31] The Court explained that such proof could include impact of the official action, the

---

[28] *Cunningham v. Chapel Hill, ISD*, 438 F.2d 718, 720 (E.D. Tex. 2006).
[29] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975).
[30] *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct 555, 50 L.Ed.2d 450 (1977).
[31] *Id.* at 266, 97 S.Ct. 555.

historical background of the decision, the sequence of events leading up to the decision, contemporary statements made by the decision makers, minutes from meetings, and other reports.[32] The Supreme Court noted that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government."[33]

This ambiguity has led courts to adopt different approaches to legislative privilege, depending on circuit guidance or the specific cause of action invoked. The Fifth Circuit has not endorsed a proper test by which its district courts should measure competing interests in a claim of legislative privilege. Recently, the Circuit acknowledged: "While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified. … This privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'"[34]

However, Defendant urges that this restrictive holding may arguably be dicta. The defendants in *Jefferson Community Health* asserted their legislative <u>immunity</u> as a bar to adjudication of the claim. For good measure, they apparently asserted their legislative <u>privilege</u> for the same reason. The Fifth Circuit merely concluded "this evidentiary privilege cannot bar the adjudication of a claim."[35] Further, *Jefferson Community Health* cites a district court case, *Perez,*[36] which deploys a "restricted approach" that Defendant urges may be unduly harsh for this cause of action.

---

[32] *Id.* at 266-68, 97 S.Ct. 555.
[33] *Id.* at n.18.
[34] *Jefferson Community Health Care Centers, Inc., v. Jefferson Parish Government,* 849 F.3d 615, 624 (5th Cir. 2017); *citing, Perez v. Perry,* No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (*citing Rodriguez v. Pataki*, 280 F.Supp.2d 89, 93–94 (S.D.N.Y.2003)).
[35] *Id.* at 624.
[36] *Perez v. Perry*, 2014 WL 106927 (W.D. Tex. 2014).

The restricted approach endorses a five-factor test arising out of *Rodriguez*.[37] Courts adopting this approach include *Perez* and this Court's decision in *Hall*, relied upon above in the section of law.

But a broader, more flexible approach, utilized by other district courts in the Fifth Circuit tends to merely inquire as to the degree Plaintiffs seek to intrude upon a legislator's subjective analysis, tempered with a need to obtain <u>specific facts</u> not identifiable by other means.

Defendants urge this Court to adopt the broader approach to sustaining legislative privilege in this matter. Though the reasoning of *Hall, Perez,* and *Rodriguez* is compelling, and Defendants in the alternative apply that reasoning below, those cases all concern the same type of claim: racial gerrymandering. The need to apply a stricter test to that specific claim was recently acknowledged by the Northern District of Texas in *Harding*.[38] But out of an abundance of caution, Defendant therefore offers both arguments.

(1)     <u>Broad Approach – Motivations or Facts</u>

In applying the broader approach to legislative privilege, at least one court appears to have characterized the proper inquiry as whether the discovery sought reflects "an integral part of the deliberative and communicative process of legislation."[39] *Hobart* and *Austin Lifecare* present two sides of this inquiry. In *Hobart*,[40] plaintiff raising a § 1983 action sought to depose members of the city council. She contended it was a <u>question of material fact</u> whether the local police chief was the relevant "final policymaker" in terms of municipal liability. The court found it appropriate to permit the depositions because there was no other discernible way for the plaintiff to obtain a

---

[37] *Rodriguez v. Pataki*, 280 F.Supp.2d 89, 93-94 (S.D.N.Y. 2003).
[38] *Harding v. County of Dallas, Texas,* 2016 WL 7426127 at *5 (N.D. Tex. 2016). "Having reviewed the case law, the court concludes that, <u>in the districting context</u>, the balancing approach of *Perez* and *Veasey* is the one to follow when determining whether the legislative privilege precludes plaintiffs from deposing government officials on a particular topic."
[39] *Villareal v. Dallas County*, 2011 WL 4850258 at *3 (N.D. Tex. 2011).
[40] *Hobart v. City of Stafford,* 784 F.Supp.2d 732, 763 (S.D. Tex. 2011).

key <u>fact</u> other than by deposing councilmembers,[41] and plaintiff did not seek to inquire into "*motives* or *thought processes* in the legislative process… ."[42] (court's emphasis)

Compare this with *Austin Lifecare*,[43] where plaintiff sought to depose a city council member and city employee. It was alleged the deponents "have information vital to Plaintiffs' case regarding the [City's] attempt to use the ordinance to discriminate based on viewpoint."[44] The court immediately rejected any comparison with *Hobart.* "The plaintiff [in *Hobart*] sought <u>a fact</u>. Here Plaintiffs seek the <u>subjective analysis</u> engaged in by council members in arriving at their individual decisions in casting their votes… ."[45] (emphasis added)

Though motive was key to the plaintiffs' case of viewpoint discrimination, the court recognized alternative avenues to discovering such information, including records of public proceedings, public statements of council members, and evidence provided through waiver of testimonial privilege.[46] The depositions were therefore quashed.

In *Fairchild,* the Fifth Circuit cited the Ninth Circuit's decision in *White* for the proposition that moderators must exercise discretion when speech becomes irrelevant or repetitious.[47] As observed in *White,* "Of course the point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable."[48]  Plaintiffs seek to depose Mr. Wilson, and elicit answers to their discovery identified herein, in order to divine his motivations. Such is identical to that sought in *Austin Lifecare*, and a wholly inappropriate breach of the legislative privilege. Further, there is no discernible fact Plaintiffs could uncover. "Discretion" is not quantifiable.

---

[41] *Hobart,* 784 F.Supp.2d at 765-766.
[42] *Id.*
[43] *Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268 (W.D. Tex. 2012).
[44] *Id.* at *1.
[45] *Id.* at *2.
[46] *Id.*
[47] *Fairchild v. Liberty Ind. Sch. Dist.*, 597 F.3d 747, 760, n.48; *citing, White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).
[48] *White v. City of Norwalk*, 900 F.2d at 1426.

Therefore, any inquiries are merely attempts to uncover Defendant's motives and thought processes. This broad approach has been utilized by other district courts in this Circuit.[49]

    (2)    <u>Restricted Approach – *Rodriguez* factors</u>

Courts adopting the test in *Rodriguez* deploy a more sensitive balance of interests. "The privilege must be 'strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'"[50] "To determine whether the legislative privilege precludes disclosure, a court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege."[51]

In making this determination, balancing the interest of the party seeking evidence with the interest of the one claiming privilege, courts consider five factors:

    (i)    the relevance of the evidence sought to be protected;
    (ii)    the availability of other evidence;
    (iii)    the seriousness of the litigation and the issues involved;
    (iv)    the role of government in the litigation; and
    (v)    the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.[52]

Courts weigh these factors on a case-by-case basis. This Court, seeking to determine whether evidence sought was truly "central" the outcome of the case, or if there were alternative methods to obtain the information, cited "public records under Louisiana law including the

---

[49] *See, e.g., Shreveport Chapter #237 of United Daughters of the Confederacy v. Caddo Parish Comm.*, 2018 WL 1973283 at *4 (W.D.La. 2018). "[T]he Court agrees that 'denying these Commissioners the protection of the testimonial privilege could well dissuade these and other citizens from volunteering for such local legislative bodies and would hinder the free flow of discussion that is an integral part of the democratic process employed throughout this country.'" *See also, Villareal v. Dallas County*, 2011 WL 4850258 at *3 (N.D. Tex. 2011).

[50] *Perez v. Perry*, 2014 WL 106927 at *1; *citing, Rodriguez*, 280 F.Supp.2d at 93-94; *citing, Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

[51] *Id., citing, ACORN I*, 2007 WL 2815810 at *2.

[52] *Hall v. Louisiana*, 2014 WL 1652791 (M.D. La. 2014); *citing, Perez v. Perry*, No. 11-360, 2014 WL 106927 at *2 (W.D.Tex. 2014).

legislative histories, committee minutes, and available audio and video" that defendants can provide.[53] Defendant applies the *Rodriguez* factors to this dispute.

(i/ii)    Relevance of the evidence sought, and availability of other evidence

In the present matter, Plaintiffs inquire as to Mr. Wilson's "factual and legal basis" for carrying out a legislative activity, and the process used to determine when a speaker can be removed from the council chambers.[54] The legal basis is already available. Defendants have furnished the summary of Louisiana Open Meetings Law provided to councilmembers at the start of this legislative session, when Mr. Wilson became President Pro Tempore. Facts and information made available to lawmakers *at the time of their decision* were considered worthy of disclosure by this Court.[55]

Further, as held in *Hall*, even where intent may be relevant to a cause of action, there are other, less intrusive means by which a party could obtain the requisite evidence including minutes and audio. In this case, the entirety of Mr. Wilson's tenure as President Pro Tempore is posted online, available for Plaintiffs to scrutinize. Evidence of improper enforcement of rules, or disparate treatment of speakers, should be more than readily available, without intruding into Mr. Wilson's deliberative thought processes in performing his legislative duties.

(iii/iv) Seriousness of the issues and litigation, and role of the government

Plaintiffs have alleged violations of their First Amendment rights. "The government cannot under any circumstances…restrict speech based on viewpoint, and even viewpoint-neutral

---

[53] *Id.* at *9.
[54] Plaintiff's First Set of Interrogatories, nos. 1-4.
[55] *Hall,* 2014 WL 1652791 at *10.

restrictions must be reasonable in light of the forum's purpose."[56] However, "the determination of whether any restrictions on speech were viewpoint-based turns upon the facts of each case."[57]

The facts of this case do not lend themselves to the kinds of serious deprivations that would merit intruding upon the legislative privilege, nor is there a lack of readily available evidence on which a factfinder could rely. In fact, this case concerns an isolated Council meeting wherein protestors attempted to subvert the Agenda by discussing an item not properly noticed and advertised for public comment. That is not to say that viewpoint discrimination should be dismissed lightly. However, enforcement of topic or time constraints does not invoke a "constitutional violation."[58]

Whether Mr. Wilson's honest judgment in enforcing the Louisiana Open Meetings Law was proper should be ascertainable without gross intrusion into his thought processes. Compare this with *Hall*, where plaintiffs challenged continued use of outdated electoral maps that distorted the racial composition of a judicial body, the Baton Rouge City Court. Allegations of improper boundary drawing raise profound questions about the *legitimacy* of the entire redistricting process.[59] This action simply does not lend itself to the same gravity as suppression and manipulation of the vote or judiciary.

(v)     Possibility of future timidity by government employees

Perhaps most significantly, Defendant emphasizes that this case has the profound potential to unleash a devastating impact on public servants in Louisiana. If mere allegations subject every moderator, every councilmember, and every local public official to unbridled intrusion into the

---

[56] *Fairchild*, 597 F.3d at 760.
[57] *Heaney v. Roberts,* 147 F.Supp.3d 600, 605-06 (E.D.La. 2015), *aff'd in part, rev'd in part,* 846 F.3d 795 (5th Cir. 2017).
[58] *Heaney v. Roberts,* 846 F.3d 795, 802 (5th Cir. 2017); *citing, Crawford-El v. Britton,* 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).
[59] *Harding,* 2016 WL 7426127 at *6; *citing, Committee for a Fair & Balanced Map*, 2011 WL 4837508 at *8.

deliberative process in performing legislative acts, the result would dramatically impair the ability of local officials to conduct a public meeting in line with topic, time, and decorum constraints, without risk of an intrusive suit.

In *Hall*, it was held that "inquiries regarding the specific motives of individual legislators, or advice and recommendations used by those legislators to support their decision, will encourage timidity and hamper the legislative process."[60] The legislative privilege was held to apply to any documents or information that contains or involves opinions, motives, recommendations, or advice about legislative decisions between legislators or with their staffs. "The privilege therefore also applies to any information that would reveal such opinions and motives."[61]

In this instance, Plaintiffs seek to directly intrude into Mr. Wilson's thought processes, inquiring into his deliberations and motivations in performing a legislative function. They make no pretense of doing anything otherwise, and as discussed above, a deposition cannot and will not lead to the disclosure of any facts essential to this case. Moderators must exercise *discretion*.[62] Again, "[o]f course the point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable."[63]

It simply is not cognizable that this cause of action necessarily justifies violation of every protection of the legislative privilege. Government could not function if legislators were subject to the burdens of civil litigation for simply carrying out their duties to the best of their ability. And there is ample evidence already available to the parties.

---

[60] *Hall,* 2014 WL 1652791 at *10.
[61] *Id.*
[62] *Fairchild,* 597 F.3d at 760.
[63] *White v. City of Norwalk*, 900 F.2d at 1426.

### D.  CONCLUSION

This Honorable Court, in considering legislative immunity, recognized that "A private civil action, whether for an injunction or damages, **creates a distraction** and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation."[64] (emphasis added) As Justice Thomas opined for a unanimous Supreme Court, "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. Furthermore, the **time and energy required to defend against a lawsuit are of particular concern at the local level**, where the part-time **citizen-legislator** remains commonplace."[65] (emphasis added)

The same concerns apply to the legislative privilege. Mr. Wilson is the quintessential "citizen-legislator." And chairing a meeting of the Metropolitan Council, and exercising the concurrent judgment and discretion, is a thoroughly legislative function. In fact, it is a necessity under Louisiana's Open Meetings Law, where efficient stewardship of the public comment period ensures local government can function.

Mr. Wilson's motivations, deliberations, and thought processes are safeguarded by this privilege. They should not be intruded upon by Plaintiffs through invasive and intrusive discovery. Accordingly, Defendants pray this Honorable Court grants a Protective Order as to the above-identified discovery, including any deposition of Mr. Wilson.

---

[64] *Vaughn v. St. Helena Police Jury*, 192 F.Supp.2d 562, 576 (M.D.La. 2001); *quoting, Supreme Court of Virginia, supra* n.14; *citing, Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975).
[65] *Bogan, supra* n. 22, at 44-45.

BY ATTORNEYS:
LEA ANNE BATSON
PARISH ATTORNEY

/s/ Davis Rhorer, Jr.
DAVIS RHORER, JR. (#37519)
Assistant Parish Attorney
Deelee S. Morris (#28775)
Special Assistant Parish Attorney
Candace Ford (#37686)
Assistant Parish Attorney
Tedrick K. Knightshead (#28851)
First Assistant Parish Attorney
222 St. Louis Street, 9th Floor
Baton Rouge, LA 70802
Telephone: (225) 389-3114
Facsimile:   (225) 389-8736
Email: dsrhorer@brla.gov
Email: dsmorris@brgov.com
Email: cford@brla.gov
Email: tknightshead@brgov.com

## CERTIFICATE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Protective Order, Alternatively Motion to Extend Discovery Deadline was this date electronically filed with the Clerk of Court using the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

Baton Rouge, Louisiana this 18th day of August 2018.


        /s/ Davis Rhorer, Jr.
        DAVIS RHORER, JR.