UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL McCLANAHAN, *et al.*

CIVIL ACTION

VERSUS

NO. 17-1720-JWD-RLB

SCOTT WILSON, ET AL.


MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE*

This case is about a May 10, 2017, Baton Rouge Metro Council meeting. At that meeting,

Defendant Scott Wilson ordered police to remove three Black community leaders during their

public comment. Mr. Wilson ordered police to remove them within seconds of mentioning

"Alton Sterling" or the Baton Rouge Police Department. By contrast, video recordings show that

Mr. Wilson commonly allow members of the public to speak off-topic without forcibly removing

them – so long as those speakers do not mention Alton Sterling or criticize the police

department.

The Fifth Circuit in *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) has provided

the framework for analyzing whether Defendants violated Plaintiffs' constitutional rights.

According to the Fifth Circuit, "It is beyond cavil that a reasonable government official [chairing

a city council meeting] would have known that it would be impermissible under the First

Amendment to prevent Heaney from speaking and to eject him from the meeting based on the

message he was conveying." *Id*. at 802. For that reason, the "pivotal question" in a case like this

is Mr. Wilson's motive in removing the Plaintiffs from the meeting. *Id.*

In the pre-trial order, Defendants proffer a number of exhibits and witnesses that are not

relevant to this "pivotal question." They offer Facebook, Instagram, and blog posts that might

speak to Plaintiffs' state of mind, but say nothing about Mr. Wilson's motive. They offer news

articles as exhibits (and the journalists who wrote them as witnesses!), even though these articles

were published *after* the May 10 meeting, and so can not shed any light as to Mr. Wilson's

1

motive *during* the meeting. These exhibits and witnesses should be excluded as non-relevant.

Other exhibits and witnesses should be excluded because of Defendants' failure to comply with the Federal Rules of Civil Procedure and this Court's orders. For example, Defendants added <u>seventeen</u> new witnesses to the Pre-Trial Order who had never been mentioned before in initial disclosures or other discovery. Not only did Plaintiffs not have an opportunity to depose these witnesses, Plaintiffs literally have no idea who some of these people are. This is precisely the "trial by surprise" that the Federal Rules abhor.

Here, Plaintiffs move to exclude five categories of exhibits and witnesses:

1. Defendants' Social Media and News as irrelevant, not produced in discovery, and without any possible foundation because Mr. Wilson has chosen not to testify.

2. Any testimony and documents offered to establish Plaintiffs' intent or motives, as Plaintiffs' intent is not a legal question at issue per *Heaney*.

3. Any witnesses not listed on Defendant's initial disclosures.

4. Law enforcement witness Lt. Jonathan Dunnam, as he has no relevant, non-cumulative testimony to offer.

5. Lt. Dunnam's text message to Scott Wilson, as Mr. Wilson cannot testify as to the foundation necessary to trigger the "effect on the listener" exception to hearsay.

This is a bench trial, and so there is of course no need to be concerned about confusion or prejudice involving a jury. The purpose of this motion *in limine,* however, is to promote the efficiency of trial – which will already be complicated by the fact that it is to be conducted via videoconferencing. It will also reduce the cost of trial to all parties, as the parties will not have to prepare for witnesses and evidence that do not need to be at issue. For these reasons and those described herein, Plaintiffs respectfully ask this Court to grant their *Motion in Limine*.

**STATEMENT OF RELEVANT FACTS**

**I.  Violation of Plaintiffs' Constitutional Rights at The May 10, 2017 Baton Rouge Metro Council Meeting.**

On May 3, 2017, the U.S Department of Justice announced that it was closing its investigation into the killing of Alton Sterling by officers of the Baton Rouge Police Department.[1] The Baton Rouge Metro Council then held a meeting on May 10, 2017.[2] Defendant Scott Wilson presided over and ran the May 10, 2017 meeting.[3] During that meeting, Mr. Wilson ordered the police to remove each one of the Plaintiffs during their public comment.

During Mr. McClanahan's public comment, Mr. Wilson ordered police officers to "take him out" less than one second after Mr. McClanahan said the words "Alton Sterling."  During Mr. Chambers public comment, Mr. Wilson ordered the police to remove Mr. Chambers when he uttered the phrase "police department" eight seconds into his comment.  And Mr. Collins was only at the microphone for 2.5 seconds – and had barely begun to speak – when Mr. Wilson also ordered police to "take him out."

By contrast, Mr. Wilson has allowed other members of the public to speak completely off-topic without removal – so long as they do not mention "Alton Sterling" or criticize the police.

**II.  This Action.**

**A.  The Complaint**

In response to Mr. Wilson's actions violating their Constitutional rights, Plaintiffs' filed this action on December 12, 2017.[4]  Plaintiffs' asserted that by Mr. Wilsons' actions at the May 10, 2017 meeting violated Plaintiffs' rights under the First Amendment to be free from viewpoint

---

[1] Uniform Pretrial Order (Dkt. 31), Established Facts, ¶ 1.
[2] *Id.*, ¶2.
[3] *Id.*, ¶4.
[4] *See* Dkt. 1.

discrimination.[5]  Plaintiffs' also asserted that Mr. Wilsons' actions at the May 10, 2017 meeting

violated their rights under the Fourteenth Amendment to be free from discrimination on the basis

of race.[6]  And Plaintiffs' asserted that Mr. Wilsons' actions at the May 10, 2017 meeting violated

Plaintiffs' rights under the Louisiana Constitution to be from interference with fundamental

rights to speech and freedom.[7]

### B.  Defendants' Initial Disclosures

Defendants' filed their first answer on February 26, 2018[8] and an amended Answer on May

22, 2018.[9]  Defendants served initial disclosures that identified seven individuals as "Defendants'

Witness List":  Scott Wilson, three BRPD officers, and the three Plaintiffs.[10]  Defendants did not

produce any documents with their initial disclosures.

### C.  Plaintiffs' Discovery and Defendants' Responses.

On June 5, 2018, Plaintiffs served their first set of discovery on Defendants.  Plaintiffs served

a request for production that sought "[a]ll documents and communications related to the May 10,

2017 Metro Council meeting circulated prior to the meeting reviewed by Defendants."[11]

Defendants provided responsive documents to this request.[12]

Plaintiffs also served multiple discovery requests, including interrogatories, that sought

Mr. Wilson's intent, motives, and thought process behind the removal of the Plaintiffs during the

May 10, 2017 Metro Council meeting.  Mr. Wilson refused to respond to these requests,

---

[5] *See* Dkt. 2.

[6] *See id*.

[7] *See id.*; *Haney v. Roberts*, 846 F.3d 795, 801, fn.2 (5th Cir. 2017) ("Louisiana's constitutional protection of free speech mirrors that of the First Amendment, so separate determinations of the state and federal claims are unnecessary.")

[8] R. Doc. 10.

[9] R. Doc. 17.

[10] *See* Defendants' Initial Disclosures, attached as Exhibit "A".

[11] *See* Plaintiffs' First Set of Requests for Production, June 5, 2018, Request No. 7 (emphasis added), attached as Exhibit "B".

[12] *See* Defendants' Responses to Requests for Production, attached as Exhibit "C".

asserting "legislative privilege." The parties stipulated to a protective order[13] that prevented

Plaintiffs' from conducting discovery from Mr. Wilson regarding his motivation and thought

process in removing Plaintiffs from the May 10, 2017 Metro Council meeting.[14] In turn,

Defendants agreed that "Mr. Wilson shall not testify at trial in this matter on any topic in any

capacity."[15]

### D.  The Parties' Uniform Pretrial Order

On August 24, 2020, the Parties filed their Uniform Pretrial Order.[16]  Defendants in that

referred to a wide range of documents never before produced, including Facebook, Instagram,

and blog posts, along with TV, newspaper, and radio coverage. *E.g.,* Defendants' Trial Exhibits

11 – 35, 39 –40, and D52 – D53 ("Social Media and News Exhibits"). Defendants also identified

seventeen witness not previously disclosed on Defendants' initial disclosures:  Casey Cashio;

Ashley Beck; Dr. Daniel Burch; Ann Moore; Jennifer Harding; Janet Mulder; Brett Buffington;

Stephanie Riegel; Andrea Gallo; Hilary Scheinuk; Rachel Thomas; Russel Kelly; Phillip Lillard;

Janice Weber; Dan Weber; Don Ortega; and Jim Mora (collectively, "Defendants' Untimely

Disclosed Witnesses").[17]

### ANALYSIS

Plaintiffs move to exclude Defendants' Social Media and News Exhibits because

Plaintiffs' intent is not relevant in this matter and there is no evidence to suggest that Mr. Wilson

reviewed and considered the Exhibits prior to the May 10, 2017 Metro Council Meeting.

Plaintiffs also move to exclude Defendants' Untimely Disclosed Witnesses because

Defendants' failure to disclose the witnesses pursuant Rule 26 has prejudiced Plaintiffs and is

---

[13] Plaintiffs do not concede that legislative privilege protects Mr. Wilson from discovery, but consented to the entry of the protective order.  *See* Dkt. 30.
[14] *See* Dkt. 30.
[15] *Id.* (emphasis added).
[16] *See* Dkt. 110.
[17] *Compare Id.*, at 13-14 *with* Defendants' Initial Disclosures, Ex. A.

nothing more than trial by surprise, which the Federal Rules of Civil Procedure are intended to prevent.  For the reasons thus stated below the Court should grant Plaintiffs' Motion and exclude Defendants' Irrelevant Exhibits and Defendants' Untimely Witnesses.

## I.   EVIDENCE OF PLAINTIFFS' MOTIVE FOR SPEAKING AT THE MEETING SHOULD BE BARRED AS IRRELEVANT.

This Court should exclude any evidence or testimony relating to Plaintiffs' motive for attending and speaking at the May 10, 2017 Metro Council Meeting.  Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible," and Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence."

Here, the Fifth Circuit held in *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) that the "pivotal question" in a case like this is Mr. Wilson's motive in removing the Plaintiffs from the meeting. If Mr. Wilson "acted with improper motive, he violated [Plaintiffs'] clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum." *Id.*  According to the Fifth Circuit, "It is beyond cavil that a reasonable government official [chairing a city council meeting] would have known that it would be impermissible under the First Amendment to prevent Heaney from speaking and to eject him from the meeting based on the message he was conveying." *Id.* at 802.

Under the Fifth Circuit's analysis, Defendants' Social Media and News Exhibits should be excluded for three reasons:

First, Defendants have conceded that the Social Media and News Exhibits were *not* reviewed by Mr. Wilson prior to the May 10, 2017 Metro Council Meeting. In discovery, Plaintiffs asked for "All documents and communications related to the May 10, 2017 Metro Council meeting circulated prior to the meeting reviewed by Defendants." Ex. B at 8. The Social Media and News Exhibits were not provided in response to the discovery request.

Second, even if the Social Media and News Exhibits had been produced in discovery, they would not be able to be introduced at trial. That is because Mr. Wilson has chosen not to testify, and so he cannot lay the necessary foundation of which – if any – Social Media posts he reviewed before the meeting. Further, many of the Social Media and News Exhibits would have been impossible for Mr. Wilson to review before the May 10, 2017 meeting, because they were created *after* the meeting. *E.g.*, R. Doc. 31 at Defendants' Exhibits 30 to 36, 52 to 53.

And third, the Social Media and News Exhibits are not relevant because they only speak to Plaintiff's intent. Defendants represent that the Social Media exhibits will establish Plaintiffs' intent to "prevent the meeting from handling 'business as usual,' or to otherwise inhibit its ability to legislate and function."[18] But absolutely nothing in the Fifth Circuit's First Amendment analysis turns on the motivation of the speaker. *Heaney v. Roberts, supra*. The only question is the meeting chair's "motive or intent in silencing and ejecting" the speaker. *Id.* at 802. And Social Media posts that Mr. Wilson did not review provide no insight whatsoever into Mr. Wilson's motive or intent.

Accordingly, this Court should exclude Social Media and News Exhibits and any other testimony and documents offered to establish Plaintiffs' intent or motive in attending and speaking at the May 10, 2017 meeting.

## II. DEFENDANTS' WITNESSES DISCLOSED FOR THE FIRST TIME IN PRETRIAL DISCLOSURES SHOULD BE BARRED FROM TESTIFYING IN THIS ACTION.

Defendants' initial disclosures had seven individuals on "Defendants' Witness List": Scott Wilson, three police officers, and the three Plaintiffs.[19] More than a year later, and without ever supplementing their initial disclosures, Defendants added the following **seventeen** witnesses to the pre-trial order: Casey Cashio; Ashley Beck; Dr. Daniel Burch; Ann Moore; Jennifer Harding; Janet Mulder; Brett Buffington; Stephanie Riegel; Andrea Gallo; Hilary Scheinuk; Rachel Thomas;

---

[18] *Id.*, at 3.
[19] *See* Defendants' Initial Disclosures, attached as Exhibit "A".

Russel Kelly; Phillip Lillard; Janice Weber; Dan Weber; Don Ortega; and Jim Mora (collectively,

"Defendants' Untimely Witnesses").

Some of these newly-designated witnesses are city employees (*e.g*., Casey Cashio). Some

are members of the press (*e.g*. Andrea Gallo of The Advocate). And some are complete mysteries

– they have never been mentioned in this litigation, and a google search does not reveal their

connection to Baton Rouge (*e.g*., Ann Moore, Jennifer Harding, and Janet Mulder). Because none

were listed in initial disclosures, none were deposed or the subject of discovery. They should be

excluded for failure to comply with Rule 26(a).

> **A.      Defendants' Untimely Witnesses should be excluded for failure to disclose under Rule 26(a).**

The disclosure of all witnesses and the subject matter of their testimony is required under

Rule 26(a). The purpose of such disclosures early on in the course of litigation is to "allow the

parties to develop fully and crystalize concise factual issues for trial" and when "[p]roperly used,

they prevent prejudicial surprises and conserve precious judicial energies."[20] The failure to make

such Rule 26 disclosures results in Defendants being unable "to use that information or witness to

supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified

or is harmless."[21]

The inclusion of these witnesses at the last minute is neither substantially justified or

harmless. In performing a Rule 37(c)(1) exclusion analysis, courts in this circuit looks to four

factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the

evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the

explanation for the party's failure to disclose. *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382

F.3d 546, 563-64 (5th Cir. 2004).

---

[20] *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973).
[21] Fed. R. Civ. Pro. 37(c).

First, the witnesses presented by Defendants are not important to their case or essential to their defense. Defendants have not stated how the testimony of these witnesses would aid their defense. Plaintiffs assert that these witnesses are needlessly cumulative and/or irrelevant, as explained further in Section B.

Second, Defendants' actions of failing to properly disclose Defendants' Untimely Witnesses has prejudiced Plaintiffs. Defendants deprived Plaintiffs of the opportunity to conduct any meaningful discovery of Defendant's Untimely Witnesses, including conducting any deposition. Plaintiffs thus have no realistic idea of what information or testimony Defendants' Untimely Disclosed Witnesses will provide. Plaintiffs' prejudice is compound by Defendants' inadequate and vague description provided as to what Defendants' Untimely Disclosed Witnesses will testify about. For many of the witnesses, Defendants simply say that they "will testify as to events subject to this litigation." That description is a complete tautology without any content whatsoever. *See Miles v. HSC-Hopson Services Co.*, 625 Fed.Appx. 636 (5th Cir. Sept. 8, 2015) (excluding witnesses not disclosed until pretrial when description of their testimony was vague). To call these descriptions boilerplate would be an insult to boilerplate, which actually served a useful function.[22] d

Third, Defendants have not asked for a continuance or leave of court to supplement their initial disclosures. Given the advanced stage of litigation, permitting new evidence would not be harmless given the possible need to re-open discovery, as stated in the second factor. *CQ, Inc. v. TXU Mining Co.,* 565 F.3d 268, 280 (5th Cir. 2009) (citing *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (finding harm based on the possible need to "create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date.");

---

[22] Merriam-Webster Dictionary, "Boiler plate." ("The syndicates delivered that copy on metal plates with the type already in place so the local papers wouldn't have to set it. Printers apparently dubbed those syndicated plates boiler plates because of their resemblance to the plating used in making steam boilers.")

*NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (finding harm based on scheduling issues)).

Finally, Defendants have given no explanation as to why these witnesses were not disclosed in the initial disclosures, or in any supplemental disclosure. There is no justification for Defendants' failing to disclose seventeen witnesses to Plaintiffs until the Pretrial Order. Indeed, Defendants action is specifically what the Federal Rules of Civil Procedure is intended to prevent – trial by surprise. *Frey v. Bd. of Supervisors of La. State Univ.*, 16-00489-BAJ-EWD (M.D. La., Aug. 27, 2018) ("the purpose of Rule 26 disclosures is to prohibit trial by surprise and to let the parties know all of the potential evidence well in advance of trial.") Plaintiffs' motion *in limine* should be granted.

**B.    Defendants' Untimely Witnesses should be excluded as irrelevant and/or needlessly cumulative.**

Should this Court find that exclusion of these witnesses is not warranted for failure to comply with Rule 26, these witnesses should be excluded as irrelevant. Defendants have provided witnesses and the information they have as follows (with categories of persons surmised to the best of Plaintiffs ability):

| Category of Person | Defendants' Untimely Witnesses: | Testimony as stated in Pre-trial Order: |
|---|---|---|
| City Employees | Casey Cashio; Ashley Beck | "Will testify as to council policy and procedure as well as events subject to this litigation." |
| Members of Press | Stephanie Riegel; Andrea Gallo; Hilary Scheinuk; and Rachel Thomas. | "Will testify as to coverage of events subject to this litigation" |
| | Brett Buffington | "Will testify as to footage taken on 10 May 2017 and coverage of these events." |
| Community Members | Russel Kelly; Phillip Lillard; Janice Weber; Dan Weber; Don Ortega; and Jim Mora. | "Will testify to [his/her] video exhibit if necessary" |

| Unknown Persons | Dr. Daniel Burch; Ann Moore Jennifer Harding; and Janet Mulder. | "Will testify as to events subject to this litigation" |
|---|---|---|

The city employees who are asked to testify as to "council policy and procedure," Casey Cashio and Ashley Beck, have no testimony to add to the First and Fourteenth claims. Surely, if Plaintiffs had brought facial challenges to council policies, their testimony would be relevant as to the legislative history and whether it is overbroad or underinclusive. However, these are strictly "as-applied" challenges, thus the constitutionality of the law or policy is not at issue. The only relevant information is how Defendant Scott Wilson forcibly removed Plaintiffs because of their race and their speech on May 10, 2017. Any background information about the council's policies is irrelevant to the claims and defenses.

The community members (Russel Kelly, Phillip Lillard, Janice Weber, Dan Weber, Don Ortega, and Jim Mora) have only cumulative testimony if they are to testify about their video exhibit. The video exhibits to be used by Plaintiffs regarding these community members is to show the Court a pattern and practice of the Defendants, City Council and Scott Wilson in his role as Mayor Pro Temp, in allowing members of the public to speak off topic. These videos demonstrate the observed conduct of Defendants and the language that Defendants used during the course of public comment periods. The testimony of these witnesses have nothing to add in terms of the conduct of Defendants, which is plain from the video. The video clearly captures all audio from the speaker and from Defendants, and it captures the entire meeting from beginning to end. Further, these witnesses have no personal knowledge of the reasons **why** Defendants acted the way they did at the meetings they attended. They could only speak to the matters they observed, which is plainly seen on the video and thus needlessly cumulative.

The Court should exclude Defendants' Untimely Witnesses pursuant to Rule 37.

### III.    LT. JONATHAN DUNNAM SHOULD BE EXCLUDED AS HAVING NO RELEVANT, NON-CUMULATIVE TESTIMONY TO OFFER.

Defendants list among their witnesses three law enforcement officers: Lt. Jonathan Dunnam, Lt. Murial Hall, and Cpl. Garret Sylvan. R. Doc. 110. During a meet and confer, Defendants' counsel agreed not to call Lt. Hall and Cpl. Sylvan. For Lt. Dunnam, Defendants say that he "will testify as to the events subject to this litigation and his role as Sergeant at Arms for meetings of the Metropolitan Council." *Id.*

As described above, this descriptions is totally void of content. And this Court's practice is to exclude witnesses when pre-trial order "descriptions are conclusory, provide no detail as to this alleged habit, and are an inadequate basis upon which the Court can rule." *McCadney v. Hamilton*, 13-cv-00824-JWD-RLB, R. Doc. 105 (M.D. La., June 26th, 2015). In *McCadney*, this Court excluded witnesses even though they did provide *some* indication of the witnesses' testimony – a party's habit of "kicking doors closed with his feet." If this Court finds it necessary to exclude witnesses for whom <u>some</u> indication of the subject of their testimony is given, *a fortiori* this Court should exclude witnesses for whom <u>no</u> indication is given.

Nor can Lt. Dunnam offer any relevant, non-cumulative evidence. He cannot testify as to what Scott Wilson might have been thinking, as that would be entirely speculative. He cannot testify as to what Scott Wilson might have told him, as that would be hearsay. He cannot testify generally as to security needs at meetings, as he was not listed as an expert witness. And Lt. Dunnam's "role as Sergeant at Arms" is not relevant, because unlike in *Heaney,* Plaintiffs have not sued the police officers for their conduct.

There is one text message in evidence from Lt. Dunnam to Scott Wilson prior to the May 10, 2017 meeting. R. Doc. 110, Defendants' Exhibit 46. But for that text message to fall within the "effect on the listener" exception to hearsay, Defendants must lay a foundation that the statement had an effect. *Maes v. Leprino Food Co.*, No. 15-cv-0022-WJM-MEH (D. Co. March

22, 2017) (statements "allegedly spoken to Plaintiff" could be "admissible non-hearsay testimony. However, <u>Plaintiff must establish such a nexus</u> at trial before admission.") (emphasis added). And here, because Mr. Wilson has chosen not to testify, no such foundation can be established. *See Barnes v. Commerce & Ind. Ins. Co*., 11-cv-00041, R. Doc. 92 (W.D. La., Nov. 20, 2013) (excluding evidence because of "insufficient proof in the record to show C&I relied on the witness statements when evaluating Barnes' claim.")[23]

Other than that, the only testimony the Lt. Dunnam might have is his percipient observations of what occurred at the meeting. But everything at the meeting was captured on video that has been listed as Exhibits by both parties, and so his testimony would be needlessly cumulative. For these reasons, Lt. Dunnam's inclusion on the witness list should be struck, and Lt. Dunnam's one text to Mr. Wilson excluded.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask that this Court grant their Motion.

Respectfully submitted,

*/s/ William Most__*
WILLIAM MOST (No. 36914)
Law Office of William Most, L.L.C.
Sarah Chervinksy (La. Bar No. 33772)
David Lanser (La. Bar No. 37764)
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

BRIAN E. LAHTI
Utah Bar No. 16298, (PHV)
Tel: (801) 823-6464
Email: blahti@LHlitigation.com

---

[23] To the extent that Lt. Dunnam's text to Scott Wilson was akin to a police report, it should also be excluded. *See Barnes, supra, citing United States v. Jimenez*, 275 F. App'x 433, 437 n. l (5th Cir. 2008) ("Police reports are generally excludable as hearsay."); *United States v. Dotso*n, 821 F.2d 1034, 1035 (5th Cir. 1987) (statements within a police report should have been excluded as hearsay within hearsay).