**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

_____
                                                   )
MICHAEL McCLANAHAN, *et al.*          )
                                                   )
                    Plaintiffs,              )
           v.                                    )          Civil Action No. 17-cv-01720-JWD-RLB
                                                   )
SCOTT WILSON, *et al.*                    )
                                                   )
                    Defendants.            )
_____)

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**OCTOBER 19, 2020 TRIAL**

Pursuant to Federal Rule of Civil Procedure 52(a), Plaintiff proposes the Court enter these Findings of Fact and Conclusions of Law relative to the trial beginning October 19, 2020.

## CONTENTS

**I.    Introduction and Procedural History**………………………………………………...5

**II.    Parties to the Trial**………………………………………………………………….8

A. Plaintiffs…………………………………………………………….....................……8

B. Defendants…………………………………………………………………….9

**III.    Findings of Fact**………………………………………………………………....9

A.    Scott Wilson Directed Police to Remove Citizens from Metro-Council Meetings When they Mentioned Alton Sterling, or Criticized the Police, or Scott Wilson *Thought* They Were Going to Do So. ……………..……………………..……………………………**9**

i.    On May 10, 2017, Scott Wilson interrupted Michael McClanahan within 7 seconds and had Michael McClanahan removed from the Meeting Room when he mentioned Alton Sterling. ……………………………………………………..……………..**9**

ii.    On May 10, 2017, Scott Wilson had Gary Chambers removed from the Meeting Room the moment Mr. Chambers said the phrase "police department"……………........…**12**

iii.    On May 10, 2017, Scott Wilson had Eugene Collins removed from the Meeting Room before Mr. Collins made any statement. ………………......…………………….....**14**

iv.    On May 10, 2017, Scott Wilson allowed Coby Weaver to remain at the podium for two minutes and only ordered her removed from the room when she verbally recognized he was treating her differently than Black citizens. ……………….....……………….......**15**

v.    On May 10, 2017, Scott Wilson had Sydney Epps removed from the Meeting Room when she called for the firing of the Police Chief and two Police Officers. ……..........**18**

vi.    On May 10, 2017, Scott Wilson had Lynne Espinoza removed from the Meeting Room as soon as she called for the firing of the Police Officers responsible for the death of Alton Sterling. ………………....…………………………………...…………….......**20**

vii.    On June 28, 2017, Scott Wilson had Arthur Reed removed from the Meeting Room after less than five seconds. ……………….....…………………………………….......**21**

B.      The Mayor Pro-Tempore of the Metro Council Has Consistently Allowed People to Speak Far Off Agenda Topics – So Long as They Do Not Mention Alton Sterling or Criticize the Police**..…………………………………………………..………………23**

   i.    On September 27, 2017, Scott Wilson allowed Phillip Lillard to speak for more than a minute and a half, despite verbally recognizing that Mr. Lillard was off-topic. **……23**

   ii.   On June 14, 2017, Scott Wilson allowed Janice Weber to speak over him and to finish delivering her comment despite verbally recognizing that Ms. Weber was off-topic. **25**

   iii.  On June 14, 2017, after Scott Wilson warned Janice Weber that she was speaking off topic, Mr. Wilson allowed the next speaker, Dan Weber, to speak on the same topic as Janice Weber for nearly a full minute without any warning. **…………………………27**

   iv.   On August 23, 2017 Scott Wilson allowed Don Ortega to speak for nearly three minutes despite verbally recognizing that Mr. Ortega was off-topic. **…………………………29**

   v.    On August 23, 2017 Scott Wilson allowed Russell Kelly to speak for an additional 25 seconds after verbally recognizing that Mr. Kelly was off-topic. **……………………32**

   vi.   On May 14, 2014, Jim Mora was allowed to read from a Dr. Suess book for two minutes and was not given a single warning. **……………………………………………33**


IV.     **Conclusions of Law……………………………………………………………35**

A.      Jurisdiction **……………………………………………………………………..35**

B.      Plaintiffs proffer five theories of legal liability against Defendant Wilson, under the First and Fourteenth Amendments to the U.S. Constitution. **…………………….…35**

C.      Viewpoint-based restrictions on speech "are *per se* violative of the First Amendment."   **………………………………………………………………....…36**

D.      Here, Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs even though they were on-topic. **……………………………….........…40**

E.      Here, even if Plaintiffs were off-topic, Defendant Wilson engaged in viewpoint discrimination because he expelled Plaintiffs but not other off-topic persons.. **……………………………………………………….……….……..…42**

F.      Prior restraint always violates the First Amendment unless the harm arising from the restrained speech would be "both great and certain" and cannot be mitigated through "less intrusive measures." **………………………………………….……...…..…45**

G.    Here, Defendant Wilson engaged in illegal prior restraint when he expelled Plaintiff Eugene Collins before Eugene Collins could speak.  ………………………………**45**

H.    People have a First Amendment right to attend public meetings, independent of their right to free speech………………………………………………………….………**46**

I.    Here, Defendant Wilson violated Plaintiffs' First Amendment right to attend public meetings by having them not only removed from the podium, but taken entirely out of the meeting space. ………………………………………………………….………**47**

J.    Disparate treatment on the basis of race violates the equal protection guarantee Fourteenth Amendment unless it can meet strict scrutiny.  ………………….………**48**

K.    Defendant Wilson engaged in race discrimination when he expelled Black speakers who criticized the police within seconds, but allowed white critics to speak for several minutes. ………………………………………………………….......………**48**

V.    **Summary**………………………………………………..…………......……**49**

# I.    INTRODUCTION AND PROCEDURAL HISTORY

1.      On July 5, 2016, Baton Rouge police officers shot and killed Alton Sterling.

2.      On May 3, 2017, the U.S. Department of Justice announced that it was closing its investigation into the killing of Alton Sterling, and that it would not be bringing charges against the involved officers.[1] The State of Louisiana, however, had yet to make a decision regarding criminal charges against the officers.

3.      In May 2017, the government of Baton Rouge had not resolved the issue of its response. The officers who were involved in the killing of Alton Sterling were on paid leave,[2] and had not been subject to any sort of formal disciplinary action.

4.      The Baton Rouge Metro Council was scheduled to hold a meeting on May 10, 2017. Some of the agenda items were related to the issue of officer-involved shootings. Others were not, and involved the business-as-usual of the City.

5.      A number of community members, including Plaintiffs, decided to go to the Metro Council and voice their viewpoint. In their view, the Baton Rouge government should not return to business-as-usual without first resolving how to respond to the killing of a member of the community by BRPD officers.

6.      On May 10, 2017 Baton Rouge Mayor Pro-Tempore Scott Wilson was presiding over a Metro-Council Meeting.[3]

7.      Members of the public are typically allotted three minutes to comment on each agenda item at Baton Rouge Metro-Council Meetings.

---

[1] R. Doc. 15-2 (Answer) at ¶ 25. See also https://www.justice.gov/opa/pr/federal-officials-close-investigation-death-alton-sterling
[2] R. Doc. 15-2 at ¶ 26 (admitting that "Officers Blane Salamoni and Howie Lake were on paid leave on paid administrative leave at the time of the events alleged in the petition.")
[3] Defendants' Ex. 1 at 2:14.

8.      The City of Baton Rouge has a rule requiring speakers to remain on topic during public comment. But the rule is not consistently enforced - the Baton Rouge Mayor Pro-Tempore frequently allows speakers to finish their time even when they wander far off the agenda topic or explicitly talk about other agenda items.

9.      At trial, Plaintiffs provided six examples of off-topic speakers who were allowed to continue speaking without the Mayor Pro-Tem ordering them removed by police. These six are summarized in Table 2, below.

10.      By contrast, when speakers mentioned Alton Sterling, criticized the police, or gave any indication that they intended to speak on those topics, Mr. Wilson immediately ordered police to remove them from the podium and from the Meeting Room.

11.      Specifically, on May 10, 2017, Scott Wilson ordered police to remove six citizens from the May 10, 2017 Metro-Council Meeting as soon as they said the words "Alton Sterling," "Chief Dabadie," or "police department" – or gave any indication that they intended to speak on those topics.

12.      Six weeks later, on June 28, 2017, Scott Wilson ordered police to remove another person from public comment as soon as he mentioned Alton Sterling. This person, and the six removed on May 10, are summarized in Table 1, below.

13.      On December 14, 2017, this lawsuit was filed on behalf of Plaintiffs Michael McClanahan, Gary Chambers, and Eugene Collins – three of the speakers Scott Wilson ordered removed on May 10, 2017. Plaintiffs seek a declaration from this Court that Scott Wilson's behavior of silencing the Plaintiffs based on the viewpoint expressed violated the First Amendment to the United States Constitution and the Louisiana State Constitution.

14.     To enforce these rights afforded by the United States Constitution, Plaintiffs filed suit pursuant to 42 U.S.C. § 1983, for declaratory relief against Scott Wilson's viewpoint discrimination and racial discrimination.

15.     Plaintiffs also seek to recover all their attorneys' fees, costs and expenses incurred in this action and any other relief that this Court may order.

**Table 1:**     **Summary of Evidence: Scott Wilson ordered seven individuals removed after they mentioned Alton Sterling or criticized the police.**

| Date | Item | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? | Ex. No. |
|------|------|---------|-------------------|-------------------|-----------|---------|
| 5/10/17 | 50 | Michael McClanahan | Settlement of sewer back-up claim | "on July the fifth, 2016, Alton Sterling was killed. . ." | Yes | D's 2 |
| 5/10/17 | 51 | Gary Chambers | Settlement of sewer back-up claim | "Police department. . . " | Yes | D's 3 |
| 5/10/17 | 60 | Eugene Collins | H.B. 276, about officer incident investigations. | "I oppose this motion because on July 5th -" | Yes | D's 5 |
| 5/10/17 | 60 | Coby Weaver | H.B. 276, about officer incident investigations. | Alton Sterling, and fact that "two black men" removed. | Yes | D's 5 |
| 5/10/17 | 60 | Sydney Epps | H.B. 276, about officer incident investigations. | Termination of Chief Dabadie | Yes | D's 5 |
| 5/10/17 | 60 | Lynne Espinoza | H.B. 276, about officer incident investigations. | Asks for officers to be fired. | Yes | D's 5 |
| 6/28/17 | 56 | Arthur Reed | Settlement of insurance claim | Alton Sterling | Yes | Pl's 22 |

**Table 2:       Summary of Evidence: Six individuals who spoke completely off-topic – but did not mention Alton Sterling or criticize the police – and were not removed.**

| Date | Item | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? | Ex. No. |
|---|---|---|---|---|---|---|
| 9/27/2017 | 76 | Phillip Lillard | Office of Community Development positions | Only discusses previous item. "I'm against item 76 because the other item shouldn't have passed." | No. | Pl's 9 |
| 6/14/2017 | 66 | Janice Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. | Pl's 10 |
| 6/14/2017 | 66 | Dan Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. | Pl's 11 |
| 8/23/2017 | 139 | Don Ortega | Moving the Baton Rouge Zoo | Complaints about his former job with BREC. | No. | Pl's 12 |
| 8/23/2017 | 101 | Russell Kelly | Support for La. DOJ investigation into Alton Sterling shooting. | Team training for Metro Council. | No. | Pl's 13 |
| 5/14/2014 | 13Z/13Y | Jim Mora | Annexation of St. George | Reads Dr. Seuss book cover to cover. | No. | Pl's 14 |

## II.       PARTIES TO THE TRIAL

### A.       Plaintiffs

16.       Plaintiffs are Baton Rouge residents and Black community leaders Michael McClanahan, Gary Chambers, and Eugene Collins, all of whom Scott Wilson ordered removed from the Metro-Council Meeting on May 10, 2017.

17.       On May 10, 2017, Michael McClanahan was the President of the National Association for the Advancement of Colored People (NAACP) Baton Rouge Branch. Scott Wilson ordered police officers to "take him out" less than one second after Mr. McClanahan said the words "Alton Sterling."

18.       Gary Chambers is the Editor-In-Chief of the Rouge Collection, a Baton Rouge-based and Black-owned media platform. Mr. Chambers was at the microphone for eight seconds

when he mentioned the phrase "police department" and Scott Wilson immediately ordered the police to take him out.

19.     Eugene Collins is the Director of Prevention for the HIV/AIDS Alliance for Region Two, Inc. (HAART). He is now the President of the National Association for the Advancement of Colored People (NAACP) Baton Rouge Branch. Mr. Collins was at the podium for only 2.5 seconds, and had barely begun to speak, when Scott Wilson ordered police to "take him out." An audience member cried out, "he hadn't even started!"

**B.     Defendants**

20.     Scott Wilson is a member of the Baton-Rouge Metro Council. On January 2, 2017, Mr. Wilson was elected by his peers to be Mayor Pro-Tempore of the Metro Council. As Mayor Pro-Tempore, Mr. Wilson runs the council meetings. He is sued in his official capacity.

21.     The City of Baton Rouge is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of East Baton Rouge Parish.

### III.     FINDINGS OF FACT

**B.     Scott Wilson Directed Police to Remove Citizens from Metro-Council Meetings When They Mentioned Alton Sterling, or Criticized the Police, or Scott Wilson *Thought* They Were Going to Do So.**

**i.     On May 10, 2017, Scott Wilson interrupted Michael McClanahan within 7 seconds and had Michael McClanahan removed from the Meeting Room when he mentioned Alton Sterling.**

22.     At a Metro-Council meeting on May 10, 2017, Plaintiff Michael McClanahan approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[4]  Mr. McClanahan approached the podium during discussion of Item 50. The topic of Item 50 was:

---

[4] Defendants' Ex. 2 (Full Video of May 10, 2017, Item 50).

Authorizing settlement of the claim of Glen Boudreaux for damages resulting from a sewer back-up in the claimant's home, for a total amount of $25,238.13; which amount shall be paid from the account designated "Insurance–General Liability" (012.4630000.644100).[5]

23.     The screengrab below from Defendants' Exhibit 2, the video of the May 10, 2017

meeting, Item 50, shows Mr. McClanahan standing at the podium:



24.     Michael McClanahan approached the podium to make comment. In a low, calm

voice, he had the following exchange with Scott Wilson:

*Mr. McClanahan*:     Good afternoon, ladies and gentlemen of the council. Mike McClanahan, president of East Baton Rouge NAACP. I'm speaking against the proposed item on the agenda today as a citizen of this community. I believe –[6]

*Mr. Wilson*:     Speaking on what? We got an item here about a sewer

---

[5] Plaintiffs' Ex. 15 (May 10, 2017 Agenda) at page 7.
[6] Defendants' Ex. 2 (Full Video of May 10, 2017, Item 50) at 00:26-00:43.

|                     |                                                                                                                                                                                 |
| ------------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                     | backup, item 50, that's what we're talking about.[7]                                                                                                                           |
| *Mr. McClanahan*:   | I'm going to tell you why I oppose that. You all haven't heard anything yet. You can't just oppose something you haven't heard. Give me an opportunity to speak, and you can rebut, right? That's how it works, doesn't it? |
| *Mr. Wilson*:       | No, not really.                                                                                                                                                                  |
| *Mr. McClanahan*:   | Well, it should work like that. If you all choose . . .                                                                                                                          |
| *Mr. Wilson*:       | I'm not going to warn you about it. You can either talk on the item or you can leave.                                                                                            |
| *Mr. McClanahan*:   | I believe it is my constitutional right to express why I oppose the sewer item because on July the fifth, 2016, Alton Sterling was killed . . .[8]                             |
| *Mr. Wilson*:       | John, please take him out. Thank you, sir.[9]                                                                                                                                    |
| *Mr. McClanahan*:   | . . . and your office continued to conduct business as usual. Since that time, the City of Baton Rouge has continued to conduct business – and I oppose this because that is not *right.* |

25.    Scott Wilson interrupted Mr. McClanahan within 7 seconds, before Mr. McClanahan stated why he opposed the agenda item. At that time, Mr. McClanahan was not speaking off the agenda item topic as he had not even reached the topic of his comment.[10]

26.    Mr. McClanahan was interrupted with verbal warnings while he was at the podium before he could finish his statement to explain why he opposed the agenda item.[11]

27.    Scott Wilson ordered Michael McClanahan removed <u>less than one second</u> after he heard the words "Alton Sterling."[12]  Mr. McClanahan had been at the podium for less than a minute.[13]

---

[7] Defendants' Ex. 2 at 00:43.
[8] Defendants' Ex. 2. Mr. McClanahan says "Alton Sterling" at 1:18.
[9] Defendants' Ex. 2. Mr. Wilson begins his order to remove Mr. McClanahan at 1:19.
[10] *Compare* Plaintiffs' Ex. 15 (May 10, 2017 Agenda) at page 7, *with* Defendants' Ex. 2.
[11] Defendants' Ex. 2.
[12] Defendants' Ex. 2. Mr. McClanahan says "Alton Sterling" at 1:18. Mr. Wilson begins his order to remove Mr. McClanahan at 1:19.
[13] Defendants' Ex. 2.

28.    Two plainclothes police officers removed the microphone from Mr. McClanahan, grabbed him by the arm, and took him away from the podium and out of the room.[14]

**ii.    On May 10, 2017, Scott Wilson had Gary Chambers removed from the Meeting Room the moment Mr. Chambers said the phrase "police department."**

29.    At a Metro-Council meeting on May 10, 2017, community-member Gary Chambers approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[15] Mr. Chambers approached the podium during discussion of Item 51. The topic of Item 51 was:

> Authorizing settlement of the claim of Cornel Hubert for damages resulting from a sewer back-up in the claimant's rental unit, for a total amount of $22,400.03; which amount shall be paid from the account designated "Insurance –General Liability" (012.4630000.644100).[16]

30.    The screengrab below from Defendants' Exhibit 3, the video of the May 10, 2017 meeting, Item 51, shows Mr. Chambers standing at the podium:



[14] Defendants' Ex. 2.
[15] Defendants' Ex. 3 (Full Video of May 10, 2017, Item 51).
[16] Plaintiffs' Ex. 15 (May 10, 2017 Agenda) at page 7.

12

31.     Gary Chambers approached the podium for public comment and had the

following exchange with Scott Wilson:

*Mr. Chambers*:     So you guys are gonna rob me of my constitutional rights to say what I believe needs to be said…[17]

*Mr. Wilson*:     You can speak on the item or you can leave.[18]

*Mr. Chambers*:     . . . and have the police department…

*Mr. Wilson*:     Johnny, would you please take him out. Take him.

*Mr. Chambers*:     … who you pay for to escort the tax-paying citizens of this community out. I'm not going to let him – I have three minutes on the clock.

*Mr. Wilson*:     No, but not on this item.

*Mr. Chambers*:     Again I say, Alton Sterling was murdered on July the fifth. Scott Wilson you are a coward for putting people out of this room. They have a right to speak out. They have a right to speak out. And you are a coward, sir.

32.     Scott Wilson interrupted Mr. Chambers with a verbal warning within 4 seconds,

before Mr. Chambers could finish his introductory statement regarding what it was he believed

needed to be said.[19]  At that time, Mr. Chambers was not speaking off the agenda item topic as he

had not even reached the topic of his comment.[20]

33.     Scott Wilson ordered Gary Chambers removed immediately after he heard the

words, "police department."[21] Gary Chambers was only at the podium for eight seconds before

Scott Wilson ordered him "taken out."[22]

34.     The police removed Mr. Chambers from the building and arrested him for

---

[17] Defendants' Ex. 3 (Full Video of May 10, 2017, Item 51) at 00:19.
[18] Defendants' Ex. 3. at 00:23.
[19] Defendants' Ex. 3.
[20] *Compare* Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 7, *with* Defendants' Ex. 3.
[21] Defendants' Ex. 3.
[22] Defendants' Ex. 3.

disturbing the peace and resisting arrest.[23]

### iii. On May 10, 2017, Scott Wilson had Eugene Collins removed from the Meeting Room after only two-and-a-half seconds – and *before* Collins began his comment.

35.    At a Metro-Council meeting on May 10, 2017, community-member Eugene Collins approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[24]  Mr. Collins approached the podium during discussion of Item 60.  The topic of Item 60 was:

> Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations.[25]

36.    The screengrab below from Defendants' Exhibit 5, the video of the May 10, 2017 meeting, Item 60, shows Mr. Collins standing at the podium:



---

[23] R. Doc. 15-2 (Answer) at ¶ 35 (admitting that "The police removed Gary from the building and arrested him for disturbing the peace and resisting arrest.")
[24] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60).
[25] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 8.

37.    Agenda Item 60 was directly related to the Alton Sterling killing, because the Alton Sterling killing was the "driving force" behind House Bill 276.  The bill specified how long police officers would have to hire an attorney before they are questioned for an incident involving shooting and seriously injuring or killing someone. It had originally contained a provision about how long an officer should be paid and not paid while on administrative leave for a shooting – a issue of community concern about the officers involved in the killing of Alton Sterling.

38.    Eugene Collins only got as far as "I oppose this motion because on July…." before Scott Wilson ordered the police to "take him out."[26]

39.    A member of the audience cried out, "He hadn't even started!"[27]

40.    Scott Wilson only allowed Mr. Collins to speak for **2.5 seconds** before cutting him off and expelling him from the chamber.[28] Scott Wilson did not give Mr. Collins any verbal warning.[29] Mr. Wilson silenced him even though Mr. Collins intended to voice a viewpoint directly regarding Agenda Item 60.

41.    A police officer removed Mr. Collins from the podium and took him out of the room.[30]

**iv.    On May 10, 2017, Scott Wilson allowed Coby Weaver to remain at the podium for two minutes until she pointed out that he was treating her differently than Black citizens.**

42.    At a Metro-Council meeting on May 10, 2017, community-member Coby Weaver approached the podium to provide public comment. Defendant Scott Wilson was presiding over

---

[26] Defendants' Ex. 5 at 4:28.
[27] Defendants' Ex. 5.
[28] Defendants' Ex. 5 at 4:30.
[29] Defendants' Ex. 5.
[30] Defendants' Ex. 5.

the meeting at the time.[31]  Ms. Weaver approached the podium during discussion of Item 60.  The

topic of Item 60 was:

> Expressing the opposition of the Metropolitan Council to House Bill 276 filed in
> the 2017 Session while under officer involved incident investigations.[32]

43.    The screengrab below from Defendants' Exhibit 5, the video of the May 10, 2017

meeting, Item 60, shows Ms. Weaver standing at the podium:



44.    Coby Weaver had the following exchange with Scott Wilson:

*Ms. Weaver*:          Just like the lady before me said, as a citizen in Baton Rouge, I am
extremely upset by the culture not only of the police but with
everyone sitting here today and allowing this culture of hate and
distrust to continue to breed while you guys sit here and do
nothing.…[33]

---

[31] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60).
[32] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 8.
[33] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60) at 1:19. Ms. Weaver continued for 17 seconds before
Defendant Scott Wilson interrupted her to give a verbal warning.

| | |
|---|---|
| *Mr. Wilson*: | Please stick to the topic of the item.[34] |
| *Ms. Weaver*: | I oppose this item because I oppose you guys not acting upon anything before taking into consideration what you need to do in order to protect this city and its citizens. While continuing to push forward other items and continue to waste your time while not addressing Alton Sterling and not addressing the police.[35] |
| *Mr. Wilson*: | We're not talking about Alton Sterling. We're talking about this item right here.[36] |
| *Ms. Weaver*: | While not addressing Alton Sterling and not addressing what has happened and continuing to push forward with other items, you guys are ignoring your citizens, and you guys are ignoring the people who voted for you and put you in power. You guys need to stand up for your people, for all of the people in Baton Rouge and you guys need to go ahead and make people be held accountable. You guys have a lot of power and you need to use it for your citizens. Also I love how I have not been removed from this entire place. I also like how I was not violently removed from standing up here like the two men before me who stood and spoke. I said the same things. As soon as they said, two lack men said, the words Alton Sterling, July 5th. You guys violently grabbed them and removed them from this courtroom.[37] |
| *Mr. Wilson*: | [indiscernible] Johnny will you help her out please?[38] |

45.    Scott Wilson gave Ms. Weaver two verbal warnings, but allowed her to continue speaking.[39]

46.    Scott Wilson allowed Ms. Weaver to remain at the podium for two minutes, while Ms. Weaver spoke on the same topic as Plaintiffs, before ordering her removed.

---

[34] Defendants' Ex. 5 at 1:36.
[35] Defendants' Ex. 5 at 1:44. After the first warning, Scott Wilson allowed Ms. Weaver to continue speaking for another 16 seconds.
[36] Defendants' Ex. 5 at 2:01.
[37] Defendants' Ex. 5 at 2:07. After the second warning, Scott Wilson allows Ms. Weaver to continue speaking one full minute.
[38] Defendants' Ex. 5 at 3:00.
[39] Defendants' Ex. 5.

47.    As soon as Ms. Weaver, a White woman, verbally recognized that she was being treated differently than Plaintiffs, all Black men, Defendant Scott Wilson directed police to remove her.[40]

48.    A police officer removed Ms. Weaver from the podium and took her out of the room.[41]

**v.    On May 10, 2017, Scott Wilson had Sydney Epps removed from the Meeting Room when she called for the firing of the Police Chief and two Police Officers.**

49.    At a Metro-Council meeting on May 10, 2017, community-member Sydney Epps approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[42]  Ms. Epps approached the podium during discussion of Item 60.  The topic of Item 60 was:

> Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations.[43]

50.    The screengrab below from Defendants' Exhibit 5, the video of the May 10, 2017 meeting, Item 60, shows Ms. Epps standing at the podium:

---

[40] Defendants' Ex. 5 at 3:00.
[41] Defendants' Ex. 5.
[42] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60).
[43] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 8.



51.    Sydney Epps began her comment by stating, "I moved here immediately after the Alton Sterling shooting and what it relates to with the opposition of the bill that is in front of us it that we really need to call for the immediate termination of Baton Rouge Chief of Police Carl Dabadie as well as the officers Blane Salamoni and Howie Lake."[44] Defendant Scott Wilson immediately orders that she be expelled from the room, "Johnny, would you please help her out please."[45]

52.    Defendant Scott Wilson did not give Ms. Epps any verbal warning.[46]

53.    When Ms. Epps called for the firing of the Police Chief and two Police Officers responsible for the death of Alton Sterling, Defendant Scott Wilson immediately and without warning directed that Ms. Epps be removed from the podium and taken out of the room by police.[47]

---

[44] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60) at 3:33.
[45] Defendants' Ex. 5 at 3:47.
[46] Defendants' Ex. 5.
[47] Defendants' Ex. 5.

54. Ms. Epps was removed from the podium and taken out of the Meeting Room by police.[48]

**vi.    On May 10, 2017, Scott Wilson had Lynne Espinoza removed from the Meeting Room as soon as she called for the firing of the Police Officers responsible for the death of Alton Sterling.**

55.    At a Metro-Council meeting on May 10, 2017, community-member Lynne Espinoza approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[49] Ms. Espinoza approached the podium during discussion of Item 60.  The topic of Item 60 was:

> Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations.[50]

56.    The screengrab below from Defendants' Exhibit 5, the video of the May 10, 2017 meeting, Item 60, shows Ms. Espinoza standing at the podium:



---

[48] Defendants' Ex. 5.
[49] Defendants' Ex. 5  (Full Video of May 10, 2017, Item 60).
[50] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 8.

20

57.    Lynne Espinoza began her comment by stating, "I like many people before me am here to speak to my Metro Council who I voted and elected to have here, and ask them to hear their citizens when we tell you that we feel hurt and we feel disrespected. We feel like we are not safe in this city and we are telling you concrete things you can do to make us feel safe in this city. We would like the officers involved to be fired because they do not protect us."[51] As soon as Ms. Espinoza called for the firing of the police officers, Defendant Scott Wilson ordered a police officer to remove her from the Meeting Room, "We're not talking about the officers involved. Johnny, please."[52]

58.    Defendant Scott Wilson did not give Ms. Espinoza any verbal warning.[53]

59.    When Ms. Espinoza called for the firing of the two Police Officers responsible for the death of Alton Sterling, Defendant Scott Wilson immediately and without warning directed that Ms. Espinoza be removed from the podium and taken out of the room by police.[54]

60.    Ms. Espinoza was removed from the podium and taken out of the Meeting Room by police.[55]

**vii.    On June 28, 2017, Scott Wilson had Arthur Reed removed from the Meeting Room after less than five seconds.**

61.    At a Metro-Council meeting on June 28, 2017, community-member Arthur Reed approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[56]  Mr. Reed approached the podium during discussion of Item 56.  The topic of Item 56 was:

---

[51] Defendants' Ex. 5 at 4:51.
[52] Defendants' Ex. 5 at 5:12.
[53] Defendants' Ex. 5.
[54] Defendants' Ex. 5.
[55] Defendants' Ex. 5.
[56] Plaintiffs' Ex. 22 (Full Video of June 28, 2017, Item 56).

Authorizing settlement of the claim of Liberty Mutual Insurance on behalf of American Fire & Casualty Company as subrogee of Billy Heroman's Flowerland for damages resulting from an auto accident, in the amount of $14,590.63. Amount shall be paid from the account designated "Insurance - Auto Liability" (012.4630000.644200). *This matter may be discussed in executive session..[57]

62.    The screengrab below from Plaintiffs' Exhibit 22, the full video of the June 28, 2017 meeting, Item 56, shows Mr. Reed standing at the podium:



63.    When Arthur Reed approached the podium, he began, "Good evening council, on this item we would like to know when you're going to stop pussyfooting around and handle this Alton Sterling situation."[58] Scott Wilson immediately ordered him removed, "Johnny, take him out."[59] As the officers approach, Mr. Reed continued "We ready for you to handle the Alton Sterling situation."[60]

64.    Defendant Scott Wilson did not give Mr. Reed any verbal warning.[61]

---

[57] Plaintiff's Ex. 16 (June 28, 2017 Agenda) at page 11.
[58] Plaintiffs' Ex. 22 (Full Video of June 28, 2017, Item 56) at 00:29.
[59] Plaintiffs' Ex. 22 at 00:33.
[60] Plaintiffs' Ex. 22.
[61] Plaintiffs' Ex. 22.

65.    Without any verbal warning, Defendant Scott Wilson directed that Mr. Reed be removed from the podium and taken out of the room by police.[62]

66. Mr. Reed was removed from the podium and taken out of the Meeting Room by police.[63]

**B.    The Mayor Pro-Tempore of the Metro Council Has Consistently Allowed People to Speak Far Off Agenda Topics – So Long as They Do Not Mention Alton Sterling or Criticize the Police.**

**i.    On September 27, 2017, Scott Wilson allowed Phillip Lillard to speak for more than a minute and a half, despite verbally recognizing that Mr. Lillard was off-topic.**

67.    At a Metro-Council meeting on September 27, 2017, community-member Phillip Lillard approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at that time.[64] Lillard approached the podium during discussion of Item 76. The topic of Item 76 was:

> Amend the 2017 allotment of positions for the City of Baton Rouge and Parish of East Baton Rouge, adopted by Ordinance #16404, dated 12/13/2016, so as to change the allotment of the Office of Community Development as follows, effective September 30, 2017, contingent upon execution of interagency professional service contracts.[65]

68.    The screengrab below from Plaintiff's Exhibit 23, the video of the September 27, 2017 meeting, shows Mr. Lillard standing at the podium:

---

[62] Plaintiffs' Ex. 22.
[63] Plaintiffs' Ex. 22.
[64] Plaintiffs' Ex. 23 (Full Video of Sept. 27, 2017, Item 76) at 0:19 (identifying Scott Wilson).
[65] Plaintiffs' Ex. 17 (Sept. 27, 2017 Agenda) at page 11.



69.    Mr. Lillard began his comment with "I didn't get to finish before. I would really like for y'all to reconsider the one that you just voted on and vote against it."[66] He then began to speak about the RDA and train stations. Defendant Scott Wilson interrupted Mr. Lillard, and directed him to speak on topic, saying "I understand, but we're talking about the deleting of these jobs. That's what we're talking about, Number 76. We're not talking about train stations. RDA will come up in Item 78. Well, I'm sorry, that's Item 78. We're on Item 76."[67]

70.    Mr. Lillard responded "Well, I'm against Item 76, okay, and I wish y'all would reconsider the other item. I'm against Item 76 because the other item shouldn't have passed, okay."[68] Mr. Lillard continued to speak about the RDA and train stations. Mr. Wilson interjected again, "Mr. Lillard, I'm going to ask you one more time to speak on Item 76, or you can please sit

---

[66] Plaintiffs' Ex. 23 (Full Video of Sept. 27, 2017, Item 76) at 0:30.
[67] Plaintiffs' Ex. 23 at 0:30.
[68] Plaintiffs' Ex. 23.

down."[69] Mr. Lillard made a final comment about asking the council to reconsider, and then sat down.[70]

71.    Mr. Lillard was speaking off the agenda item topic.[71] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[72]

72.    Defendant Scott Wilson explicitly understood Mr. Lillard to be speaking off-topic, and two times directed him to speak on topic.[73]

73.    But even though Mr. Lillard refused to speak on-topic, Defendant Scott Wilson allowed him to speak for more than a minute and a half.[74] At no point did Defendant Scott Wilson direct that Mr. Lillard be taken away from the podium by police.[75] At no point did Defendant Scott Wilson direct that Mr. Lillard be taken out of the room by police.[76]

**ii.    On June 14, 2017, Scott Wilson allowed Janice Weber to speak over him and to finish delivering her comment despite verbally recognizing that Mrs. Weber was off-topic.**

74.    At a Metro-Council meeting on June 14, 2017, community-member Janice Weber approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[77] Mrs. Weber approached the podium during discussion of Item 66. The topic of Item 66 was:

> Authorizing the Mayor-President to execute a Cooperative Endeavor Agreement with the East Baton Rouge Parish Council on Ageing, Inc. to govern the rights and duties of the parties with respect to the funds generated by the ad valorem tax approved by East Baton Rouge Parish voters on November 8, 2016. By Parish Attorney.[78]

---

[69] Plaintiffs' Ex. 23.
[70] Plaintiffs' Ex. 23.
[71] *Compare* Plaintiffs' Ex. 17 (Sept. 27, 2017 Agenda) at page 11, *with* Plaintiff's Ex. 9.
[72] Plaintiffs' Ex. 23.
[73] Plaintiffs' Ex. 23.
[74] Plaintiffs' Ex. 23.
[75] Plaintiffs' Ex. 23.
[76] Plaintiffs' Ex. 23.
[77] Plaintiffs' Ex. 24 (Full Video of June 14, 2017, Item 66).
[78] Plaintiffs' Ex. 18 (June 14, 2017 Agenda) at page 9.

75.    The screengrab below from Plaintiffs' Exhibit 24, the video of the June 14, 2017 meeting, shows Mrs. Weber standing at the podium:



76.    Mrs. Weber began her comment with, "I did pay attention to the millage information when it came out and I went to the polls and I voted."[79]  Mrs. Weber continues speaking on the millage for 20 seconds before Defendant Scott Wilson gently interrupts Mrs. Weber and explains the millage is the next item, "Don't let me interrupt you but this is for the CEA. The next item will be for the tax, so if you wanna talk on the tax…"[80] Mrs. Weber begins talking over Mr. Wilson and asks a question about the CEA, and Mr. Wilson allows her to finish.[81]

77.    Mrs. Weber was speaking off the agenda item topic.[82] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[83]

---

[79] Plaintiffs' Ex. 24 (Full Video of June 14, 2017, Item 66) at 00:02:08.
[80] Plaintiffs' Ex. 24 at 2:29.
[81] Plaintiffs' Ex.24.
[82] *Compare* Plaintiff's Ex. 18 (June 14, 2017 Agenda) at page 9, *with* Plaintiff's Ex. 24.
[83] Plaintiff's Ex. 24.

78.    Defendant Scott Wilson explicitly understood Mrs. Weber to be speaking off-topic, but politely told Mrs. Weber he did not mean to interrupt her comment on the tax and merely suggested that the tax would be the next item for comment.[84]

79.    Even though Mrs. Weber spoke over Defendant Scott Wilson, he allowed her to continue speaking.[85] At no point did Defendant Scott Wilson direct that Mrs. Weber be taken away from the podium by police.[86] At no point did Defendant Scott Wilson direct that Mrs. Weber be taken out of the room by police.[87]

**iii.    On June 14, 2017, after Scott Wilson warned Janice Weber that she was speaking off topic, Mr. Wilson allowed the next speaker, Dan Weber, to speak on the same topic as Janice Weber for nearly a full minute without any warning.**

80.    At a Metro-Council meeting on June 14, 2017, community-member Dan Weber approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[88]  Mr. Weber approached the podium, directly after community-member Jan Weber, during discussion of Item 66.[89] The topic of Item 66 was:

> Authorizing the Mayor-President to execute a Cooperative Endeavor Agreement with the East Baton Rouge Parish Council on Ageing, Inc. to govern the rights and duties of the parties with respect to the funds generated by the ad valorem tax approved by East Baton Rouge Parish voters on November 8, 2016. By Parish Attorney.[90]

81.    The screengrab below from Plantiffs' Exhibit 24, the video of the June 14, 2017 meeting, shows Mr. Weber standing at the podium:

---

[84] Plaintiffs' Ex. 24.
[85] Plaintiffs' Ex. 24.
[86] Plaintiffs' Ex. 24.
[87] Plaintiffs' Ex. 24.
[88] Plaintiff's Ex. 24 (Full Video of June 14, 2017, Item 66).
[89] Plaintiff's Ex. 24 (Full Video of June 14, 2017, Item 66) at 00:03:19.
[90] Plaintiff's Ex. 18 (June 14, 2017 Agenda) at page 9.



82.     Dan Weber began his comment with, "My concern if we sign this agreement that we have responsible people running the council, and if you go into the numbers…"[91] Defendant Scott Wilson allows Mr. Weber to speak for nearly a full minute about salaries, wages, travel, and amounts spent on food before interrupting him, "I'm sorry but this is really about the CEA. Our next item will be about the tax. If you wanna bring up about those numbers. You can come back… Ladies and gentlemen this is a public hearing I want you to speak on this item."[92]

83.     Mr. Weber was speaking off the agenda item topic.[93] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[94]

84.     Defendant Scott Wilson explicitly understood Mr. Weber to be speaking off-topic, but apologized for interrupting Mr. Weber's comment and directed Mr. Weber to come back to speak on the next item.[95]

---

[91] Plaintiffs' Ex. 24 (Full Video of June 14, 2017, Item 66) at 00:03:25.
[92] Plaintiffs' Ex. 24 at 4:17.
[93] *Compare* Plaintiffs' Ex. 18 (June 14, 2017 Agenda) at page 9, *with* Plaintiffs' Ex. 24.
[94] Plaintiffs' Ex. 24.
[95] Plaintiffs' Ex. 24.

85.     Even though, immediately prior to Mr. Weber approaching the podium, Defendant Scott Wilson had just explained that such comments should be directed to the next agenda item, Scott Wilson allowed Mr. Weber to speak off-topic for nearly a full minute.[96] At no point did Defendant Scott Wilson direct that Mr. Weber be taken away from the podium by police.[97] At no point did Defendant Scott Wilson direct that Mr. Weber be taken out of the room by police.[98]

iv.     **On August 23, 2017 Scott Wilson allowed Don Ortega to speak for nearly three minutes despite verbally recognizing that Mr. Ortega was off-topic.**

86.     At a Metro-Council meeting on August 23, 2017, community-member Don Ortega approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[99] Mr. Ortega approached the podium during discussion of Item 139. The topic of Item 139 was:

> Expressing the opposition of the Metropolitan Council to the proposal by BREC staff to move the Baton Rouge Zoo from its location on Thomas Road in East Baton Rouge Parish. By Councilwoman Banks
>
> Reason for emergency: The BREC Commission meets on August 24th to consider an item that would allow the BREC Superintendent to explore properties as a new site for the zoo. In order for this resolution to be forwarded to the Commission before its vote, it must be voted on by the Metro Council on August 23rd.[100]

87.     The screengrab below from Plaintiffs' Exhibit 25, the video of the August 23, 2017 meeting, Item 139, shows Mr. Ortega standing at the podium:

---

[96] Plaintiffs' Ex. 24.
[97] Plaintiffs' Ex. 24.
[98] Plaintiffs' Ex. 24.
[99] Plaintiffs' Ex. 25 (Full Video of August 23, 2017, Item 139).
[100] Plaintiffs' Ex. 19 (August 23, 2017 Agenda) at page 25.



88.    Don Ortega began his comment with, "I come to you today hopefully this is a simple unanimous vote sending a message to BREC…"[101] Mr. Ortega goes on to air particular grievances he has as a former employee of BREC. Defendant Scott Wilson allowed Mr. Ortega to speak on his personal experiences with BREC for 43 seconds before interrupting to request that Mr. Ortega "talk about the item of the zoo."[102] After Mr. Wilson warns Mr. Ortega a second time, Mr. Ortega is allowed to continue for a full minute and a half, "they've already decided what they want to do with the zoo…"[103] Mr. Ortega continues complaining about BREC's "history of doing things" and tangentially mentions the zoo.[104]

89.    Mr. Ortega was speaking off the agenda item topic.[105] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[106]

---

[101] Plaintiff's. 25 (Full Video of August 23, 2017, Item 139) at 00:01:08.
[102] Plaintiffs' Ex. 25 at 1:52.
[103] Plaintiffs' Ex. 25.. at 2:12.
[104] Plaintiffs' Ex. 25.
[105] *Compare* Plaintiff's Ex. 19 (August 23, 2017 Agenda) at page 25, *with* Plaintiff's Ex. 25.
[106] Plaintiffs' Ex. 25.

90.     Defendant Scott Wilson explicitly understood Mr. Ortega to be speaking off-topic and gave Mr. Ortega two warnings over the course of two minutes and fifty-one seconds that Mr. Ortega was at the podium.[107]

91.     Even though Defendant Scott Wilson gave Mr. Ortega two warnings, he allowed Mr. Ortega to continue airing his grievances regarding BREC, unrelated to the location of the zoo, for a full minute and a half even after the second warning.[108] At no point did Defendant Scott Wilson direct that Mr. Ortega be taken away from the podium by police.[109] At no point did Defendant Scott Wilson direct that Mr. Ortega be taken out of the room by police.[110]

**v.     On August 23, 2017 Scott Wilson allowed Russell Kelly to speak for an additional 25 seconds after verbally recognizing that Mr. Kelly was off-topic.**

92.     At a Metro-Council meeting on August 23, 2017, community-member Russell Kelly approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.[111] Mr. Kelly approached the podium during discussion of Item 101. The topic of Item 101 was:

> Expressing the support of the Metropolitan Council for the Investigation by the Louisiana Department of Justice into the July 5, 2016 shooting of Alton Sterling to be conducted and concluded as expeditiously a s possible.[112]

93.     The screengrab below from Plaintiffs' Exhibit 26, the video of the August 23, 2017 meeting, Item 101, shows Mr. Kelly standing at the podium:

---

[107] Plaintiffs' Ex. 25.
[108] Plaintiffs' Ex. 25.
[109] Plaintiffs' Ex. 25.
[110] Plaintiffs' Ex. 25.
[111] Plaintiffs' Ex. 26 (Full Video of August 23, 2017, Item 101).
[112] Plaintiff's Ex. 19 (August 23, 2017 Agenda) at page 16.



94.    Russell Kelly began his comment with, "What I wanna speak about is the efficiency of this council on dealing with these types of matters. Is there any type of training? Are y'all just put together? Or do y'all actually do any type of team training to help y'all understand and work with each other? Let me tell ya a bit about team training…."[113] Defendant Scott Wilson allowed Mr. Kelly to speak about team training for approximately 22 seconds before directing Mr. Kelly to speak on topic, "hold on we're talking really about the attorney general…"[114] After this interruption, Scott Wilson allows Mr. Kelly to continue talking about team training for approximately another 25 seconds.[115]

95.    Mr. Kelly was speaking off the agenda item topic.[116] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[117]

---

[113] Plaintiffs' Ex. 26 (Full Video of August 23, 2017, Item 101) at 00:07:29.
[114] Plainitffs' Ex. 26.
[115] Plaintiffs' Ex. 26.
[116] *Compare* Plaintiff's Ex. 19 (August 23, 2017 Agenda) at page 16, *with* Plaintiff's Ex. 26.
[117] Plaintiffs' Ex. 26.

96.    Defendant Scott Wilson explicitly understood Mr. Kelly to be speaking off-topic and gave Mr. Kelly one verbal warning while Mr. Kelly was at the podium.[118]

97.    Even though Defendant Scott Wilson warned Mr. Kelly, he allowed Mr. Kelly to continue speaking about team training after this warning.[119] At no point did Defendant Scott Wilson direct that Mr. Kelly be taken away from the podium by police.[120] At no point did Defendant Scott Wilson direct that Mr. Kelly be taken out of the room by police.[121]

**vi.    On May 14, 2014, Jim Mora was allowed to read from a Dr. Suess book for two minutes and was not given a single warning.**

98.    At a Metro-Council meeting on May 14, 2014, community-member Jim Mora approached the podium to provide public comment. Mayor Pro-Tempore Chandler Loupe was presiding over the meeting at the time.[122] Mr. Mora approached the podium during discussion of Items 13Y & 13Z.  The topic of Item 13Y & 13Z was:

> Y. Providing for the extension of the city limits of the City of Baton Rouge and the inclusion of the area described in the petition for annexation submitted by Our Lady of the Lake Hospital, Inc., Consisting of the Following Parcels . . .
>
> Z.  Providing for the extension of the city limits of the City of Baton Rouge and the inclusion of the area described in the petition for annexation submitted by Mall of Louisiana, LLC; Mall of Louisiana Land, LLC; General Health System, Baton Rouge General Medical Center; and Level Ventures, LLC, consisting of the following parcels . . . .[123]

99.    The screengrab below from Plaintiffs' Exhibit 27, the video of the May 14, 2014 meeting, shows Mr. Mora standing at the podium:

---

[118] Plaintiffs' Ex. 26.
[119] Plaintiffs' Ex. 26.
[120] Plaintiffs' Ex. 26.
[121] Plaintiffs' Ex. 26.
[122] Plaintiff's Ex. 27 (Excerpt of May 14, 2014, Item 13Y & 13Z) at 00:01(identifying Chandler Loupe).
[123] Plaintiffs' Ex. 20 (May 14, 2014 Agenda, Item 13Y & 13Z) at pages 16-17.



100.   Jim Mora began his comment by stating that he would not give an opinion either way on the Meeting Item and would instead use his two minutes to read from a book.[124] Mr. Mora proceeds to read from the book "Oh, the Places You'll Go!" by Dr. Seuss. Mr. Mora was allowed to proceed uninterrupted for the full two minutes.[125]

101.   Mr. Mora was speaking off the agenda item topic.[126] But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling.[127]

102.   Mr. Mora was not given any verbal warnings while he was at the podium.[128]

103.   Mr. Mora was allowed to speak and read from a Dr. Seuss book for a full two minutes uninterrupted.[129] At no point did Mayor Pro-Tempore Chandler Loupe direct that Mr.

---

[124] Plaintiffs' Ex. 27 (Full Video of May 14, 2014, Item 13Y & 13Z) at 46:59
[125] Plaintiffs' Ex. 27.
[126] *Compare* Plaintiff's Ex. 20 (May 14, 2014 Agenda, Item 13Y & 13Z) at pages 16-17, *with* Plaintiff's Ex. 27.
[127] Plaintiffs' Ex. 27.
[128] Plaintiffs' Ex. 27.
[129] Plaintiffs' Ex. 27.

Mora be taken away from the podium by police.[130] At no point did Mayor Pro-Tempore Chandler

Loupe direct that Mr. Mora be taken out of the room by police.[131]

## IV.    CONCLUSIONS OF LAW

### A.    <u>Jurisdiction</u>

104.    Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate their rights

guaranteed by the First Amendment and Fourteenth Amendments to the United States

Constitution.

105.    Defendant Scott Wilson does not contest jurisdiction.[132] The Court therefore finds

that it has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B.    <u>Plaintiffs proffer five theories of legal liability against Defendant Wilson, under the First and Fourteenth Amendments to the U.S. Constitution.</u>

106.    Plaintiffs proffer five theories of liability by which Defendant Wilson violated their

constitutional rights:

A.    Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs even though they were speaking on topic.

B.    Even if Plaintiffs were off topic, Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs and others who mentioned Alton Sterling or criticized the police, but chose not to expel other off-topic persons who did not mention Alton Sterling or criticize the police.

C.    Even if it was permissible for Defendant Wilson remove Plaintiffs from the public comment podium, Plaintiffs had an independent First Amendment right to remain in the chamber and attend the meeting.

D.    Defendant Wilson violated the doctrine of prior restraint when he ordered Eugene Collins removed before Collins could speak.

E.    Plaintiffs are Black, and Scott Wilson treated them differently than white speakers on account of their race.

---

[130] Plaintiffs' Ex. 27.
[131] Plaintiffs' Ex. 27..
[132] R. Doc. 110 (Joint Proposed Pre-Trial Order) at Page 1.

107.     Theories A and B involve the doctrine of viewpoint discrimination in violation of the First Amendment. As described below, it is "well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."[133]

108.     Theory C involves the Plaintiffs' "First Amendment right to attend a public meeting."[134]

109.     Theory D involves the doctrine of prior restraint in violation of the First Amendment.

110.     Theory E involves the doctrine of equal protection as guaranteed by the Fourteenth Amendment.

**C.     Viewpoint-based restrictions on speech "are *per se* violative of the First Amendment."**

111.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."  The First Amendment is incorporated against state actors by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983.

112.     Under the First Amendment, it "is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[135] To do so constitutes viewpoint discrimination in violation of the First Amendment.

113.     This principle was reaffirmed this year by the U.S. Supreme Court: "Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"[136]

---

[133] *Chiu v. Plano Independent School Dist.,* 260 F. 3d 330, 350 (5th 2001).

[134] *Heaney v. Roberts,* 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015).

[135] *Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 350 (5th 2001), *quoting Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).

[136]*Barr v. American Assn. of Political Consultants, Inc.*, 591 U. S. ____ (2020), *quoting Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

114.    As a result, "[v]iewpoint-based restrictions on speech are *per se* violative of the First Amendment."[137] Viewpoint-based restrictions exist "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[138]

115.    In terms of First Amendment analysis, a city or parish council meeting is a limited public forum.[139] In such a forum, the government may apply reasonable time, place, and manner restrictions to speech, so long as the restriction "does not discriminate against speech on the basis of viewpoint."[140] For example, a government body may require speakers during public comment at a meeting to remain on-topic.[141]

116.    But regardless of time, place, and manner restrictions, "is beyond debate that the law prohibits viewpoint discrimination in a limited public forum."[142]

117.    In a meeting with an on-topic rule, on-topic speech is treated as if it were in a traditional public forum, and <u>any</u> restriction is subject to strict scrutiny.[143]  Off-topic speech at such a meeting receives less protection, but still cannot be subject to viewpoint discrimination.

118.    Thus, a public body is permitted to have a "stay on topic" rule for public comment – but under no circumstances can it selectively enforce that rule in a manner that constitutes viewpoint discrimination.

---

[137] *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017).

[138] *Heaney v. Roberts, 846 F. 3d 795, 802 (5th Cir. 2017).  .*

[139] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015) ("A city council meeting is generally recognized to be a 'limited public forum,' which means that the government does not have to allow persons to engage in every type of speech."), *citing Fairchild v. Liberty Indep. Sch. Dist*., 597 F.3d 747, 759 (5th Cir. 2010), *affirmed in Heaney v. Roberts*, 846 F. 3d 795, 801 (5th Cir. 2017) (applying limited public forum analysis to Jefferson Parish Council meeting). *See Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 334 (5th 2001) for an in-depth discussion of the "tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property."

[140] *Heaney, 846 F. 3d  at 801-802.*

[141] *Chiu v. Plano Independent School Dist., 260 F. 3d 330, 354-355 (5th 2001).*

[142] *Heaney v. Roberts, 846 F. 3d 795, 802 (5th Cir. 2017), citing Good News Club v. Milford Cent. Sch*., 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001).

[143] *Id.* at 347.

119.    And so although a council chair has the power to enforce neutral restrictions on speech to keep a meeting on track, "[i]t is beyond debate that the law prohibits viewpoint discrimination" in such a context.[144] It is "well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."[145]

120.    This is true even in a crisis, because there "are certain constitutional red lines that a State may not cross even in a crisis. Those red lines include racial discrimination, religious discrimination, and content-based suppression of speech."[146]

121.    And when a government agent restricts speech that is political in nature, judicial scrutiny must be even more exacting.[147] That is because "activities such as speaking, distributing literature, displaying signs, petitioning for change, and disseminating information concerning issues of public concern are central to the protections of the First Amendment."[148]

122.    Thus, Defendant is completely correct when he argues that the topic restrictions of the Louisiana Open Meetings Law and Section 1.7(a) of the Baton Rouge Code of Ordinances are on their face proper. But that assertion is not responsive to Plaintiffs' claims, because Plaintiffs are not raising a facial challenge to those rules. Plaintiffs are raising an *as-applied* challenge, because government agents may only enforce topic rules in a manner "consistent with the First

---

[144] *Heaney v. Roberts*, 846 F. 3d 795, 801 (5th Cir. 2017).

[145] *Chiu, supra,* 260 F.3d at 350. *See also Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir.1992) ("[V]iewpoint discrimination violates the First Amendment regardless of the forum's classification.").

[146] *Calvary Chapel Dayton Valley v. Sisolak*, 591 U.S. ____ (2020), *Kavanaugh, J., dissenting from denial of application for injunctive relief.*

[147] *Barr v. American Assn. of Political Consultants, Inc*., 591 U. S. ____ (2020), *Breyer, J., concurring in judgment, citing Buckley v. American Constitutional Law Foundation, Inc*., 525 U. S. 182, 186–187 (1999) (heightened protection for "core political speech"); *Rosenberger v. Rector and Visitors of Univ. of Va*., 515 U. S. 819, 829–830 (1995) (government discrimination on basis of "particular views taken by speakers on a subject" presumptively unconstitutional); *Boos v. Barry*, 485 U. S. 312, 321 (1988) ("content-based restriction[s] on political speech in a public forum" subject to "most exacting scrutiny" (emphasis deleted)); *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 U. S. 37, 45–46 (1983) (content-based exclusions in public forums subject to strict scrutiny).

[148] *Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 334 (5th Cir. 2001)

Amendment."[149] Specifically, the "government cannot **under any circumstances** . . . restrict speech based on viewpoint" – regardless of whether the government has facially neutral topic rules.[150]

123.    Thus, the "pivotal question" in this case is Mr. Wilson's motive in expelling Plaintiffs. If he was motivated to expel Plaintiffs due to the "opinion or perspective of the speaker," then "he violated [plaintiff's] clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum."[151]

124.    An improper motive may be inferred by when a council president expels some people for speaking off-topic, but not others. As the court in *Heaney v. Roberts* explained:

> For instance, if Heaney had wanted to address the council about parking meters in Orleans Parish, Roberts could have validly prohibited him from doing so because such a topic would be wholly off-subject and beyond the scope of the Jefferson Parish Council's business and control. A content-based restriction of this nature surely could pass muster under the appropriate level of scrutiny. And assuming that all other speakers were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based.[152]

125.    In sum, as the Fifth Circuit in *Heaney* concluded, it is "beyond cavil" that a reasonable chair of council meeting "would have known that it would be impermissible under the First Amendment to prevent [a person] from speaking and to eject him from the meeting based on the message he was conveying."[153]

---

[149] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017).
[150] *Id.* (emphasis added).
[151] *Heaney v. Roberts*, 846 F. 3d 795, 802-803 (5th Cir. 2017).
[152] *Heaney v. Roberts*, 147 F. Supp. 3d 600 at fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017).
[153] *Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017); *see also Chiu, supra*, 260 F.3d at 350 ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum.")

**D.    Here, Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs even though they were speaking on topic.**

126.    Scott Wilson ordered police to remove six citizens from the May 10, 2017 Metro Council meeting, and one from the June 28, 2017 meeting.

127.    All had something in common: they were there to talk about the police killing of Alton Sterling and their criticism of the Baton Rouge Police Department.

128.    Mr. Wilson ordered the police to remove these seven citizens after they said the words "Alton Sterling," or criticized the police – or if Mr. Wilson *thought* they were going to talk about one of those topics.

129.    Among those seven were the three Plaintiffs – Michael McClanahan, Eugene Collins, and Gary Chambers.

130.    Two of the Plaintiffs (McClanahan and Chambers) spoke on topics of city business that were not directly related to Alton Sterling or the police.

131.    But McClanahan and Chambers were nevertheless on-topic, because it was their viewpoint that the Baton Rouge government should not return to business-as-usual without first resolving how to respond to the killing of Alton Sterling.  Plaintiff McClanahan made this explicit, saying "I oppose the sewer item because on July the fifth, 2016, Alton Sterling was killed and your office continued to conduct business as usual. Since that time, the City of Baton Rouge has continued to conduct business – and I oppose this because that is not *right*."[154]

132.    In this, they were expressing the same theory of being on-topic as Philip Lillard, who said "I'm against Item 76 because the other item shouldn't have passed, okay."[155] But Scott

---

[154] Defendants' Ex. 2.
[155] Plaintiffs' Ex.23.

Wilson allowed Lillard to continue speaking, and ordered police to remove McClanahan and Chambers.

133.    Eugene Collins, however, was even more specifically on-topic. He spoke during Agenda Item 60. The topic of that item was: "Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations."

134.    Agenda Item 60 was directly related to the Alton Sterling killing, because the Alton Sterling killing was the "driving force" behind House Bill 276.[156]   The bill specified how long police officers would have to hire an attorney before they are questioned for an incident involving shooting and seriously injuring or killing someone.  It had originally contained a provision about how long an officer should be paid and not paid while on administrative leave for a shooting – a issue of community concern about the officers involved in the killing of Alton Sterling.

135.    Thus, Collins approaching the podium to speak about Alton Sterling was directly on-topic.

136.    In limited public forum with an on-topic rule, any restriction on on-topic speech is subject to strict scrutiny.[157] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[158] Specifically, the "State must demonstrate compelling reasons for restricting access to a single class

---

[156] Julia O'Donoghue, *Alton Sterling shooting prompts new policing bills in Louisiana House*, Times Picayune, April 27, 2017.
[157] *Id.* at 347.
[158] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

of speakers, a single viewpoint, or a single subject."[159] Strict scrutiny is "a hard standard to meet" and "leads to almost certain legal condemnation."[160]

137.    Here, Defendant has demonstrated no compelling reason for restricting Plaintiffs' speech. At most, Plaintiffs would have finished their public comment period – for a grand total of nine minutes of speech. Avoiding nine minutes of speech cannot be such a compelling interest to clear the extremely high bar of strict scrutiny. Nor was Scott Wilson's remedy – ordering them removed by police from the meeting room – narrowly tailored. He could have asked them to "please sit down," as he did with Philip Lillard.[161] Or he could have asked police to escort them back to their seats, rather than removing them entirely from the meeting hall.

138.    Thus, because Plaintiffs were speaking on-topic and because Defendant Wilson has not demonstrated the compelling interest and narrow tailoring necessary to clear strict scrutiny, judgment is granted on Plaintiffs' First Amendment claim.

### E.    Here, even if Plaintiffs were off-topic, Defendant Wilson engaged in viewpoint discrimination, because he expelled Plaintiffs but not other off-topic persons.

139.    Even if a person is speaking off-topic in a limited public forum, his or her speech still may not be restricted due to viewpoint discrimination.

140.    Viewpoint discrimination may be inferred from the differential treatment of off-topic speakers who speak from different viewpoints. As the court in *Heaney v. Roberts* explained: "For instance, if Heaney had wanted to address the council about parking meters in Orleans Parish, Roberts could have validly prohibited him from doing so because such a topic would be wholly off-subject and beyond the scope of the Jefferson Parish Council's business and

---

[159] *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 US 37, 55 (1983).
[160] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).
[161] Plaintiffs' Ex. 23.

control. . . . And assuming that **all other speakers** were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based.[162]

141.    Here, all three Plaintiff's speech was restricted when Defendant Scott Wilson ordered them removed from the meeting room by police.

142.    Defendant Wilson offers two viewpoint-neutral explanations for his actions, neither of which is supported by the evidence.

143.    First, he argues that that he was merely enforcing Section 1.7(a) of the Baton Rouge Code of Ordinances, which requires that speakers remain on-topic during public comment.

144.    But the evidence produced at trial shows that Scott Wilson did not treat other off-topic speakers the way he treated Plaintiffs or the four other persons he ordered removed. When people spoke off-topic but did not mention Alton Sterling or criticize the police, Mr. Wilson treated them with solicitude and attempted to gently guide them back to the topic at hand. For example, when Ms. Weber spoke explicitly off topic, Mr. Wilson responded by saying "**Don't let me interrupt you** but this is for the CEA. The next item will be for the tax, so if you want to talk on the tax…"[163] Or with Mr. Weber, he said "**I'm sorry** but this is really about the CEA. Our next item will be about the tax. If you want to bring up about those numbers. You can come back." [164]

145.    Plaintiffs at trial showed videos of six explicitly off-topic public commenters who were allowed to continue speaking without the Mayor Pro-Tem ordering police to remove them. One speaker even read a Dr. Suess book cover-to-cover without interruption.

146.    By contrast, Plaintiffs showed seven examples of speakers who mentioned Alton Sterling or criticized the police and were immediately ordered removed by Scott Wilson.

---

[162] *Heaney v. Roberts*, 147 F. Supp. 3d 600 at fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017) (emphasis added).
[163] Plaintiffs' Ex. 24 at 2:29.
[164] Plaintiffs' Ex. 24 at 4:17.

147.     Defendant could not offer a single example of a person he ordered removed for being off-topic who had not mentioned Alton Sterling or criticized the police.

148.     Defendant Wilson's alternative viewpoint-neutral explanation is that there was something unique about May 10, 2017, in that he had received word that protesters were going to "shut down" the City Council meeting.

149.     But even if that supposed threat were a concern of his, once the meeting began he would have realized that the protesters' chosen method was merely utilize their right to provide public comment – *i.e.*, no true threat at all.

150.     Furthermore, the evidence provided at trial shows that Wilson's speech restrictions were <u>not</u> unique to May 10, 2017. Six weeks later, on June 28, 2017, Wilson engaged in the same behavior with speaker Arthur Reed. Within seconds of Mr. Reed mentioning "the Alton Sterling situation" during public comment, Wilson ordered police to remove him from the room.[165] Accordingly, Mr. Wilson's argument that his behavior was a specific reaction to the unique context of May 10, 2017, is unavailing.

151.     Thus, even if Plaintiffs were speaking off-topic, judgment is granted on Plaintiffs' First Amendment claim because the preponderance of the evidence demonstrates that Wilson engaged in viewpoint discrimination.

---

[165] Plaintiffs' Ex. 22 at 00:29.

**F.** **Prior restraint always violates the First Amendment unless the harm arising from the restrained speech would be "both great and certain" and cannot be mitigated through "less intrusive measures."**

152.    "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[166] That is because prior restraint "has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time."[167] The "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment."[168]

153.    As the Supreme Court recognized in *Davis:*

Even where questions of allegedly urgent national security, or competing constitutional interests, are concerned, we have imposed this "most extraordinary remed[y]" only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures.[169]

154.    Thus, prior restraint is only allowable when the harm arising from the prevented speech would be "both great and certain" and cannot be mitigated through "less intrusive measures."

**G.** **Here, Defendant Wilson engaged in illegal prior restraint when he expelled Plaintiff Eugene Collins before Eugene Collins could speak.**

155.    Here, Defendant Wilson engaged in prior restraint when he ordered police to remove Eugene Collins from the room after only 2.5 seconds – before Collins could even begin his remarks. Wilson ordered Collins removed because of what Wilson *thought* Collins would say.

---

[166] *CBS v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 914, 127 L.Ed.2d 358 (1994); *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).
[167] *CBS v. Davis*, 510 U.S. 1315, 1317 (1994);
[168] *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390 (1973)
[169] *CBS v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 914, 127 L.Ed.2d 358 (1994)

156.    Wilson guessed that Collins would speak about Alton Sterling. But there would be no "great and certain" harm from such speech, especially considering the topic Collins was speaking on was directly related to the shooting of Alton Sterling.

157.    And it is not the case that any hypothetical harm from Collins' could not be mitigated through "less intrusive measures." All Wilson had to do was let Collins speak for <u>three minutes</u> – and then Collins' time would be over.

158.    Three minutes of speech by a member of the public on a topic of public interest is not a harm that exceeds the "urgent national security" harm contemplated in *CBS v. Davis*.

159.    Therefore, Defendant Wilson violated Collins' First Amendment right to be free of prior restraint without adequate justification when he ordered Collins removed from the meeting.

**H.    People have a First Amendment right to attend public meetings, independent of their right to free speech.**

160.    Citizens have a "First Amendment right to attend a public meeting."[170] A government decision to exclude a speaker from a traditional or designated public forum is subject to strict scrutiny.[171] That is, the government may not exclude a person from a forum unless it is "necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."[172]

160.    As a result, it can be a separate and independent First Amendment violation when a speaker at a meeting is removed not just from the podium, but from the meeting entirely. As the court in *Heaney* explained, the "suggestion that the First Amendment violation began and ended

---

[170] *Heaney v. Roberts,* 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015), *citing Laskowski v. Snyder*, No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007); *Timmon v. Wood*, 633 F.Supp.2d 453 (W.D.Mich.2008).
[171] *Laskowski v. Snyder*, No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007), *citing Ark. Educ. Telev. Comm'n v. Forbes,* 523 U.S. 666, 677 (1998).
[172] *Cornelius v. NAACP Legal Def. Educ. Fund, Inc*., 473 U.S. 788, 800 (1985), *as cited in Laskowski v. Snyder,* No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007).

with Heaney's speech would be ignoring the fact that as a citizen Heaney had a First Amendment right to attend a public meeting."[173]

## I.    Here, Defendant Wilson violated Plaintiffs' First Amendment right to attend public meetings by having them not only removed from the podium, but taken entirely out of the meeting space.

161.    Here, Defendant Wilson ordered that Plaintiffs be removed not only from the public comment podium, but the entire meeting room. As such, he restricted their First Amendment right to attend the remainder of the public meeting. Such a restriction is only valid if it meets strict scrutiny – a "a hard standard to meet" that "leads to almost certain legal condemnation."[174] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[175]

162.    Here, Defendant identified no compelling interest in removing Plaintiffs from the meeting room. They had not been disruptive before their public comment, and there was no reason they could not remain in the room. Nor was Defendant's action narrowly tailored – he could have asked them to return to their seat without police intervention (as he did with Mr. Lillard) and then seen whether they would comply.

163.    Therefore, Defendant Wilson violated Plaintiffs' First Amendment right to attend a public meeting when he ordered them removed from the room without passing the exacting test of strict scrutiny.

---

[173] *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015)

[174] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).

[175] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

**J.      Disparate treatment on the basis of race violates the equal protection guarantee Fourteenth Amendment unless it can meet strict scrutiny.**

164.    The Fourteenth Amendment to the United States Constitution bars the denial "to any person . . . the equal protection of the laws." As a result, local government actors cannot discriminate on the basis of race without being subject to strict scrutiny.[176]

165.    Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[177] Strict scrutiny is "a hard standard to meet" and "leads to almost certain legal condemnation."[178]

**K.      Defendant Wilson engaged in race discrimination when he expelled Black speakers who criticized the police within seconds, but allowed white critics to speak for several minutes.**

166.    Here, Defendant Wilson treated off-topic commenters differently depending on the viewpoint they were expressing. But within that group, it also appears that he discriminated on the basis of race. Five Black people (McClanahan, Chambers, Collins, Epps, and Reed) who mentioned Alton Sterling or criticized the police were removed almost immediately. All of them were persons of color. Two white women, Coby Weaver and Lynne Espinoza also mentioned Alton Sterling and criticized the police. Defendant Scott Wilson allowed Ms. Weaver to speak significantly longer than the others.  In fact, Scott Wilson only ordered Ms. Weaver removed *after she pointed out the racial disparity.*

---

[176] *See Loving v. Virginia*, 388 US 1, 12 (1967) ("We have consistently denied the constitutionality of measures which restrict the rights of citizens on account of race."); *Fisher v. Univ. of Tex. (Fisher II),* 136 S. Ct. 2198, 2208 (2016) ("because racial characteristics so seldom provide a relevant basis for disparate treatment," "[r]ace may not be considered [by a university] unless [its] admissions process can withstand strict scrutiny.")

[177] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

[178] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).

167.    At trial, Defendant Wilson offered no compelling interest justifying the differential treatment based on race. He simply denied that there was any such difference. The video, however, suggests beyond a preponderance of the evidence that there was differential treatment on the basis of race. Accordingly, Plaintiffs' 14th Amendment claim is granted.

**V.    SUMMARY**

168.    This Court concludes as follows:

169.    Because Plaintiffs restrict speech was on-topic and because Defendant Wilson has not demonstrated the compelling interest and narrow tailoring necessary to clear strict scrutiny, judgment is granted on Plaintiffs' First Amendment claim.

170.    Even if Plaintiffs were speaking off-topic, judgment is granted on Plaintiffs' First Amendment claim in the alternative because the preponderance of the evidence demonstrates that Wilson engaged in viewpoint discrimination.

171.    Judgment is granted on Eugene Collins First Amendment claim in the alternative because the preponderance of the evidence shows that Defendant Wilson violated Collins' First Amendment right to be free of prior restraint without adequate justification.

172.    Judgment is granted on Plaintiffs' First Amendment claim because the preponderance of the evidence shows that Defendant Wilson violated Plaintiffs' right to attend a public meeting when he ordered them removed from the room without passing the test of strict scrutiny.

173.    Judgment is granted on Plaintiffs' 14th Amendment because the preponderance of the evidence shows an unjustified pattern of differential treatment on the basis of race.

Respectfully submitted,

*/s/ William Most___*
WILLIAM MOST (No. 36914)
Law Office of William Most, L.L.C.
Sarah Chervinsky (La. Bar No. 33772)
David Lanser (La. Bar No. 37764)
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

BRIAN E. LAHTI
Utah Bar No. 16298, (PHV)
Tel: (801) 823-6464
Email: blahti@lhlitigation.com