**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| MICHAEL McCLANAHAN, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 17-cv-01720-JWD-RLB |
| | ) | |
| SCOTT WILSON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**PLAINTIFF'S TRIAL BRIEF**

On July 5, 2016, Baton Rouge police officers shot and killed Alton Sterling.

On May 3, 2017, the U.S. Department of Justice announced that it was closing its investigation into the killing of Alton Sterling without charges.

On May 10, 2017, the Baton Rouge Metro Council held a public meeting. Some of the agenda items addressed the issue of officer-involved shootings. Others did not, and involved the business-as-usual of the City. A number of community members, including Plaintiffs Michael McClanahan, Eugene Collins, and Gary Chambers, went to the May 10 meeting to voice their viewpoint: that the Baton Rouge government should not return to business-as-usual without first resolving how to respond to the killing.

Defendant Scott Wilson presided over the May 10, 2017 meeting as Baton Rouge Mayor Pro-Tempore. As usual, after each agenda item he invited members of the public to provide three minutes of public comment per person.

But that day he did not let every person finish their three minutes of comment. If a person said the words "Alton Sterling" or criticized the police – or if Wilson *thought* they were going to do so – Wilson immediately ordered police to remove them from the room. He did this six times on May 10, 2017 and then again on June 28, 2017. Plaintiffs contend this violated their First

1

Amendment right to freedom of speech.

Wilson's defense is that he was merely enforcing the Metro Council's rule that public comment must be "on topic." It is true that First Amendment law allows a city to have an "on topic" rule in a limited public forum like the Metro Council chamber. But the law also strictly forbids a city from *applying* that rule in a way that discriminates on viewpoint. Accordingly, the Fifth Circuit has held that it is "beyond cavil" that a reasonable chair of council meeting would know that it is "impermissible under the First Amendment to prevent [a person] from speaking and to eject him from the meeting based on the message he was conveying."[1]

At trial, Plaintiffs will show that Wilson applied the "on topic" rule based on the message Plaintiffs were conveying. They will show the videos of six community members who went explicitly off-topic but were allowed to finish their public comment without being removed – because they did not mention Alton Sterling or criticize the police. (Those videos are summarized in Table 2, *infra*.) By comparison, Plaintiffs will show videos of the seven times Defendant Scott Wilson ordered police to remove people as soon as they said the words "Alton Sterling" or criticized the police. (Those videos are summarized in Table 1, *infra*.)

Plaintiffs will win if the preponderance of the evidence supports any of their five theories of liability: (1) Plaintiffs were on-topic, and so any restriction on their speech must pass strict scrutiny; (2) Even if off-topic, Defendant Wilson engaged in impermissible viewpoint discrimination; (3) Plaintiffs had an independent First Amendment right to remain attend the meeting, and so should not have been removed from the meeting room; (4) Eugene Collins was subject to prior restraint, because Defendant Wilson had him removed before he could speak, on the basis of what Scott Wilson *thought* he was going to say; and (5) Plaintiffs are Black, and Scott Wilson treated them differently than white speakers on account of their race. Judgment should issue for Plaintiffs.

---

[1] *Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017); *see also Chiu, supra*, 260 F.3d at 350 ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum.")

**Table 1:**    **Summary of Evidence: Scott Wilson ordered seven individuals removed after they mentioned Alton Sterling or criticized the police.**

| Date | Item | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? | Ex. No. |
|------|------|---------|-------------------|-------------------|-----------|---------|
| 5/10/17 | 50 | Michael McClanahan | Settlement of sewer back-up claim | "on July the fifth, 2016, Alton Sterling was killed. . ." | Yes | D's 2 |
| 5/10/17 | 51 | Gary Chambers | Settlement of sewer back-up claim | "Police department. . ." | Yes | D's 3 |
| 5/10/17 | 60 | Eugene Collins | H.B. 276, about officer incident investigations. | "I oppose this motion because on July 5th -" | Yes | D's 5 |
| 5/10/17 | 60 | Coby Weaver | H.B. 276, about officer incident investigations. | Alton Sterling, and fact that "two black men" removed. | Yes | D's 5 |
| 5/10/17 | 60 | Sydney Epps | H.B. 276, about officer incident investigations. | Termination of Chief Dabadie | Yes | D's 5 |
| 5/10/17 | 60 | Lynne Espinoza | H.B. 276, about officer incident investigations. | Asks for officers to be fired. | Yes | D's 5 |
| 6/28/17 | 56 | Arthur Reed | Settlement of insurance claim | Alton Sterling | Yes | Pl's 22 |

**Table 2:**    **Summary of Evidence: Six individuals who spoke completely off-topic – but did not mention Alton Sterling or criticize the police – and were not removed.**

| Date | Item | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? | Ex. No. |
|------|------|---------|-------------------|-------------------|-----------|---------|
| 9/27/2017 | 76 | Phillip Lillard | Office of Community Development positions | Only discusses previous item. "I'm against item 76 because the other item shouldn't have passed." | No. | Pl's 9 |
| 6/14/2017 | 66 | Janice Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. | Pl's 10 |
| 6/14/2017 | 66 | Dan Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. | Pl's 11 |
| 8/23/2017 | 139 | Don Ortega | Moving the Baton Rouge Zoo | Complaints about his former job with BREC. | No. | Pl's 12 |
| 8/23/2017 | 101 | Russell Kelly | Support for La. DOJ investigation into Alton Sterling shooting. | Team training for Metro Council. | No. | Pl's 13 |
| 5/14/2014 | 13Z/13Y | Jim Mora | Annexation of St. George | Reads Dr. Seuss book cover to cover. | No. | Pl's 14 |

## I.   STATEMENT OF FACTS

**A.   Scott Wilson Directed Police to Remove Citizens from Metro-Council Meetings When They Mentioned Alton Sterling, or Criticized the Police, or When Scott Wilson *Thought* They Were Going to Do So.**

Defendant Scott Wilson's has repeatedly ordered police to forcibly remove persons from public comment when they say the words "Alton Sterling" or criticize the police. This happened six times at the May 10, 2017 meeting, and at least one more time about six weeks later.

The first was Plaintiff Michael McClanahan, who was, at the time, the head of the East Baton Rouge NAACP. He approached the podium to give public comment about Item 50, which addressed compensation for a sewer back-up.[2] McClanahan only got this far before Mr. Wilson interrupted him: *"*Good afternoon, ladies and gentlemen of the council. Mike McClanahan, president of East Baton Rouge NAACP. I'm speaking against the proposed item on the agenda today as a citizen of this community. I believe –"[3] Then, when McClanahan said the words "Alton Sterling," Scott Wilson ordered Michael McClanahan removed <u>less than one second </u>later.[4] Two plainclothes police officers removed the microphone from Mr. McClanahan, grabbed him by the arm, and took him away from the podium and out of the room.[5]

Next was Plaintiff Gary Chambers. The topic was Agenda Item 51, another item about compensation for a sewer back-up. As soon as Mr. Chambers said the words "police department," Scott Wilson ordered police to remove him[6] Gary Chambers was only at the podium for eight

---

[2] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 7.
[3] Defendants' Ex. 2 (Full Video of May 10, 2017, Item 50) at 00:30-00:43.
[4] Defendants' Ex. 2. Mr. McClanahan says "Alton Sterling" at 1:18. Mr. Wilson begins his order to remove Mr. McClanahan at 1:19.
[5] Defendants' Ex. 2.
[6] Defendants' Ex. 3 (Full Video of May 10, 2017, Item 51) at 00:19.

seconds before Scott Wilson ordered him "taken out."[7] The police removed Mr. Chambers from the building and arrested him for disturbing the peace and resisting arrest.[8]

Next was Plaintiff Eugene Collins. He approached the podium to make public comment about Item 60, which was explicitly about police misconduct. The topic was "Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations."[9] Agenda Item 60 was directly related to the Alton Sterling killing, because the Alton Sterling killing was the "driving force" behind House Bill 276.  The bill specified how long police officers would have to hire an attorney before they are questioned for an incident involving shooting and seriously injuring or killing someone. It had originally contained a provision about how long an officer should be paid and not paid while on administrative leave for a shooting – a issue of community concern about the officers involved in the killing of Alton Sterling.

Eugene Collins only got as far as "I oppose this motion because on July…." before Scott Wilson ordered the police to "take him out."[10] A member of the audience cried out, "He hadn't even started!"[11] Scott Wilson only allowed Mr. Collins to speak for **2.5 seconds** before cutting him off and expelling him from the chamber.[12] Scott Wilson did not give Mr. Collins any verbal warning.[13] Mr. Wilson silenced him even though Mr. Collins intended to voice a viewpoint directly regarding Agenda Item 60. A police officer removed Mr. Collins from the podium and took him out of the room.[14]

---

[7] Defendants' Ex. 3.
[8] R. Doc. 15-2 (Answer) at ¶ 35 (admitting that "The police removed Gary from the building and arrested him for disturbing the peace and resisting arrest.")
[9] Plaintiff's Ex. 15 (May 10, 2017 Agenda) at page 8.
[10] Defendants' Ex. 5 at 4:28.
[11] Defendants' Ex. 5.
[12] Defendants' Ex. 5.
[13] Defendants' Ex. 5.
[14] Defendants' Ex. 5.

Next was Coby Weaver, a white woman. She also approached the podium during discussion of Item 60. She began to speak about Alton Sterling, and Mr. Wilson interrupted her with two verbal warnings. He allowed her to speak for two minutes – until Ms. Weaver pointed out a racial double standard, that police had removed two Black men for saying things similar to what she was saying. At that point, Wilson ordered police to remove her from the room.[15]

Next was community-member Sydney Epps, a Black woman, who also approached the podium during discussion of Item 60. As soon as she mentioned Alton Sterling and called for the removal of the Chief of Police, Defendant Wilson ordered police to remove her. [16] Defendant Scott Wilson did not give Ms. Epps any verbal warning.[17]

Next was community-member Lynne Espinoza, a white woman, who also approached the podium during discussion of Item 60. As soon as Ms. Espinoza called for the firing of the police officers, Defendant Scott Wilson ordered a police officer to remove her from the Meeting Room, saying "We're not talking about the officers involved. Johnny, please."[18] Defendant Scott Wilson did not give Ms. Espinoza any verbal warning.[19]

Scott Wilson's pattern of ordering officers to remove any public commenter who mentioned Alton Sterling or criticized the police was not limited to May 10, 2017. At a Metro-Council meeting on June 28, 2017, community-member Arthur Reed, a Black man, approached the podium to provide public comment. The topic of the agenda item was a settlement of a car accident. [20] When Arthur Reed approached the podium, he began, "Good evening council, on this item we would like to know when you're going to stop pussyfooting around and handle this Alton Sterling situation."[21]

---

[15] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60) at 1:19. Ms. Weaver continued for 17 seconds before Defendant Scott Wilson interrupted her to give a verbal warning.
[16] Defendants' Ex. 5 (Full Video of May 10, 2017, Item 60) at 3:33.
[17] Defendants' Ex. 5
[18] Defendants' Ex. 5 at 4:51.
[19] Defendants' Ex. 5.
[20] Plaintiff's Ex. 16 (June 28, 2017 Agenda) at page 11.
[21] Plaintiffs' Ex. 22 (Full Video of June 28, 2017, Item 56) at 00:29.

Scott Wilson immediately ordered him removed, "Johnny, take him out."[22] As the officers approach, Mr. Reed continued "We ready for you to handle the Alton Sterling situation."[23] Defendant Scott Wilson did not give Mr. Reed any verbal warning.[24]

**B. The Mayor Pro-Tempore of the Metro Council Has Consistently Allowed People to Speak Off-Topic – So Long as They Do Not Mention Alton Sterling or Criticize Police.**

At trial, Plaintiffs will offer six examples to show that the "on topic" rule is not enforced when citizens are not talking about Alton Sterling or criticizing the police.

First, at a meeting on September 27, 2017, community-member Phillip Lillard provided comment. He began his comment with "I didn't get to finish before. I would really like for y'all to reconsider the one that you just voted on and vote against it."[25] Defendant Scott Wilson interrupted Mr. Lillard, and directed him to speak on topic, saying "I understand, but we're talking about the deleting of these jobs. That's what we're talking about, Number 76. We're not talking about train stations." Defendant Scott Wilson explicitly understood Mr. Lillard to be speaking off-topic, and two times directed him to speak on topic.[26] But Mr. Lillard did not mention Alton Sterling or criticize the police – and so Mr. Wilson allowed him to finish speaking without being removed by the police.

Second, at meeting on June 14, 2017, community-member Janice Weber provided comment. She spoke off topic for twenty seconds until Defendant Wilson gently interrupted her and said, "Don't let me interrupt you but this is for the CEA. The next item will be for the tax, so if you wanna talk on the tax…"[27] Ms. Weber spoke over him and continued talking off-topic. But Ms. Weber did not mention Alton Sterling or criticize the police – and so Mr. Wilson allowed her to

---

[22] Plaintiffs' Ex. 22 at 00:33.
[23] Plaintiffs' Ex. 22.
[24] Plaintiffs' Ex. 22.
[25] Plaintiffs' Ex. 23 (Full Video of Sept. 27, 2017, Item 76) at 0:30.
[26] Plaintiffs' Ex. 23.
[27] Plaintiffs' Ex. 24 (Full Video of June 14, 2017, Item 66) at 00:02:08.

finish speaking without being removed by the police.

Third, at the same meeting, community-member Dan Weber provided comment. Mr. Weber spoke for nearly a completely off-topic before Mr. Wilson interrupted him saying, "I'm sorry but this is really about the CEA. Our next item will be about the tax. If you wanna bring up about those numbers. You can come back."[28] Mr. Weber did not mention Alton Sterling or criticize the police – and so Mr. Wilson allowed him to finish speaking without being removed by the police.

Fourth, at an August 23, 2017 meeting, community-member Don Ortega provided comment. Mr. Ortega used his time to air particular grievances he had as a former employee of BREC, even though the topic was the Baton Rouge zoo.[29] Defendant Scott Wilson allowed Mr. Ortega to speak on his personal experiences with BREC for 43 seconds before interrupting to request that Mr. Ortega "talk about the item of the zoo."[30] Defendant Scott Wilson explicitly understood Mr. Ortega to be speaking off-topic and gave Mr. Ortega two warnings over the course of two minutes and fifty-one seconds that Mr. Ortega was at the podium.[31] But Mr. Ortega did not mention Alton Sterling or criticize the police – and so Mr. Wilson allowed him to finish speaking without being removed by the police.

Fifth, at an August 23, 2017, meeting, community-member Russell Kelly provided comment. The topic was the attorney general, but Mr. Kelly spoke about team training for the council. Defendant Scott Wilson allowed Mr. Kelly to speak about team training for approximately 22 seconds before directing Mr. Kelly to speak on topic, "hold on we're talking really about the attorney general…"[32] After this interruption, Scott Wilson allowed Mr. Kelly to continue talking about team training for approximately another 25 seconds.[33] Mr. Ortega did not mention Alton

---

[28] Plaintiffs' Ex. 24 (Full Video of June 14, 2017, Item 66) at 00:03:25.
[29] Plaintiff's. 25 (Full Video of August 23, 2017, Item 139) at 00:01:08.
[30] Plaintiffs' Ex. 25 at 1:52.
[31] Plaintiffs' Ex. 25.
[32] Plaintiffs' Ex. 26 (Full Video of August 23, 2017, Item 101) at 00:07:29.
[33] Plaintiffs' Ex. 26.

Sterling or criticize the police – and so Mr. Wilson allowed him to finish speaking without being removed by the police.

Sixth, at an May 14, 2014, meeting, community-member Jim Mora provided comment. Mayor Pro-Tempore Chandler Loupe was presiding over the meeting at the time.[34] Mr. Mora began his comment by stating that he would not give an opinion either way on the Meeting Item and would instead use his two minutes to read from a book.[35] Mr. Mora proceeded to read from the book "Oh, the Places You'll Go!" by Dr. Seuss. Mr. Mora was allowed to proceed uninterrupted for the full two minutes.[36] He was not interrupted or given any warnings about staying on topic. He was not removed by the police.

## II.    OVERVIEW OF ARGUMENTS

### A. Plaintiffs' Argument

Plaintiffs proffer five theories of liability by which Defendant Wilson violated their constitutional rights:

A.    Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs even though they were on-topic.

B.    Even if Plaintiffs were off-topic, Defendant Wilson engaged in viewpoint discrimination when he expelled Plaintiffs and others who mentioned Alton Sterling or criticized the police, but chose not to expel other off-topic persons who did not mention Alton Sterling or criticize the police.

C.    Even if it was permissible for Defendant Wilson remove Plaintiffs from the public comment podium, Plaintiffs had an independent First Amendment right to remain in the chamber and attend the meeting.

D.    Eugene Collins was subject to prior restraint, because Defendant Wilson had him removed before he could speak, on the basis of what Scott Wilson *thought* he was going to say.

E.    Plaintiffs are Black, and Scott Wilson treated them differently than white speakers on account of their race.

---

[34] Plaintiff's Ex. 27 (Excerpt of May 14, 2014, Item 13Y & 13Z) at 00:01(identifying Chandler Loupe).
[35] Plaintiffs' Ex. 27 (Full Video of May 14, 2014, Item 13Y & 13Z) at 46:59
[36] Plaintiffs' Ex. 27.

Theories A and B involve the doctrine of viewpoint discrimination in violation of the First Amendment. As described below, it is "well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."[37] Theory C involves the Plaintiffs' "First Amendment right to attend a public meeting."[38]   Theory D involves the doctrine of prior restraint in violation of the First Amendment. Theory E involves the doctrine of equal protection as guaranteed by the Fourteenth Amendment.

## B.  Defendants' Argument

Defendants contend that the topic restrictions of the Louisiana Open Meetings Law and Section 1.7(a) of the Baton Rouge Code of Ordinances are on their face proper. However, this assertion is not responsive to Plaintiffs' claims, because Plaintiffs are not raising a facial challenge to those rules. Further, it is Defendants' burden at trial to articulate a compelling interest and to demonstrate the narrow tailoring necessary to clear strict scrutiny. Defendant Wilson offers two viewpoint-neutral explanations for his actions, neither of which is supported by the evidence or law. First, he argues that that he was merely enforcing Section 1.7(a) of the Baton Rouge Code of Ordinances, which requires that speakers remain on-topic during public comment. Second, he argues that there was something unique about May 10, 2017, in that he had received word that protesters were going to "shut down" the City Council meeting.  Lastly, regarding the 14th Amendment claim, Defendant Wilson denies treating speakers differently based on race.

## IV.  LAW AND ARGUMENT

## A.    Viewpoint-based speech restrictions are "*per se*"  First Amendment violations.

The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."  The First Amendment is incorporated against state actors by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983.

---

[37] *Chiu v. Plano Independent School Dist.,* 260 F. 3d 330, 350 (5th 2001).
[38] *Heaney v. Roberts,* 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015).

Under the First Amendment, it "is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[39] To do so constitutes viewpoint discrimination in violation of the First Amendment.  This principle was reaffirmed this year by the U.S. Supreme Court: "Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"[40]

As a result, "[v]iewpoint-based restrictions on speech are *per se* violative of the First Amendment."[41] Viewpoint-based restrictions exist "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[42]

In terms of First Amendment analysis, a city or parish council meeting is a limited public forum.[43] In such a forum, the government may apply reasonable time, place, and manner restrictions to speech, so long as the restriction "does not discriminate against speech on the basis of viewpoint."[44] For example, a government body may require speakers during public comment at a meeting to remain on-topic.[45]

But regardless of time, place, and manner restrictions, "is beyond debate that the law prohibits viewpoint discrimination in a limited public forum."[46] In a meeting with an on-topic rule, on-topic speech is treated as if it were in a traditional public forum, and <u>any</u> restriction is subject to

---

[39] *Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 350 (5th 2001), *quoting Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).

[40] *Barr v. American Assn. of Political Consultants, Inc.*, 591 U. S. ____ (2020), *quoting Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

[41] *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017).

[42] *Heaney v. Roberts, 846 F. 3d 795, 802 (5th Cir. 2017).*  .

[43] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015) ("A city council meeting is generally recognized to be a 'limited public forum,' which means that the government does not have to allow persons to engage in every type of speech."), *citing Fairchild v. Liberty Indep. Sch. Dist*., 597 F.3d 747, 759 (5th Cir. 2010), *affirmed in Heaney v. Roberts*, 846 F. 3d 795, 801 (5th Cir. 2017) (applying limited public forum analysis to Jefferson Parish Council meeting). *See Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 334 (5th 2001) for an in-depth discussion of the "tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property."

[44] *Heaney,* 846 F. 3d at 801-802.

[45] *Chiu v. Plano Independent School Dist.,* 260 F. 3d 330, 354-355 (5th 2001).

[46] *Heaney v. Roberts,* 846 F. 3d 795, 802 (5th Cir. 2017), *citing Good News Club v. Milford Cent. Sch*., 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001).

strict scrutiny.[47]  Off-topic speech at such a meeting receives less protection, but still cannot be subject to viewpoint discrimination.

Thus, a public body is permitted to have a "stay on topic" rule for public comment – but under no circumstances can it selectively enforce that rule in a manner that constitutes viewpoint discrimination.

And so although a council chair has the power to enforce neutral restrictions on speech to keep a meeting on track, "[i]t is beyond debate that the law prohibits viewpoint discrimination" in such a context.[48] It is "well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."[49] This is true even in a crisis, because there "are certain constitutional red lines that a State may not cross even in a crisis. Those red lines include racial discrimination, religious discrimination, and content-based suppression of speech."[50]

And when a government agent restricts speech that is political in nature, judicial scrutiny must be even more exacting.[51] That is because "activities such as speaking, distributing literature, displaying signs, petitioning for change, and disseminating information concerning issues of public concern are central to the protections of the First Amendment."[52]

Thus, Defendant Scott Wilson is completely correct when he argues that the topic restrictions of the Louisiana Open Meetings Law and Section 1.7(a) of the Baton Rouge Code of Ordinances are on their face proper. But that assertion is not responsive to Plaintiffs' claims,

---

[47] *Id.* at 347.

[48] *Heaney v. Roberts*, 846 F. 3d 795, 801 (5th Cir. 2017).

[49] *Chiu, supra,* 260 F.3d at 350. *See also Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir.1992) ("[V]iewpoint discrimination violates the First Amendment regardless of the forum's classification.").

[50] *Calvary Chapel Dayton Valley v. Sisolak*, 591 U.S. ____ (2020), *Kavanaugh, J., dissenting from denial of application for injunctive relief.*

[51] *Barr v. American Assn. of Political Consultants, Inc*., 591 U. S. ____ (2020), *Breyer, J., concurring in judgment, citing Buckley v. American Constitutional Law Foundation, Inc*., 525 U. S. 182, 186–187 (1999) (heightened protection for "core political speech"); *Rosenberger v. Rector and Visitors of Univ. of Va*., 515 U. S. 819, 829–830 (1995) (government discrimination on basis of "particular views taken by speakers on a subject" presumptively unconstitutional); *Boos v. Barry*, 485 U. S. 312, 321 (1988) ("content-based restriction[s] on political speech in a public forum" subject to "most exacting scrutiny" (emphasis deleted)); *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 U. S. 37, 45–46 (1983) (content-based exclusions in public forums subject to strict scrutiny).

[52] *Chiu v. Plano Independent School Dist*., 260 F. 3d 330, 334 (5th Cir. 2001)

because Plaintiffs are not raising a facial challenge to those rules. Plaintiffs are raising an *as-applied*

challenge, because government agents may only enforce topic rules in a manner "consistent with

the First Amendment."[53] Specifically, the "government cannot **under any circumstances** . . .

restrict speech based on viewpoint" – regardless of whether the government has facially neutral

topic rules.[54]

Thus, the "pivotal question" in this case is Mr. Wilson's motive in expelling Plaintiffs. If he

was motivated to expel Plaintiffs due to the "opinion or perspective of the speaker," then "he

violated [plaintiff's] clearly established First Amendment right to be free from viewpoint

discrimination in a limited public forum."[55]

An improper motive may be inferred by when a council president expels some people for

speaking off-topic, but not others. As the court in *Heaney v. Roberts* explained:

> For instance, if Heaney had wanted to address the council about parking meters in
> Orleans Parish, Roberts could have validly prohibited him from doing so because
> such a topic would be wholly off-subject and beyond the scope of the Jefferson
> Parish Council's business and control. A content-based restriction of this nature
> surely could pass muster under the appropriate level of scrutiny. And assuming that
> all other speakers were likewise prohibited from speaking about parking meters in
> Orleans Parish, the restriction would not be viewpoint-based.[56]

In sum, as the Fifth Circuit in *Heaney* concluded, it is "beyond cavil" that a reasonable chair

of council meeting "would have known that it would be impermissible under the First Amendment

to prevent [a person] from speaking and to eject him from the meeting based on the message he was

conveying."[57]

---

[53] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d
795 (5th Cir. 2017).
[54] *Id.* (emphasis added).
[55] *Heaney v. Roberts*, 846 F. 3d 795, 802-803 (5th Cir. 2017).
[56] *Heaney v. Roberts*, 147 F. Supp. 3d 600 at fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d
795 (5th Cir. 2017).
[57] *Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017); *see also Chiu, supra*, 260 F.3d at 350 ("It is well settled that
viewpoint discrimination is a clearly established violation of the First Amendment in any forum.")

## A. Defendant Scott Wilson Engaged in Viewpoint Discrimination When He Expelled Plaintiffs.

On its face, the topic restriction of the Louisiana Open Meetings Law and Section 1.7(a) of the Baton Rouge Code of Ordinances is proper. However, Plaintiffs have raised an *as-applied* challenge, not a facial challenge to those rules – as applied by Defendant Scott Wilson, the topic restriction was selectively enforced in a manner that constitutes viewpoint discrimination.

### i.   Plaintiffs' speech was on-topic, and Defendants' restriction of it does not pass strict scrutiny.

In a meeting with an on-topic rule, on-topic speech is treated as if it were in a traditional public forum, and any restriction is subject to strict scrutiny.[58]  Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[59] Specifically, the "State must demonstrate compelling reasons for restricting access to a single class of speakers, a single viewpoint, or a single subject."[60] Strict scrutiny is "a hard standard to meet" and "leads to almost certain legal condemnation."[61]

In the present case, Plaintiffs were speaking on-topic. First, Plaintiff Eugene Collins spoke during Agenda Item 60.  The topic of that item was: "Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations."  Agenda Item 60 was directly related to the Alton Sterling killing, because the Alton Sterling killing was the "driving force" behind House Bill 276.[62] The bill specified how long police officers would have to hire an attorney before they are questioned for an incident involving shooting

---

[58] *Id.* at 347.

[59] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

[60] *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 US 37, 55 (1983).

[61] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).

[62] Julia O'Donoghue, *Alton Sterling shooting prompts new policing bills in Louisiana House*, Times Picayune, April 27, 2017.

and seriously injuring or killing someone.  It originally contained a provision about how long an officer should be paid and not paid while on administrative leave for a shooting – an issue of community concern as the officers involved in the killing of Alton Sterling were on paid leave. Thus, Eugene Collins attempt to mention Alton Sterling was on-topic.

Next, although Plaintiffs Michael McClanahan and Gary Chambers spoke on topics of city business that were not directly related to Alton Sterling or the police, they were nevertheless on-topic. In Plaintiffs' view, the Baton Rouge government should not have returned to business-as-usual without first resolving how to respond to the killing of Alton Sterling.  Plaintiff McClanahan made this explicit, saying "I oppose the sewer item because on July the fifth, 2016, Alton Sterling was killed and your office continued to conduct business as usual. Since that time, the City of Baton Rouge has continued to conduct business – and I oppose this because that is not *right.*"[63]

In this, they were expressing the same theory of being on-topic as Philip Lillard, who said "I'm against Item 76 because the other item shouldn't have passed, okay."[64] But Scott Wilson allowed Lillard to continue speaking, and ordered police to remove McClanahan and Chambers.

Here, Defendant has demonstrated no compelling reason for restricting Plaintiffs' speech that might pass strict scrutiny. If they had been allowed to continue talking, Plaintiffs at most would have finished their public comment period – for a grand total of nine combined minutes. Avoiding nine minutes of speech cannot be such a compelling interest to clear the extremely high bar of strict scrutiny. Nor was Scott Wilson's remedy – ordering them removed by police from the meeting room – narrowly tailored. He could have asked them to "please sit down" as he did with Philip Lillard.[65] Or he could have asked police to escort them back to their seats, rather than removing them entirely from the meeting hall.

---

[63] Defendants' Ex. 2. Mr. McClanahan says "Alton Sterling" at 1:18.
[64] Plaintiffs' Ex. 23 (Full Video of Sept. 27, 2017, Item 76) at 0:30.
[65] Plaintiffs' Ex. 23.

Thus, because Plaintiffs were speaking on-topic and because Defendant Wilson has not demonstrated the compelling interest and narrow tailoring necessary to clear strict scrutiny, judgment is granted on Plaintiffs' First Amendment claim.

 ii. <u>Even if Plaintiffs' speech was off-topic, Defendant Scott Wilson's restriction of their speech but not others was improper viewpoint discrimination.</u>

Even if a person is speaking off-topic in a limited public forum, his or her speech still may not be restricted due to viewpoint discrimination. Viewpoint discrimination may be inferred from the differential treatment of off-topic speakers who speak from different viewpoints.

As the court in *Heaney v. Roberts* explained: "For instance, if Heaney had wanted to address the council about parking meters in Orleans Parish, Roberts could have validly prohibited him from doing so because such a topic would be wholly off-subject and beyond the scope of the Jefferson Parish Council's business and control. . . .And assuming that **all other speakers** were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based.[66]

Here, all three Plaintiffs' speech was restricted when Defendant Scott Wilson ordered them removed from the meeting room by police. Defendant Wilson offers two viewpoint-neutral explanations for that speech restriction, neither of which is supported by the evidence.

First, he argues that that he was merely enforcing Section 1.7(a) of the Baton Rouge Code of Ordinances, which requires that speakers remain on-topic during public comment. But the evidence shows that Scott Wilson did not treat other off-topic speakers the way he treated Plaintiffs and the four other persons he ordered removed by police. When people spoke off-topic but did not mention Alton Sterling or criticize the police, Mr. Wilson treated them with solicitude and attempted to gently guide them back to the topic at hand. For example, when Ms. Weber spoke

---

[66] *Heaney v. Roberts*, 147 F. Supp. 3d 600 at fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F. 3d 795 (5th Cir. 2017) (emphasis added).

explicitly off topic, Mr. Wilson responded by saying "Don't let me interrupt you but this is for the CEA. The next item will be for the tax, so if you want to talk on the tax…"[67] Or with Mr. Weber, he said "I'm sorry but this is really about the CEA. Our next item will be about the tax. If you want to bring up about those numbers. You can come back." [68] One speaker even read a Dr. Suess book cover-to-cover without interruption.

By contrast, Plaintiffs showed seven examples of speakers who mentioned Alton Sterling or criticized the police and were immediately ordered removed by Scott Wilson. Defendant can not offer a single example of a person he ordered removed for being off-topic who had not mentioned Alton Sterling or criticized the police.

Defendant Wilson's alternative viewpoint-neutral explanation is that there was something unique about May 10, 2017, in that he had received word that protesters were going to "shut down" the City Council meeting.  But even if that supposed threat were a concern of his, once the meeting began he would have realized that the protesters' chosen method was merely utilize their right to provide public comment – *i.e.*, no true threat at all.

Furthermore, the evidence provided at trial shows that Wilson's speech restrictions were <u>not</u> unique to May 10, 2017. Six weeks later, on June 28, 2017, Wilson engaged in the same behavior with speaker Arthur Reed. Within seconds of Mr. Reed mentioning "the Alton Sterling situation" during public comment, Wilson ordered police to remove him from the room.[69] Accordingly, Mr. Wilson's argument that his behavior was a specific reaction to the unique context of May 10, 2017, is unavailing.

---

[67] Plaintiffs' Ex. 24 at 2:29.
[68] Plaintiffs' Ex. 24.
[69] Plaintiffs' Ex. 22 (Full Video of June 28, 2017, Item 56) at 00:29.

Thus, even if Plaintiffs were speaking off-topic, judgment should be granted on Plaintiffs' First Amendment claim because the preponderance of the evidence demonstrates that Wilson engaged in viewpoint discrimination.

**B. Plaintiffs Had an Independent First Amendment Right to Remain in the Chamber and Attend the Meeting.**

Even if it was permissible for Defendant Wilson to remove Plaintiffs from the public comment podium, Plaintiffs had an independent First Amendment right to remain in the chamber and attend the meeting. Citizens have a "First Amendment right to attend a public meeting," independent of their right to free speech.[70] A government decision to exclude a speaker from a traditional or designated public forum is subject to strict scrutiny.[71] That is, the government may not exclude a person from a forum unless it is "necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."[72] As a result, it can be a separate and independent First Amendment violation when a speaker at a meeting is removed not just from the podium, but from the meeting entirely. As the court in *Heaney* explained, the "suggestion that the First Amendment violation began and ended with Heaney's speech would be ignoring the fact that as a citizen Heaney had a First Amendment right to attend a public meeting."[73]

Here, Defendant Wilson violated Plaintiffs' First Amendment right to attend public meetings by having them not only removed from the podium, but taken entirely out of the meeting space. As such, he restricted Plaintiffs' First Amendment right to attend the remainder of the public meeting.  Such a restriction is only valid if it meets strict scrutiny. As discussed above, strict scrutiny

---

[70] *Heaney v. Roberts,* 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015), *citing Laskowski v. Snyder*, No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007); *Timmon v. Wood*, 633 F.Supp.2d 453 (W.D.Mich.2008).
[71] *Laskowski v. Snyder*, No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007), *citing Ark. Educ. Telev. Comm'n v. Forbes,* 523 U.S. 666, 677 (1998).
[72] *Cornelius v. NAACP Legal Def. Educ. Fund, Inc*., 473 U.S. 788, 800 (1985), *as cited in Laskowski v. Snyder,* No. 05-502, 2007 WL 118535 (N.D.Ind. Jan. 10, 2007).
[73] *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015)

is a "a hard standard to meet" that "leads to almost certain legal condemnation."[74] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[75] In this case, Defendant has identified no compelling interest to justify removing Plaintiffs' from the meeting room. Plaintiffs had not been disruptive before their public comment. Further, the restriction imposed by Scott Wilson was not narrowly tailored – he could have asked Plaintiffs to return to their seat without police intervention (as he did with Mr. Lillard). Therefore, Defendant Wilson violated Plaintiffs' First Amendment right to attend a public meeting when he ordered them removed from the room without passing the exacting test of strict scrutiny.

### C.  Defendant Scott Wilson Violated Plaintiff Eugene Collins' Right to be Free from Prior Restraint.

Eugene Collins was subject to prior restraint, because Defendant Wilson had him removed before he could speak, solely on the basis of what Defendant Wilson *thought* he was going to say. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[76] That is because prior restraint "has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time."[77] The "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment."[78] As the Supreme Court recognized in *Davis:*

> Even where questions of allegedly urgent national security, or competing constitutional interests, are concerned, we have imposed this "most extraordinary remed[y]" only where the evil that would result from the reportage is both great

---

[74] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).

[75] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

[76] *CBS v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 914, 127 L.Ed.2d 358 (1994); *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).

[77] *CBS v. Davis*, 510 U.S. 1315, 1317 (1994);

[78] *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390 (1973)

and certain and cannot be militated by less intrusive measures.[79] Thus, prior restraint is only allowable when the harm arising from the prevented speech would be "both great and certain" and cannot be mitigated through "less intrusive measures."

Here, Defendant Wilson engaged in illegal prior restraint when he expelled Plaintiff Eugene Collins before Eugene Collins could speak. Defendant Wilson ordered police to remove Eugene Collins from the room after only 2.5 seconds – before Collins could even begin his remarks. Defendant Wilson correctly inferred that Collins would be speaking about Alton Sterling. However, Defendants cannot show "great and certain" harm from such speech, especially considering the topic Collins was speaking on was directly related to the shooting of Alton Sterling. Further, Defendants cannot show that any hypothetical harm from Collins' speech could not be mitigated through "less intrusive measures" – all Defendant Wilson had to do was let Collins speak for three minutes, and then Collins' time would be over. Three minutes of speech by a member of the public on a topic of public interest is not a harm that exceeds the "urgent national security" harm contemplated in *CBS v. Davis.* Therefore, Defendant Wilson violated Collins' First Amendment right to be free of prior restraint without adequate justification when he ordered Collins removed from the meeting.

### D. Defendants Engaged in An Unjustified Pattern of Differential Treatment on the Basis of Race.

Defendant Wilson engaged in race discrimination when he expelled Black speakers, including Plaintiffs, within seconds when they criticized the police, but allowed white critics to speak for several minutes. Disparate treatment on the basis of race violates the equal protection guarantee of the Fourteenth Amendment unless it can meet strict scrutiny. The Fourteenth Amendment to the United States Constitution bars the denial "to any person . . . the equal protection of the laws." As a result, local government actors cannot discriminate on the basis of race without

---

[79] *CBS v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 914, 127 L.Ed.2d 358 (1994)

being subject to strict scrutiny.[80] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[81] Strict scrutiny is "a hard standard to meet" and "leads to almost certain legal condemnation."[82]

Five people (McClanahan, Chambers, Collins, Epps, and Reed) of color who mentioned Alton Sterling or criticized the police were removed almost immediately. All of them were persons of color. Two white women, Coby Weaver and Lynne Espinoza also mentioned Alton Sterling and criticized the police. Defendant Scott Wilson allowed Ms. Weaver to speak significantly longer than the others.  In fact, Scott Wilson only ordered Ms. Weaver removed *after she pointed out the racial disparity.* Defendant Wilson only ordered Ms. Espinoza removed when she called for the firing of the police chief and officers involved. Defendants have provided no compelling interest justifying the differential treatment based on race. In viewing the videos of Defendant Wilson's exchanges with these speakers, this Court should find beyond a preponderance of the evidence that there was differential treatment on the basis of race. Accordingly, Plaintiffs' 14th Amendment claim should be granted.

## III.  Conclusion

Defendants cannot demonstrate the compelling interest and narrow tailing necessary to meet strict scrutiny of the restrictions on Plaintiffs' speech, whether on or off topic, or to justify prior restraint, removing Plaintiffs' from the meeting room, or differential treatment on the basis of race. Accordingly, this court should grant Plaintiffs' First Amendment and 14th Amendment claims.

---

[80] *See Loving v. Virginia*, 388 US 1, 12 (1967) ("We have consistently denied the constitutionality of measures which restrict the rights of citizens on account of race."); *Fisher v. Univ. of Tex. (Fisher II)*, 136 S. Ct. 2198, 2208 (2016) ("because racial characteristics so seldom provide a relevant basis for disparate treatment," "[r]ace may not be considered [by a university] unless [its] admissions process can withstand strict scrutiny.")

[81] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).

[82] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring) (explaining that strict scrutiny leads to almost certain legal condemnation).

Respectfully submitted,


*/s/ William Most*
WILLIAM MOST (No. 36914)          BRIAN E. LAHTI
Law Office of William Most, L.L.C.   Utah Bar No. 16298, (PHV)
Sarah Chervinsky (La. Bar No. 33772)  Tel: (801) 823-6464
David Lanser (La. Bar No. 37764)      Email: blahti@lhlitigation.com
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com