UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL McCLANAHAN, ET AL.          CIVIL ACTION NO. 3:17-cv-1720
                                                                    JWD-RLB

       v.

SCOTT WILSON, ET AL.

**DEFENDANT'S POST TRIAL BRIEF IN REBUTTAL TO "PLAINTIFFS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW" (DOC 198-1) AND "PLAINTIFFS' REBUTTAL TO DEFENDANT'S PROPOSE FINDINGS OF FACT AND CONCLUSIONS OF LAW AND POST TRIAL BRIEF" (Doc 200)**

**I.      Rebuttal of Plaintiffs' Proposed Findings of Fact (Doc 198-1)**

|   | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
| 1. | Scott Wilson, Mayor Pro Tem of the Baton Rouge Metro Council, restricted the speech of Plaintiffs Michael McClanahan, Gary Chambers, and Eugene Collins. | This is a conclusory statement made without cited support in the record.  Defendant disputes. |
| 2. | He did so by ordering Baton Rouge police officers to remove each Plaintiff during public comment at a May 10, 2017, Metro Council Meeting. | Plaintiff Michael McClanahan was ordered to be taken out because his comments were off topic and his actions were willfully disruptive.  See Defendants' Findings of Fact 77 through 111 for the actual facts that occurred when Michael McClanahan made public comments on Agenda 50 which are incorporated herein by reference.  See also *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017).  "If Heaney were to have violated a reasonable restriction, such as a topic or time constraint, there would be no constitutional violation."  Although the Louisiana open meetings law, La. R.S. 42:14(D) clearly allows for public comment, the Louisiana Attorney General has opined that "the intent of this statute is to afford the public a right to comment on issues being discussed at a particular meeting.  It is not intended to give the public a chance to address the council on issues |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | unrelated to those being discussed at the meeting." La. Atty. Gen. Op. No. 01-367, 200 WL 242016; and La. Atty. Gen. Op. No. 08-0325, 2009 WL 685303. The Open Meetings Law also provides that "this Chapter shall not prohibit the removal of any person or persons who willfully disrupt a meeting to the extent the conduct of a meeting is seriously compromised."  See also La. Atty. General Op. No. 91-19, 1991 WL 57273 "...the opens meeting law is not violated by removing the disruptive person from the meeting."  With respect to the willfully disruptive actions of Mr. McClanahan, see particularly Defendant's Findings of Fact Nos. 82, 83, 87, 88, 89, 90, 91, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 106, 107, 109 and 111.<br><br>Regarding Plaintiff Gary Chambers, the Major Pro Tempore asked Jonny Dunnam to be "please take him out." because Mr. Chambers' comments were off topic and his behavior was willfully disruptive.  See Defendant's Findings of Fact Nos. 112-134.  Gary Chambers admitted that his public comments did not address Item 51.  (Defendant's Finding of Fact No. 126) The willfully disruptive nature of Gary Chambers' behavior is set forth in the Defendant's Findings of Facts.  His behavior was so disruptive to the extent that Jonny Dunnam, the sergeant at arms, arrested Mr. Chambers for disturbing the peace and resisting arrest.<br><br>The last plaintiff, Eugene Collins's actions in approaching the podium to speak during the public comment period on Agenda Item 60 were in violation of the established orderly procedure for allowing members of the public to come inside the railing and to the podium to make public comments.  It was also violative of §1.7(a) of the Code of Ordinances which provides, in part, "Members of the public who wish to speak must request permission to do so when such time is announced by the Chair."  Mr. Collins, on his |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | own initiative, approached inside the railing and up to the podium while the prior speaker had not been completely removed, he so admits, and before the Mayor Pro Tempore had announced "anyone wish to speak on the item." Mr. Collins was aware that this was one of the procedures utilized for public comments. See testimony of Eugene Collins, Tr., p. 91, lines 7-15, "and during the public hearing the major pro tem can also question if anybody wants to speak during the hearing as well." There is no evidence in the record to support Eugene Collins' claim that he "definitely", and then changed to "probably", submitted a card wishing to speak in opposition of Item Number 60." (Tr., p. 91, lines 14-15). Then later changed to "more than likely" (Tr., p. 92, lines 12-14). Mr. Collins said a brief inaudible word or words at the podium, which he claims was only the word "On" (Tr., p. 103, lines 23 - p. 104, line 8). This willfully disruptive behavior of Mr. Collins caused the Mayor Pro Tempore to say "Please take him out please". See D-5, beginning at 4:25. Mr. Collins' disruption was willful because he knew that he had not followed procedure, and was similar to the actions of "unidentified lady" that appeared before him on the same agenda item and entered the railing and walked in front of the speaker at the time and Mayor Pro Tempore also asked "Please take her out". See D-5 at 2:36. The evidence shows that other speakers did not approach for public comments until the Mayor Pro Tempore asked "anyone wishing to speak on this item." See D. Findings of Fact Nos. 65-68.<br><br>Nor was this a situation for which public comment cards had been filled out or were being used for Agenda Item 60. See Findings of Fact Nos. 60-63 and 69-75.<br><br>For all relevant facts occurring with respect to Eugene Collins and Agenda Item 60, the entire exhibit D-3 |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | should be reviewed.  See D Findings of Fact Nos. 135-180, and particularly Findings of Fact Nos. 164-168 and 174-176 with respect to Eugene Collins.  It was the willfully disruptive behavior of Eugene Collins that caused the request to "Please take him out please".  See D-5 at 4:25 and following. |
| 3. | He did so immediately after each Plaintiff mentioned Alton Sterling or the police – or gave any indication that they were there to talk about Alton Sterling or the police. | The public comments of Michael McClanahan are detailed in D. Findings of Fact Nos. 77-111.  Michael McClanahan did not mention "the police".  While he did mention Alton Sterling, that was commenting off topic to Agenda Item 50, and could serve as sufficient grounds for "please take him out" and it followed three prior warnings that his comments about constitutional rights were off topic, which three warnings went unheeded, and continued with the off topic comments of "I oppose this sewer item because..., Alton Sterling was killed and you all continue to do business as usual."  See D. Findings of Fact No. 80.  See *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017), "If Heaney were to have violated a reasonable restriction, such as topic or time constraint, there would be no constitutional violation."<br><br>Mr. Chambers did not mention Alton Sterling before the Mayor Pro Tempore said "Please take him out."  See D. Findings of Fact No. 115 setting forth Mr. Chambers' public comments.  Mr. Chambers first accused the Metropolitan Council of "rob[bing] me of my constitutional rights" and was warned by the Mayor Pro Tempore that the comment was off topic, "You can either speak on the topic or you can leave."  Chambers ignored the warning and continued with "have the police who you are responsible for.." whereupon the Mayor Pro Tempore asked the sergeant at arms to "please take him out."  Gary Chambers himself admits that his comments were off topic and did not address Item 51.  (Tr., p. 39, lines 4-7).<br><br>Eugene Collins did not mention either "Alton Sterling" or "the police".  Mr. Collins himself does |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | not know what he said when he reached the podium, "I think I said, "ON". That's O-N." (Tr., p. 103, lines 4-5) Mr. Collins believes that was the entirety of his comment. (Tr., p. 104, lines 1-8). Eugene Collins did not mention "Alton Sterling" or "the police" nor did he give any indication that he was there to talk about Alton Sterling.<br><br>While Mr. McClanahan did not mention "Alton Sterling" and Mr. Chambers did mention "the police department", these comments were off topic (Chambers even admits so) and occurred after being warned that off topic comments would not be allowed. Mr. McClanahan failed to heed three warnings and Mr. Chambers failed to heed one warning. |
| 4. | At trial, Plaintiffs entered into evidence seven examples of Mr. Wilson ordering police to remove speakers when they talked about Alton Sterling or the police. See Table 1, below. | Regarding Plaintiffs' Table 1, the last item must be stricken and cannot be considered by the Court, even assuming the representations made therein are correct, which they are not. The particular event occurred on June 28, 2017, after the events at issue in this litigation which occurred on May 10, 2017, as only "prior incidences not subsequent events" can be considered in establishing a pattern or policy under *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 694 (1978). See also *Hackless v. Brazoria County, Texas,* 2016 WL 1702595 at *4 (S.D. Texas, 4/18/16).<br><br>Otherwise, Table 1 is rebutted by the table attached hereto as **Exhibit A**. |
| 5. | Plaintiffs also entered into evidence eight comparator examples of off-topic speakers who were not removed even though they were explicitly off-topic. See Table 2, below. | At trial, the Court expressed its understanding that Plaintiffs were introducing in evidence videos of the events mischaracterized on Table 2 to show that the Mayor Pro Tempore's intention on May 10, 2017, in excluding the remarks of Plaintiffs, McClanahan, Chambers and Collins, was caused because of viewpoint discrimination, and to show that the Mayor Pro Tempore treated others differently when they were not talking about Alton Sterling. (Comments of Court, Tr., p. 115, lines 13 - 25) |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | First there is no evidence that Eugene Collins talked about Alton Sterling.  All we know is that he said "On" while at the podium, but that he approached the podium without being asked if anyone wished to make comments and before the prior speaker had been completely removed and in violation of Baton Rouge Code of Ordinances, Sec. 1.7(a).<br><br>Mr. McClanahan was ordered removed only after he was given three warnings to stay on topic after he had mentioned constitutional rights several times and mentioned "the police department," all off topic  Mr. McClanahan mentioned Alton Sterling only after he was ordered removed.<br><br>Mr. Chambers was given one warning; he also talked off topic about constitutional rights and did mention Alton Sterling, also off topic, when he was ordered out.<br><br>Second, this evidence is neither necessary nor relevant as viewpoint discrimination has not been established.  No constitutional rights have been violated.  As the Fifth Circuit held in *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017), "If Heaney would have violated a reasonable restriction, such as a topic or time restraint, there would be no constitutional violation."  Not only did each plaintiff violate a reasonable restriction (McClanahan and Chambers - off topic; and Collins, - violating §1.7(a) of Code of Ordinances and failing to follow established procedure for making public comments and otherwise disrupting the orderly process of Council meeting).  More importantly, plaintiffs have not shown the existence of (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation.  Nor have they proven the Mayor Pro Tempore was a "policymaker" for purposes of *Monell* liability. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | Now can plaintiffs use these charted events, all but one occurring after May 10, 2017, to prove intent.<br><br>None of these serve as true comparators of the Mayor Pro Tempore's intent on May 10, 2017, should that even be a proper inquiry in this case, as no policy or procedure has been established which allegedly caused a constitutional violation.  The "comparators" are neither sufficiently similar nor do they establish a widespread pattern of any particular conduct so as to constitute custom. Nor are they prior acts of the Mayor Pro Tempore; and only "prior incidences not subsequent events" can be considered in establishing a pattern or policy under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  See also *Hackless v. Brazoria County, Texas*, 2016 WL 1702595, at \*4 (S.D. Texas, 4/18/16).<br><br>See Defendant's Table 2 Rebuttal attached hereto as **Exhibit B**. |
| 6. | By contrast, Defendant did not offer a single example of Scott Wilson ordering a speaker removed from the chamber for talking about anything besides the police department or Alton Sterling. | Defendant does not have the burden of proof. Defendant did offer a video of Gary Chambers being allowed to talk about Alton Sterling and the police when those items were on topic for the discussion. See D. Findings of Fact Nos. 203, 208 and 209; and P-26 at 4:06 - 7:14. |
| 9. | On May 3, 2017, the U.S. Department of Justice announced that it was closing its investigation into the killing of Alton Sterling, ~~and that it would not be bringing charges against the involved~~ by officers <u>of the Baton Rouge Police Department</u>. | This varies from Established Fact No. 1 and is edited at left to read as Established Fact No. 1 reads in the Pretrial Order (Doc 110, p. 6).  The added portions are not admitted in the Answer as plaintiffs contend in footnote.  Nor is the website cited in evidence. |
| 10. | In May 2017, the government of Baton Rouge had not | [ ] material not in evidence. |

|  | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
|  | resolved the issue of its response. [The officers who were involved in the killing of Alton Sterling were on paid leave, and had not been subject to any sort of formal disciplinary action.] |  |
| 11. | The Baton Rouge Metro Council held a meeting on May 10, 2017. [Some of the agenda items related to the issue of officer-involved shootings.  Others were not, and involved the business-as-usual of the City.] | The material in [ ] is in dispute.  The second sentence is incorrect.  There are no items on the agenda and certainly not "some" items in the agenda that "related to the issue of officer-involved shootings."  See P-15.  See also D-10 that explains what Agenda Item 60 is - expressing opposition to a bill that limits the time for paid leave to officers under investigation.  The last sentence is misleading.  "Business as usual" is a term used by the plaintiffs, not the Metro Council or the agenda. |
| 12. | ~~Several community members, including~~ Plaintiffs, decided to go to the Metro Council and voice their viewpoint.  The parties have stipulated that Plaintiffs' view was that the government of the City of Baton Rouge/ East Baton Rouge Parish should not return to business-as-usual without first resolving how to respond to the killing. | The first line should be deleted.  There is no evidence of other persons in this regard. |
| 14. | Members of the public are typically allotted three minutes to comment on each agenda item at Baton Rouge Metro-Council Meetings. | A better way of phrasing this would be: "Members of the public are limited to three minutes to make public comment on an agenda item at Baton Rouge Metro Council meetings."  See Tr., p. 19, lines 8-10. |
| 15. | The City of Baton Rouge has a rule requiring speakers to remain on topic during public | Rather than characterizing as a rule, it more accurate that "As per Baton Rouge Code of Ordinances §1.7(a), adopting the Open Meetings Law at La. R.S. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | comment. But the rule is not consistently enforced - the Baton Rouge Mayor Pro-Tempore often allows speakers to finish their time even when they wander far off the agenda topic or explicitly talk about other agenda items. | 42:14(D), the Metro Council allows for public comment prior to action on an agenda item upon which a vote is to be taken and follows Attorney General opinions interpreting the Open Meetings Law as 'not intended to give the public a chance to address the council on issues unrelated to those being discussed at the meeting; and thus does not permit "off topic" public comment on agenda items."<br><br>The record contains no specific evidence of not consistent enforcement as related in the last sentence of No. 15.  See disputes to Plaintiffs' Table 1 and Table 2 attached hereto as **Exhibits A and B**. |
| 16. | Specifically, on May 10 and June 28, 2017, Scott Wilson ordered police to remove seven citizens from the Metro-Council Meetings as soon as they said the words "Alton Sterling," "Chief Dabadie," or "police department" – or gave any indication that they intended to speak on those topics. These people are summarized in Table 1, below. | See Table 1 Dispute, attached hereto as **Exhibit A**. These individuals were all asked to be taken out because they were speaking off topic; or in the case of Eugene Collins, because he failed to follow Code of Ordinance §1.7(a) and failed to follow council procedure, resulting in disruption, by approaching the podium and going inside the rail on his own initiative before the Mayor Pro Tempore said "anyone wish to speak on this item" and while the prior speaker was still being removed.<br><br>Also note that only prior acts (not subsequent acts such as June 28, 2017), can be used to establish custom if that is the intent of this evidence. |
| 19. | Plaintiffs are Baton Rouge residents and Black community leaders Michael McClanahan, Gary Chambers, and Eugene Collins, all of whom Scott Wilson ordered removed from the Metro-Council Meeting on May 10, 2017. | For evidence of and reasons for instructions to "take out" these individuals, see Defendant's Findings of Fact Nos. 77-111 regarding Michael McClanahan, Nos. 112-134 regarding Gary Chambers, and Nos. 135-180, regarding Eugene Collins. |
| 21. | On May 10, 2017, Michael McClanahan was the | The words "Alton Sterling" standing alone did not cause the Mayor Pro Tempore to say "Please take him |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | President of the National Association for the Advancement of Colored People (NAACP) Baton Rouge Branch. Scott Wilson ordered police officers to "take him out" less than one second after Mr. McClanahan said the words "Alton Sterling." | out." It was the fact that Mr. McClanahan had been warned three times to "talk on the item" but ignored all three warnings and continued to talk off topic. His last comments of "I oppose the sewer item because on July the 5th, 2016, Alton Sterling was killed and you all continue to conduct business as usual" was his fourth off topic comment on Agenda Item 50. See Defendant Findings of Fact Nos. 77-111 for a complete findings regarding Michael McClanahan. |
| 22. | Gary Chambers is the ~~Editor-In-Chief~~ of the Rouge Collection, ~~a Baton Rouge-based and Black-owned media platform~~. Mr. Chambers was at the microphone for eight seconds when he mentioned the phrase "police department" and Scott Wilson immediately ordered the police to take him out. | Mr. Chambers is "Publisher", not Editor in Chief. There is no evidence that the Rouge Collection was "a Baton Rouge based and Black owned media platform." <br><br> It was not the phrase "police department" that caused the Mayor Pro Tempore to ask the Sergeant at Arms "would you please take him out." It was the fact that Gary Chambers began by accusing the Metro Council of robbing him of his constitutional rights and was warned to "speak on this item or you can leave." However Gary Chambers ignored the warning and continued to speak off topic when he then stated "and have the police department who you are responsible for..." Gary Chambers admitted that his comments were off topic. For complete findings of fact regarding Gary Chambers public comments on Agenda Item 51, see Defendant Findings of Fact Nos. 112-134. |
| 23. | Eugene Collins is ~~the Director of Prevention for the HIV/AIDS Alliance for Region Two, Inc. (HAART)~~. He is now the President of the National Association for the Advancement of Colored People (NAACP) Baton Rouge Branch. Mr. Collins was at the podium for only | There is no evidence that Mr. Collins is "Director of Prevention for the HIV/AIDS Alliance for Region Two, Inc. (HAART)". For the complete findings of fact regarding Eugene Collins failing to follow Code of Ordinance §1.7(a) procedure for public comments, by thrusting himself inside the rail and up to the podium while the prior speaker was still being removed and before the Mayor Pro Tempore invited public comment by saying "Anyone wish to speak on this item". See Defendant's Findings of Fact Nos. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | 2.5 seconds, and had barely begun to speak, when Scott Wilson ordered police to "take him out." An audience member cried out, "he hadn't even started!" | 135-180, particularly Nos. 135, 136, 137, 138, 139, 140, 142, 143, 150, 151, 161, 162, 163, 164, 165, 166, 167, 168, 174, 175 and 176. |
| 24. | Scott Wilson was a member of the Baton-Rouge Metro Council. On January 2, 2017, Mr. Wilson was elected by his peers to be Mayor Pro-Tempore of the Metro Council. As Mayor Pro-Tempore, Mr. Wilson ran the council meetings. | There is no evidence in the record as to the date Mr. Wilson was elected Mayor Pro Tempore. As far as Mr. Wilson running the council meetings, §4.05 of the Plan of Government for the City of Baton Rouge/Parish of East Baton Rouge required the Mayor Pro Tempore to "preside over the meetings of the Metro Council with the right to speak and to vote." No other authority or delegation of authority by the Metropolitan Council is found in evidence. Specifically, the Louisiana Open Meetings Law provides at La. R.S. 42:14(D) that the Metropolitan Council (a public body conducting a meeting subject to the notice requirements of R.S. 42:19(A)) is a "governing body [which] may adopt reasonable rules and restrictions regarding such comment period." The record contains no evidence that any such authority was ever delegated to the Mayor Pro Tempore. |
| 25. | Scott Wilson did not testify at trial. | This section should more correctly read: "Scott Wilson was not permitted to testify at trial due to a Protective Order (Doc 30) signed by United States Magistrate Judge Richard L. Bourgeouis, Jr., in this case that stated as follows:<br><br>"3. Provided that Plaintiffs do not put on any evidence at trial that is wholly unrelated to Mr. Wilson's role as Councilman or President Pro Tempore of the City/Parish, Mr. Wilson shall not testify at trial in this matter on any topic or in any capacity."<br><br>"This Protective order was issued upon consideration of the Joint Motion For Protective Order (R. Doc 28) and for good cause shown." |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| 26. | On January 2, 2021, Councilmember Lamont Cole replaced Mr. Wilson as Mayor Pro Tem. | This matter is not relevant to the findings of fact in this case. |
| 27. | By Fed. R. Civ. Proc., Rule 25(d), Mr. Cole was automatically substituted as party-defendant for Mr. Wilson at that time. | This statement is not relevant to the findings of fact in this case. |
| A. | Scott Wilson Directed Police to Remove Citizens from Metro-Council Meetings When They Mentioned Alton Sterling, or Criticized the Police, or Scott Wilson *Thought* They Were Going To Do So | See disputes to specific proposed findings below. |
| I. | Scott Wilson interrupted Michael McClanahan within 7 seconds and had Michael McClanahan removed from the Meeting Room when he mentioned Alton Sterling | See disputes to the specific findings below. |
| 28. | At a Metro-Council meeting on May 10, 2017, Plaintiff Michael McClanahan approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time, and invited the public to make comment on Item 50. Mr. McClanahan approached the podium during discussion of Item 50. The topic of Item 50 was:<br><br>Authorizing settlement of the | Although the facts are not in dispute, the order of presentation is and the phrase "approached the podium during discussion of" is confusing; and the facts should be laid out sequentially as set out by Defendant in Findings of Fact as follows:<br><br>Exhibit D-1 shows that the Metro Council meeting of May 10, 2017 began with a call to order, an invocation, a pledge of allegiance, and the following statements by the Mayor Pro Tempore:<br><br>WILSON:    Our public comment policy.  This is a public meeting.  In accordance with Title 1, Sections 1.2(c)(9) and 1.7(a) of the Code of Ordinances, all items on |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | claim of Glen Boudreaux for damages resulting from a sewer back-up in the claimant's home, for a total amount of $25,238.13; which amount shall be paid from the account designated "Insurance–General Liability" (012.4630000.644100). | this agenda are open for public comment with the exception of those items listed as "introductions" will be available for public comment at subsequent meetings.  Those members of the public desiring to speak on a particular item should refer to the meeting agenda and fill out a request to speak card indicating which items they wish to speak on and place it in the designated location prior to the meeting.  Once the item is announced, each person's name who has filled out a card will be called on to speak for the amount of time so designated by the Pro-Tem.

Ladies and Gentlemen, I'd like to make an announcement.  (Time 2:19) <u>If any disruption or interfering with the meeting will be removed by any individual that disrupt the meeting they will be removed</u>.  (Emphasis added.)

At the May 10, 2017 meeting, Scott Wilson invited the public to make comment on Agenda Item 50. (Established Fact No. 5 in Pretrial Order, Doc 110.)

Agenda Item 50 was regarding "Authorizing settlement of the claim of Glen Boudreaux for damages resulting from a sewer back up in the claimant's home, for a total amount of $25,238.13." (Established Fact No. 6 in Pretrial Order, Doc 110.)

Scott Wilson made the following statement to begin the time for public comments on Agenda Item 50:

WILSON:     Ladies and Gentlemen.  This is a public hearing.  Anyone wish to speak on the Item?  (D-2, at 13 seconds) |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| 29. | The screengrab below from Defendants' Exhibit 2, the video of the May 10, 2017 meeting, Item 50, shows Mr. McClanahan standing at the podium: | Defendant objects to the inclusion of "screengrabs" in the Findings of Fact, as having no evidentiary value that cannot be better set out in words if needed at all. Defendant raises this object for every "screengrab" used by Plaintiffs as a finding of fact. In addition, Plaintiffs' Proposed Finding of Fact No. 1, the objection includes Nos. 36, 43, 50, 57, 63, 69, 75, 82, 89, 95, 101, 107 and 113. |
| 30. | Michael McClanahan approached the podium to make comment. In a low, calm voice, he had the following exchange with Scott Wilson:<br><br>Mr. McClanahan: Good afternoon, ladies and gentlemen of the council. Mike McClanahan, president of East Baton Rouge NAACP. I'm speaking against the proposed item on the agenda today as a citizen of this community. I believe –<br><br>Mr. Wilson: Speaking on what? We got an item here about a sewer backup, item 50, that's what we're talking about.<br><br>Mr. McClanahan: I'm going to tell you why I oppose that. You all haven't heard anything yet. You can't just oppose something you haven't heard. Give me an opportunity to speak, and you can rebut, right? That's how it works, doesn't it? | Defendant's Findings of Fact Nos. 80-84 set out below are a more accurate findings on the entirety of public comments of Michael McClanahan:<br><br>Plaintiff, Michael McClanahan approached the podium (his name was not called) and the following exchange occurred (see D-2):<br><br>McClanahan: Good afternoon, ladies and gentlemen of the council. Mike McClanahan. I stand before you as president of the East Baton Rouge Parish NAACP. I'm speaking against the proposed item on the agenda today as a citizen of this community. I believe it is my constitutional right...<br><br>WILSON  You are speaking on what?<br><br>LOUPE  I'd like to make a point of order.<br><br>WILSON  We got an item here that's on a sewer backup, item 50, that's what we're talking about.<br><br>LOUPE  Mayor Pro Temp, I'd like...<br><br>McClanahan  I'm gonna talk, I'm gonna talk, I'm going to tell you why I oppose Item 50. Ya'll haven't heard anything yet. You can't just oppose something you haven't heard. Give me an opportunity |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | Mr. Wilson: No, not really.<br><br>Mr. McClanahan: Well, it should work like that. If you all choose . . .<br><br>Mr. Wilson: I'm not going to warn you about it. You can either talk on the item or you can leave.<br><br>Mr. McClanahan: I believe it is my constitutional right to express why I oppose the sewer item because on July the fifth, 2016, Alton Sterling was killed . . .<br><br>Mr. Wilson: John, please take him out. Thank you, sir.<br><br>Mr. McClanahan: . . . and your office continued to conduct business as usual. Since that time, the City of Baton Rouge has continued to conduct business – and I oppose this because that is not right. | to speak, and you can rebut, right? That's how it works, doesn't it?<br><br>LOUPE        No, not really.<br><br>McClanahan   Well, it should work like that.  If you all choose not to....<br><br>WILSON       I'm not going to argue with you now. You can either talk on the item or...<br><br>McClanahan   I believe it is my constitutional right to express why I oppose this item.<br><br>WILSON       You can either talk on the item or you can leave.<br><br>McClanahan   I oppose the sewer item because on July the 5th, 2016, Alton Sterling was killed and you all continue to conduct business as usual...<br><br>WILSON       Jonny, please take him out.  Thank you, sir.  Thank you.<br><br>McClanahan   Since that time, the City of Baton Rouge has continued to conduct business and I oppose that because this is NOT RIGHT.<br><br>Before the last statement was made Mr. McClanahan, Jonny Dunnam, the sergeant at arms, and one other gently turn Mr. McClanahan around to escort him from the podium.<br><br>At which time loud clapping ensues from the audience; and the members of the audience were yelling the following chant: NO JUSTICE, NO PEACE; NO JUSTICE, NO PEACE; NO JUSTICE, NO PEACE. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | The Mayor Pro Tempore again says "Jonny;" and a single audience member yells "NO JUSTICE, NO PEACE."<br><br>The Mayor Pro Tempore concludes Agenda Item 50 as follows:<br><br>WILSON    Okay, ladies and gentlemen, a public hearing is closed.  (D-2 at 1:51)<br><br>              Motion by Loupe, second by Collins-Lewis.  Are there any objections?  Seeing none, Item 50 carries.<br><br>The plaintiffs' version in Findings of Fact No. 30 is not only not complete but it fails to attribute comments to Councilman Chandler Loupe.  Michael McClanahan agreed that Chandler Loupe was interjecting comments.  See testimony of Michael McClanahan at Tr., p. 131, lines 1-6 and lines 11-16.  And Jonny Dunnam stated that it was not unusual for other council members to call for a point of order or otherwise interrupt public comments for discussions.  (Testimony of Dunnam, Tr., p. 173, lines 12-17). |
| 31. | Scott Wilson interrupted Mr. McClanahan within 7 seconds, before Mr. McClanahan stated why he opposed the agenda item. At that time, Mr. McClanahan was not speaking off the agenda item topic as he had not even reached the topic of his comment. | Michael McClanahan was speaking off topic when he was first asked by the Mayor Pro Tempore "You are speaking on what?" because he had begun a discussion of "I believe it is my constitutional right...", clearly off topic for an agenda item about whether to authorize settlement of a sewer damage claim. |
| 32. | Mr. McClanahan was interrupted with verbal warnings while he was at the podium before he could finish his statement to explain why | Mr. McClanahan was not interrupted until he was first off topic by claiming his constitutional rights.  Another Council member Chandler Loupe did cause interruption but rather than argue with Mr. McClanahan, the Mayor Pro Tempore warned him |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | he opposed the agenda item. | three times to "talk on the item or you can leave" after Mr. McClanahan continued to not heed the warnings and mention his constitutional rights. |
| 33. | Scott Wilson ordered Michael McClanahan removed less than one second after he heard the words "Alton Sterling." Mr. McClanahan had been at the podium for less than a minute. | It was not the word "Alton Sterling" that caused the Mayor Pro Tempore to "please take him out" but Mr. McClanahan's failure to speak on topic after three warnings, and to continue to talk off topic by saying "I oppose this sewer item because on July the 5th, 2016, Alton Sterling was killed and you all continue to conduct business as usual." |
| 34. | Two plainclothes police officers removed the microphone from Mr. McClanahan, grabbed him by the arm, and took him away from the podium and out of the room. | Better, more accurate and more complete findings of all that occurred with Michael McClanahan's public comments can be found at Defendants Findings of Facts Nos. 85 through 111. |
| ii. | On May 10, 2017, Scott Wilson had Gary Chambers removed from the Meeting Room the moment Mr. Chambers said the phrase "police department." | Disputed. See specific disputes to proposed findings of fact 35 to 42 below. |
| 35. | At a Metro-Council meeting on May 10, 2017, community-member Gary Chambers approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Scott Wilson invited the public to make comment on an Agenda Item 51. Mr. Chambers approached the podium during discussion of Item 51. The topic of Item 51 was: | Again, the order of the many facts set out in this item should be laid out sequentially and more accurately as is done in Defendant's Findings of Fact Nos. 112-116, incorporated herein by reference. Also "approached the podium during discussion of Item 51" is a confusing statement, it seems to make it appear that he approached while others were "discussing" which is not the case. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | Authorizing settlement of the claim of Cornel Hubert for damages resulting from a sewer back-up in the claimant's rental unit, for a total amount of $22,400.03; which amount shall be paid from the account designated "Insurance –General Liability". (012.4630000.644100). |  |
| 37. | Gary Chambers approached the podium for public comment and had the following exchange with Scott Wilson:<br><br>Mr. Chambers: So you guys are gonna rob me of my constitutional rights to say what I believe needs to be said…<br><br>Mr. Wilson: You can speak on the item or you can leave.<br><br>Mr. Chambers: . . . and have the police department…<br><br>Mr. Wilson: Johnny, would you please take him out. Take him.<br><br>Mr. Chambers: … who you pay for to escort the tax-paying citizens of this community out. I'm not going to let him – I have three minutes on the clock. | A more complete and accurate accounting of what occurred when Gary Chambers made public comments on Agenda Item 51 on May 10, 2017 is found in Defendant's Findings of Fact No. 11 as follows.<br><br>D-3 shows the following occurred[1] regarding Item 51 at the May 10, 2017 Metro Council meeting:<br><br>WILSON: Item 51.  Authorizing the settlement of a claim of Cornell Hubert for damages resulting from a sewer back up at claimant's rental unit in the amount of $22,400.03 by the Parish Attorney.<br><br>*0:11* Ladies and gentlemen, this is public hearing.  Does anyone wish to speak on this item?<br><br>*(Gary Chambers approaches the podium)*<br><br>Audience member: No justice.<br><br>CHAMBERS: So you guys are gonna rob me of my constitutional rights to say what I believe needs to be said...<br><br>*(Chambers and Wilson talk over each other.)* |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | Mr. Wilson: No, but not on this item.<br><br>Mr. Chambers: Again I say, Alton Sterling was murdered on July the fifth. Scott Wilson you are a coward for putting people out of this room. They have a right to speak out. They have a right to speak out. And you are a coward, sir. | WILSON:    You can speak on this item or you can leave.<br><br>CHAMBERS:    ...and have, and have the police department who you are responsible for...<br><br>WILSON:    Johnny, would you please take him out? *(28 seconds)* Thank you.  I appreciate it.<br><br>*(Johnny Dunnam approaches Chambers, tapping Chambers on the back.)*<br><br>CHAMBERS:    ...pay for, to escort the tax paying citizens of this community out.<br><br>    I'm not going to let him.  I have three minutes on the clock.<br><br>WILSON:    No, we got to have this item.<br><br>CHAMBERS:    Again I say, Alton Sterling was murdered on July the 5th.<br><br>WILSON:    Johnny...<br><br>CHAMBERS:    Scott Wilson you are a coward for putting people out of this room.  Now they have a right to speak out.  Now they have a right to speak out.  They have a right to speak out.<br><br>*Chambers is escorted from podium by Johnny Dunnam and two other while continuing to speak loudly.*<br><br>CHAMBERS:    You are a coward sir.  You are |

-19-

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | a coward.<br><br>*(Audience claps loudly.)*<br><br>CHAMBERS:    We have a right to be here.<br>We have a right to be here.<br>We have a right to be here.<br><br>Damn Robert's Rules.<br><br>A man got killed and ...nothing about it.<br>*1:03*<br><br>WILSON:    Ladies and Gentlemen, this is public hearing.  Anyone wish to speak on this item?  Seeing none, public hearing is closed.<br><br>*(Chambers can be heard to still be hollering from background.)*<br><br>WILSON:    Motion by Collins-Lewis, second by Amoroso.  Are there any objections?  Seeing none, Item 51 carries. |
| 38. | Scott Wilson interrupted Mr. Chambers with a verbal warning within 4 seconds, before Mr. Chambers could finish his introductory statement about what it was he believed needed to be said. At that time, Mr. Chambers was not speaking off the agenda item topic as he had not even reached the topic of his comment. | Mr. Chambers began his comments on Agenda Item 51 (to authorize settlement of a sewerage damage claim) by talking off topic and by accusing the Metro Council of "rob[bing] me of my constitutional rights to say what I believe needs to be said."  Mr. Chambers admitted that he did even know what Agenda Item 51 was.  (Tr., p. 34, lines 13-15).  Mr. Chambers acknowledged that this very first comment of his had nothing to do with Agenda Item 51.  (Tr., p. 38, lines 5 through p. 39, line 9). |
| 39. | Scott Wilson ordered Gary Chambers removed right after | After (admittedly) talking off topic about his constitutional rights, Gary Chambers was warned to |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | he heard the words, "police department." Gary Chambers was only at the podium for eight seconds before Scott Wilson ordered him "taken out." | "speak on the item or you can leave."  He failed to heed that warning and then stated "And have, and have the police department who you are responsible for...", also off topic for the agenda item authorizing settlement of a sewer damage claim. |
| 40. | The police removed Mr. Chambers from the building and arrested him for disturbing the peace and resisting arrest. | For a more accurate accounting of Gary Chambers' removal from council chambers and his arrest for disturbing the peace and resisting arrest, see Defendant Finding of Fact Nos. 116-119, and 127-131.  See also D-26.

See particularly, Defendant Finding of Fact No. 134:

The removal of Gary Chambers from the Council Chambers was appropriate and authorized by law.  Chambers himself admits that his comments were off topic.  But more than that, his comments were accusatory and disrespectful.  He began by accusing the Council of "going to rob" him of his constitutional rights.  He failed to heed the first warning by the Mayor Pro Tempore to "speak on topic or you can leave".  Chambers failed to heed the first warning and made comments about "the police department who you are responsible for."  At that point, the Mayor Pro Tempore asked Lt. Cpl. Dunnam to take Mr. Chambers out but Chambers continued to talk and said he would "not let" himself be taken out.  When the Mayor Pro Tempore suggested the comments were limited to the item, Chambers responded that "Alton Sterling was murdered on July the 5th", whereupon the Mayor Pro Tempore asked Lt. Cpl. Dunnam for the second time to take Mr. Chambers out as Mr. Chambers had refused to move when the first order was made.  At this point Mr. Chambers called the Mayor Pro Tempore a "COWARD" in a loud voice.  When Lt. Cpl. Dunnam was about to pry Mr. Chambers hands away from the podium, Mr. Chambers then called the Mayor Pro Tempore a "coward" two more times and even on the way down |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | the aisle and out of the room.  Mr. Chambers continued to yell "We have a right to be here" three times, followed by "Damn Robert's Rules".  His behavior in the hall outside the door was so unruly and disruptive that he was arrested by Lt. Cpl. Dunnam for disturbing the peace and resisting arrest. All of this totally disruptive behavior allowed the removal of Mr. Chambers from the Council room, as it interfered with the orderly and efficient progress of the Metro Council meeting in an extreme and inexcusable manner. |
| iii. | On May 10, 2017, Scott Wilson had Eugene Collins removed from the Meeting Room after only two-and-a-half seconds – and before Collins began his comment. | Disputed, as written.  See specific disputes to Items 41 - 48 below. |
| 41. | At a Metro-Council meeting on May 10, 2017, community-member Eugene Collins approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Scott Wilson invited the public to make comment on an Agenda Item 60.  Mr. Collins approached the podium during discussion of Item 60. The topic of Item 60 was:<br><br>Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations. | Again the facts set forth are out of order and incorrect. Eugene Collins was <u>not</u> invited to make public comment on Item 60.  A complete and accurate rendition of what occurred with respect to Eugene Collins attempting to make public comments on Agenda Item 60 is found in Defendants Finding of Fact Nos. 135 - 180.  It is important to view Item 60 as a whole to be able to determine how Eugene Collins failed to follow procedure, failed to follow Code of Ordinance §1.7(a) providing "Members of the public who wish to speak, must request permission to do so when such time is announced by the chairman"; and interjected himself uninvited on to the podium before the prior speaker had even been removed.  See Defendants Findings of Fact Nos. 135 through 180 incorporated herein by reference. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| 42. | House Bill 276 bill specified how long police officers would have to hire an attorney before they are questioned for an incident involving shooting and seriously injuring or killing someone. It had originally contained a provision about how long an officer should be paid and not paid while on administrative leave for a shooting. The unrebutted testimony at trial proved that House Bill 276 "was to do some things that increased the means of police oversight which was definitely in total context around police violence and police violence against the community." | In this finding of fact, plaintiffs ask the Court to take post trial judicial notice of a webpage digest of HB 276. The evidence was not listed on plaintiffs' Exhibit List and this Court has refused to allow consideration of exhibits not listed on an Exhibit List even where the request was made at trial. See Tr., p. 194, lines 8-18, where Eugene Collins indicated he would have to see HB 276 in order to answer questions about it, and the Court excluded HB 2765 from evidence because it was "not in the pretrial order" and "not in the list of exhibits". What is in evidence, however, is D-10, the attachments available at the Metro Council meeting on May 10, 2017, to Agenda Item 60 regarding "Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations" See Defendant's Finding of Fact No. 137, "As D-10, the attachments to Agenda Item 60 show, House Bill 276 would amend La. R.S. 40:2409 to provide that a law enforcement officer could be on paid administrative leave for not more than 60 days during the pendency of an officer involved incident investigation. Item 60 expressed the opposition of the Metro Council to the 60 day limitation found in House Bill 276." <br><br> This evidence is more credible and rebuts Eugene Collins' non specific testimony (quoted in Plaintiffs' Finding of Fact No. 42) what he "think at the time" House Bill 276 concerned. See Tr., p. 93, lines 16-22. |
| 44. | Eugene Collins only got as far as "I oppose this motion because on July…." before Scott Wilson ordered the police to "take him out." | Eugene Collins only said the word "On" after he thrust himself on to the podium without an invitation in violation of Code of Ordinance §1.7(a) and established procedures and while the former speaker was still being removed on May 10, 2017. See Defendant Finding of Fact Nos. 164, 165, 166, 167 and 168, and the transcript page cited there, particularly with respect to Eugene Collins admissions that when he walked up the sergeant at arms was in |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | the process of removing the previous speaker.  (Tr., p. 98, lines 14-18), the Mayor Pro Tempore had not asked for additional comments from members of the public (Tr., p. 97, lines 13-17), and all he said was the one word "On" (Tr., p. 103, lines 23 - p. 104, line 8). |
| 45. | A member of the audience cried out, "He hadn't even started!" | There was a cry from the audience to that effect, although it perhaps was, "His time hasn't even started."  See D-5, between 4:25 and 4:42. |
| 46. | Scott Wilson only allowed Mr. Collins to speak for 2.5 seconds before cutting him off and expelling him from the chamber. | It is not the time (2.5 seconds) that is relevant issue here.  What is relevant is the facts that Eugene Collins approached the podium not only before Ms. Mora had been removed but not in response to a call from the Mayor Pro Tempore for "anyone wishing to speak on this item," and in violation of Code of Ordinance §1.7(a).  The Mayor Pro Tempore had not asked for or authorized another member of the public to comment. Eugene Collins admitted that at the time he walked up, the sergeant at arms was in the act of removing the previous speaker, Ms. Mora.  (Collins testimony, Tr., p. 98, lines 14 - 18)  Eugene Collins admitted that at the time he walked up to the podium, the Mayor Pro Tempore had not asked for any additional comments from members of the public.  (Collins testimony, Tr., p. 97, lines 13-17)  This is not unlike and is consistent with the actions taken by the Mayor Pro Tempore, also on Agenda Item 60, three or four speakers before Eugene Collins interjected himself onto the podium, when the Mayor Pro Tempore also asked that the "unidentified female" be taken out after she began walking around in front of the podium while another speaker had the podium, also without an invitation from the Mayor Pro Tempore of "anyone wish to speak on this item.", and also in violation of Code of Ordinance §1.7(a)  See Defendant Findings of Fact Nos. 150, 151 and 152.  See D-5, beginning at 2:36. |
| 47. | Scott Wilson did not give Mr. Collins any verbal warning. Mr. Wilson silenced him even | The Mayor Pro Tempore did not give Eugene Collins a verbal warning nor did he give a verbal warning to the "unidentified female", both of whom approached |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | though Mr. Collins intended to voice a viewpoint directly on Agenda Item 60. | the podium without invitation by the Mayor Pro Tempore, in violation of Code of Ordinances §1.7(a), and each of whom did so while the previous speaker was talking and had not yet been removed.  See Tr., p. 91, lines 7-15[2] where Mr. Collins admitted his awareness that "during the public hearing section, the Mayor can also question if anybody wants to speak during the public hearing section of its as well."  This was the procedure employed by the Mayor Pro Tempore before an individual was allowed to make public comments on Agenda Item 60.  See D-5, at 17 seconds, 1 minute, 3:13 and 5:33.  No similar request was made at 4:25 when Collins interjected himself on the podium grabbing the podium with both arms.  And even though Eugene Collins claimed at Tr., p. 92, lines 11-14, that he "more than likely" filled out a public comment card, the evidence is overwhelming that public comment cards was not used on May 10, 2017, for public comments on Agenda Item 50, 51 or 60.  See Defendant Findings of Fact Nos. 60, 61, 62, 63, 69, 70, 71, 72, 73, 74 and 75.

Plaintiffs claim in No. 47 that "Mr. Wilson silenced him even though Mr. Collins intended to voice a viewpoint on directly on Agenda Item 60" is misleading.  There is no evidence to show that the Mayor Pro Tempore knew that; Collins approached the podium without invitation and Mr. Collins said that all he said was the word "On."

Mr. Collins did testify at trial that he intended on May 10, 2017, to express a "viewpoint that we have a police killing in this town and we felt like our city council's response to that wasn't adequate." (Tr., p. 102, lines 14-18) The record contains no evidence to show that the Mayor Pro Tempore was aware of what Mr. Collins may have intended to say.  Nor, if said, would this viewpoint be relevant or on topic for to Agenda Item 60, expressing opposition to House Bill 276, which bill would reduce to 60 days the paid |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | administrative leave during the pendency of officer involved incident investigations.  See D-10 and Defendant Finding of Fact No. 137. |
| 48. | A police officer removed Mr. Collins from the podium and took him out of the room. | The portions of the video cited by Plaintiffs in their fn. 57 in Doc 198-1, show Mr. Collins removed from the podium - but not being taken out of the room. |
| iv. | On May 10, 2017, Scott Wilson allowed Coby Weaver to remain at the podium for two minutes until she pointed out that he was treating her differently than Black citizens. | The heading for "iv" is in dispute, as will be shown by the dispute responses to Plaintiff Finding of Fact 49-55 below.<br><br>Colby Weaver "pointing out" an alleged different treatment did not cause the Mayor Pro Tempore to ask that Ms. Weaver be "help[ed] her out please", it was the return of the sergeant at arms, Jonny Dunnam, to the Council room to be able to "help her out" that finally allowed the Mayor Pro Tempore to make that request.  See Defendant Findings of Fact Nos. 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155 and 156. |
| 49. | At a Metro-Council meeting on May 10, 2017, community-member Coby Weaver approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Ms. Weaver approached the podium during discussion of Item 60. The topic of Item 60 was:<br><br>Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations. | A better, more accurate, more complete, more sequential and more orderly presentation of the facts involving Colby Weaver's public comments on Agenda Item 60 on May 10, 2017 can be found in Defendant Findings of Fact Nos. 135, 136, 137, 139, 140, 141, 142, 143 (particularly at Doc 196, pp. 26, 27 and the first line on p. 28), 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156 and 157.  Again the "approached the podium during discussion" language is misleading. |

|  | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
| 51. | Coby Weaver had the following exchange with Scott Wilson:<br><br>Ms. Weaver: Just like the lady before me said, as a citizen in Baton Rouge, I am extremely upset by the culture not only of the police but with everyone sitting here today and allowing this culture of hate and distrust to continue to breed while you guys sit here and do nothing.…<br><br>Mr. Wilson: Please stick to the topic of the item.<br><br>Ms. Weaver: I oppose this item because I oppose you guys not acting upon anything before taking into consideration what you need to do in order to protect this city and its citizens. While continuing to push forward other items and continue to waste your time while not addressing Alton Sterling and not addressing the police.<br><br>Mr. Wilson: We're not talking about Alton Sterling. We're talking about this item right here.<br><br>Ms. Weaver: While not addressing Alton Sterling and not addressing what has happened and continuing to | Plaintiffs Finding of Fact No. 51 does not contain the entirety of the comments made, nor does it show that an "unidentified female" appeared and interrupted those comments, nor is it complete.  For a complete and accurate representation, see Defendant Finding of Fact No. 143 representing the contents of D-5, the video of all public comments on Agenda Item 60, with the Colby Weaver part beginning at 1:00 and ending at approximately 3:13 and found in Doc 196 on page 26 where "1:00" is not noted and ending on page 28 where "3:13 is noted. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | push forward with other items, you guys are ignoring your citizens, and you guys are ignoring the people who voted for you and put you in power. You guys need to stand up for your people, for all of the people in Baton Rouge and you guys need to go ahead and make people be held accountable. You guys have a lot of power and you need to use it for your citizens. Also I love how I have not been removed from this entire place. I also like how I was not violently removed from standing up here like the two men before me who stood and spoke. I said the same things. As soon as they said, two lack men said, the words Alton Sterling, July 5th. You guys violently grabbed them and removed them from this courtroom.<br><br>Mr. Wilson: [indiscernible] Johnny will you help her out please? | |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| 52. | Scott Wilson gave Ms. Weaver two verbal warnings, but allowed her to keep speaking. | Plaintiffs' Findings of Fact Nos. 52, 53, 54 and 55, are, in places, inaccurate, are certainly incomplete, totally omit the presence of an unidentified female being removed, and neglect to consider the most relevant testimony of all regarding the timing of Ms. Weaver's being helped out.  A totally accurate, more complete, and including all relevant matters discussed is found in Defendants Finding of Fact Nos. 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156 and 157.<br><br>Plaintiffs' Finding of Fact No. 52 is specifically limited in its failure to include the testimony of Jonny Dunnam that Ms. Weaver could not have been removed sooner because Jonny Dunnam was not in the room.  See Defendant Findings of Fact Nos. 153-156. |
| 53. | Scott Wilson allowed Ms. Weaver to remain at the podium for two minutes, while Ms. Weaver spoke on the same topic as Plaintiffs, before ordering her removed. | Plaintiffs' Finding of Fact No. 53 suffers from the same omissions as No. 52, but also neglects to mention when it counts two minutes (if time is important at all, which Defendant denies as substance of comments is the controlling factor in off topic removals) that Ms. Weaver's time was interrupted by the uninvited presence of an "unidentified female" who caused a disruption and had to be removed.  See Defendant Findings of Fact Nos. 148-152. |
| 54. | As soon as Ms. Weaver, a White woman, orally recognized that she was being treated differently than Plaintiffs, all Black men, Defendant Scott Wilson directed police to remove her. | Plaintiffs' Finding of Fact No. 54 is in dispute.  There is no evidence in the record to establish that Colby Weaver is a "white" woman.  The only evidence of race is each plaintiff identifying himself as "black".  The evidence shows that it was not Colby Weaver talking about her being treated differently that finally allowed for the Mayor Pro Tempore to ask Jonny Dunnam to "help her out."  Her removal would have been proper from her very first statement as that, as well as all her subsequent statements were off topic, so as to cause at least two warnings.  However, her being "helped out" could not have been accomplished until Lt. Cpl. Jonny Dunnam, the sergeant at arms, |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | returned to the room. See Defendant Findings of Fact Nos. 152, 153, 154, 155, 156 and 157. |
| 55. | A police officer removed Ms. Weaver from the podium and took her out of the room. | Plaintiffs' Finding of Fact No. 55 is incomplete and in dispute. It was Lt. Cpl. Jonny Dunnam, the sergeant at arms for the Metro Council, not simply "a police officer", who escorted Ms. Weaver away from the podium. The video contains no evidence to show that Ms. Weaver was taken "out of the room." |
| v. | On May 10, 2017, Scott Wilson had Sydney Epps removed from the Meeting Room when she called for the firing of the Police Chief and two Police Officers. | The record does not reflect that Sydney Epps was "removed from the meeting room". This heading statement is too general and limited to represent what occurred when Sidney Epps made public comments on Agenda Item 60 on May 10. The complete colloquy of the public comments by Sydney Epps are set out in Defendant Finding of Fact Nos. 43 at Doc 196, beginning at the top of p. 28 and continuing through the first line on p. 29 and at Defendant Findings of Fact Nos. 157 through 160. |
| 56. | At a Metro-Council meeting on May 10, 2017, community-member Sydney Epps approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Ms. Epps approached the podium during discussion of Item 60. The topic of Item 60 was:

Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations. | Again, the order of events in Plaintiffs Finding of Fact No. 56 is confusing. To say that Sidney Epps approached the podium "during discussion of Item 60" is misleading. What actually occurred is that the Mayor Pro Tempore asks (D-5 at 3:13) "anyone wish to speak on the item", and a lady who identifies herself as Sidney Epps is at the podium and begins talking off topic almost immediately after identifying herself, giving her address, stating that she moved to Baton Rouge after the Alton Sterling shooting; and then goes off topic by stating "what it relates to with the opposition of the bill that is in front of us, is that we really need to call for the immediate termination of the Baton Rouge Chief of Police Carl Dabadie," which caused the Mayor Pro Tempore to ask "Jonny would you please?" Ms. Epps continues to talk, adding "...as well as Blane Salamoni and Howie Lake, too."

At 3:49 Jonny Dunnam approaches Ms. Epps but she |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | continues to talk at the podium, causing the Mayor Pro Tempore to warn her for a second time that she is off topic.  "We're not talking about...Jonny would you take her out please."  Ms. Epps continues on "I just want to say that" whereupon the Mayor Pro Tempore says "Thank you."  Ms. Epps still continues, "I just want to say that", "relating to the police chief in the City of Baton Rouge," causing the Mayor Pro Tempore to again say "Thank you".  Then Ms. Epps repeats, "relating to the City of Baton Rouge.  What I am saying is that".  The Mayor Pro Tempore finally states "Take her out Jonny.  Ma'am you have to leave."

Ms. Epps appears to be fighting with Jonny Dunnam, flailing her arms at him as he walks her away from the podium.  After turned away, Ms. Epps states "Black lives matter."

Plaintiffs' Finding of Fact No. 56 does identify Agenda Item 60, but it does not relate how Agenda Item 60 is explained in D-10, the attachments to the Agenda Item.  See Defendant Finding of Fact No. 137, and it becomes obvious that Ms. Epps statement to "call for the immediate termination of Baton Rouge Chief of Police Carl Dabadie" is certainly off topic.

Earlier in that same sentence, Ms. Epps mentioned the name "Alton Sterling" and she was allowed to continue, defeating plaintiffs' claim that any mention of the name "Alton Sterling" occasioned removal from the podium.  This reference to Alton Sterling was not objectionable as she used it to describe the time period in which she moved to Baton Rouge, while identifying herself. |
| 58. | Sydney Epps began her comment by stating, "I moved here immediately after the Alton Sterling shooting and what it relates to with the | Plaintiffs Finding of Fact No. 58 is also incomplete and misrepresents what occurred.  It does not contain all of her comments.  The statement that the Mayor Pro Tempore "immediately expelled" Ms. Epps from the room is incorrect. The Mayor Pro Tempore asked |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | opposition of the bill that is in front of us it that we really need to call for the immediate termination of Baton Rouge Chief of Police Carl Dabadie as well as the officers Blane Salamoni and Howie Lake." Defendant Scott Wilson immediately expelled Ms. Epps from the room, saying, "Johnny, would you please help her out please." | "Jonny would you please?", after which Ms. Epps continued to talk three more times with the Mayor Pro Tempore responding "Thank you" after the first and second added comments and finally saying "Take her out Jonny.  Ma'am you have to leave."  Once Ms. Epps is finally turned around by Jonny Dunnam, she continues to talk by stating "Black lives matter." |
| 59. | Defendant Scott Wilson did not give Ms. Epps any verbal warning. | To say that Ms. Epps was not given any verbal warnings (before the Mayor Pro Tempore said for the first time "Jonny would you please") is of no great importance as Ms. Epps would not leave and continued to talk at least three more times with the Mayor responding "Thank you" twice and finally "Take her out Johnny.  Ma'am you have to leave." Ms. Epps appeared to flail her arms at Jonny Dunnam when he attempted to turn her away from the podium. Her removal from the podium was appropriate.  She was talking off topic and continued talking off topic. Her behavior was also disruptive by the continued off topic talking, the resistance to Jonny Dunnam, and her parting shot stated while walking away, "Black lives matter." |
| 60. | When Ms. Epps called for the firing of the Police Chief and two Police Officers responsible for the death of Alton Sterling, Defendant Scott Wilson immediately removed Ms. Epps, without warning, by directing her removed from the podium and taken out of the room by police. | The representations made by Plaintiffs in Finding of Fact No. 60 do not accurately represent what occurred. See disputes as to Nos. 56-67 above. |

|     | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
| --- | --- | --- |
| 61. | The police removed Ms. Epps from the podium and took her out of the Meeting Room. | The video recording (D-5) does not show Ms. Epps being removed from the meeting room. |
| vi. | On May 10, 2017, Scott Wilson had Lynne Espinoza removed from the Meeting Room as soon as she called for the firing of the Police Officers responsible for the death of Alton Sterling. | This heading is not a correct statement of what occurred.  No removal from the meeting room is shown in evidence.  Nor is a removal from the meeting room asked for.  When Ms. Espinoza asks the Mayor Pro Tempore if he is excluding her from speaking, he responds "Thank you.  Thank you ma'am."  <br><br>The entire colloquy as shown on D-5 is set forth on Doc 196, Defendant Findings of Fact at pages 29 and 30 from 4:42 through 5:33. |
| 62. | At a Metro-Council meeting on May 10, 2017, community-member Lynne Espinoza approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Ms. Espinoza approached the podium during discussion of Item 60. The topic of Item 60 was:  <br><br>Expressing the opposition of the Metropolitan Council to House Bill 276 filed in the 2017 Session while under officer involved incident investigations. | Again, this finding of fact is not really correct when it says that Ms. Espinoza "approached the podium during discussion on Item 60."  It should more appropriately read "approached the podium during the time for public comments on Item 60." |
| 64. | Lynne Espinoza began her comment by stating, "I like many people before me am here to speak to my Metro Council who I voted and | When Ms. Espinoza finished her comments outlined in Defendant Finding of Fact No. 64 (part of which is omitted because hard to hear), by stating "We would like the officers involved to be fired.", the Mayor Pro Tempore did not "order a police officer to remove her |

|  | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
|  | elected to have here, and ask them to hear their citizens when we tell you that we feel hurt and we feel disrespected. We feel like we are not safe in this city and we are telling you concrete things you can do to make us feel safe in this city. We would like the officers involved to be fired because they do not protect us."  As soon as Ms. Espinoza called for the firing of the police officers, Defendant Scott Wilson ordered a police officer to remove her from the Meeting Room, "We're not talking about the officers involved. Johnny, please." | from the Meeting Room." as alleged in Finding of Fact No. 64.  What the Mayor Pro Tempore did say to Ms. Espinoza was "We are not talking about the officers involved," informing her that her comments were off topic.  Ms. Espinoza responded with something to the effect of "We are talking about..." whereupon the Mayor Pro Tempore said "Jonny please", causing Ms. Espinoza to ask if "You are excluding us from speaking?" to which the Mayor Pro Tempore responded "Thank you ma'am, thank you." Ms. Espinoza is escorted away from the podium by Jonny Dunnam and another while continuing to talk and pointing her finger.  See D-5 from 4:42 to 5:33. |
| 65. | Defendant Scott Wilson did not give Ms. Espinoza any verbal warning. | What the Mayor Pro Tempore told Ms. Espinoza was "We are not talking about the officers involved", in effect telling her she was off topic, whether it be considered a warning or not.  Nonetheless, Ms. Espinoza continued to talk and only then did the Mayor Pro Tempore say "Jonny please", causing Ms. Espinoza to ask if "You are excluding us from speaking" and the Mayor Pro Tempore to answer "Thank you ma'am.  Thank you."  Only then is Ms. Espinoza escorted away from the podium by Jonny Dunnam, at which time she still continues to talk and even points her finger. |
| 66. | When Ms. Espinoza called for the firing of the two Police Officers responsible for the death of Alton Sterling, Defendant Scott Wilson immediately and without warning directed that | This finding of fact is not supported by the record. See D-5.  The Mayor Pro Tempore did not "immediately and without warning directed Ms. Espinoza be removed from the podium and taken out of the room by the police."  For what actually occurred, see Defendant's response to No. 65 above. See also Doc 196, Defendant Findings of Facts at pp. |

-34-

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | Ms. Espinoza be removed from the podium and taken out of the room by police. | 29-30 from 4:42 to 5:33 or view D-5 at those times. |
| 67. | Ms. Espinoza was removed from the podium and taken out of the Meeting Room by police. | There is no evidence to show that Ms. Espinoza was taken out of the room by the police. She was escorted away from the podium by Lt. Cpl. Jonny Dunnam, the sergeant at arms. |
| vii. | On June 28, 2017, Scott Wilson had Arthur Reed removed from the Meeting Room after less than five seconds. | The public commenter discussed under headings vii, occurred on June 28, 2017, after May 10, 2017, and is not relevant to establish a pattern or policy under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978), as only "prior incidences not subsequent events" can be considered in establishing a pattern or policy under *Monell*. See also *Harkless v. Brazoria County, Texas*, 2016 WL 1702595, at *4 (S.D. Texas 4/18/16). |
| 68. | At a Metro-Council meeting on June 28, 2017, community-member Arthur Reed approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time.  Mr. Reed approached the podium during discussion of Item 56. The topic of Item 56 was:<br><br>Authorizing settlement of the claim of Liberty Mutual Insurance on behalf of American Fire & Casualty Company as subrogee of Billy Heroman's Flowerland for damages resulting from an auto accident, in the amount of $14,590.63. Amount shall be paid from the account | The video at issue is found on P-22.  The gentlemen making the public comments is never identified by name (Arthur Reed or any other name) and is never identified as a "community member." |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | designated "Insurance - Auto Liability" (012.4630000.644200). *This matter may be discussed in executive session. | |
| 70. | When Arthur Reed approached the podium, he began, "Good evening council, on this item we would like to know when you're going to stop pussyfooting around and handle this Alton Sterling situation." Scott Wilson immediately ordered him removed, "Johnny, take him out." As the officers approach, Mr. Reed continued "We ready for you to handle the Alton Sterling situation." | In addition, the gentleman can be heard cursing and stating "G _ _ Damn it." |
| 71. | Defendant Scott Wilson did not give Mr. Reed any verbal warning. | The off topic comment about Alton Sterling (not the settlement of an accident claim), coupled with the use of the p _ _ _ _ word caused the Mayor Pro Tempore to ask "Jonny take him out." Not aware of any requirement for a verbal warning. The gentleman's actions were a willful disruption of the meeting that date. He resisted removal from the podium and cursed out loud (G _ _ Damn it.) He continued talking while being escorted down the aisle and out of camera range, he can heard still talking about p _ _ _ y footing in the background. |
| 72. | With no verbal warning, Defendant Scott Wilson directed Mr. Reed removed from the podium and taken out of the room by police. | The video P-22 does not show the gentleman removed from the room. Since he can still be heard talking out of camera range, it is not clear that he was removed. |
| 73. | Mr. Reed was removed from the podium and taken out of | Mr. Reed was escorted away from the podium by Lt. Cpl. Jonny Dunnam while resisting to a degree, |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | the Meeting Room by police. | continuing to talk, cursing, and continuing to talk about p _ _ _ y footing.  There is no evidence to show that he was taken out of the meeting room.  The evidence does show him talking off topic and being disruptive. |
| B. | The Mayor Pro-Tempore of the Metro Council Has Consistently Allowed People to Speak Far Off Agenda Topics – So Long as They Do Not Mention Alton Sterling or Criticize the Police | All of the events listed under this heading except the last one occurred after May 10, 2017.  None of these serve as true comparators of the Mayor Pro Tempore's intent on May 10, 2017, should that even be a proper inquiry in this case, as no policy or procedure has been established which allegedly caused a constitutional violation.  They are neither sufficiently similar nor do they establish a widespread pattern of any particular conduct so as to constitute custom. Nor are they prior acts of the Mayor Pro Tempore; and only "prior incidences not subsequent events" can be considered in establishing a pattern or policy under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  See also *Hackless v. Brazoria County, Texas*, 2016 WL 1702595, at *4 (S.D. Texas, 4/18/16).  These should all be excluded from evidence, as Defendant claimed in its motion in limine still pending.  They are not relevant and cannot be used to establish a pattern or policy; and are not sufficiently similar subsequent events to be considered valid "comparators" on the issue of intent.<br><br>Plaintiffs introduced in evidence these videos allegedly to show that the Mayor Pro Tempore's intention on May 10, 2017, in excluding the remarks of Plaintiffs, McClanahan, Chambers and Collins, was caused because of viewpoint discrimination, and to show that the Mayor Pro Tempore treated others differently when they were not talking about Alton Sterling.  (Comments of Court, Tr., p. 115, lines 13 - 25)<br><br>First there is no evidence that Eugene Collins talked about Alton Sterling.  All we know is that he said "On" while at the podium, but that he approached the |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | podium without being asked if anyone wished to make comments and before the prior speaker had been completely removed and in violation of Code of Ordinance §1.7(a).<br><br>Mr. McClanahan was ordered removed only after he was given three warnings to stay on topic after he had mentioned constitutional rights several times and mentioned "the police department."  Mr. McClanahan mentioned Alton Sterling only after he was ordered removed.<br><br>Mr. Chambers was given one warning; he also talked off topic about constitutional rights and did mention Alton Sterling when he was ordered out.<br><br>Second, this evidence is neither necessary nor relevant as viewpoint discrimination has not been established. No constitutional rights have been violated.  As the Fifth Circuit held in *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017), "If Heaney would have violated a reasonable restriction, such as a topic or time restraint, there would be no constitutional violation."  Not only did each plaintiff violate a reasonable restriction (McClanahan and Chambers - off topic; and Collins, - failing to follow Code of Ordinance §1.7(a) and established procedure for making public comments and otherwise disrupting the orderly process of Council meeting).  More importantly, plaintiffs have not shown the existence of (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation. |
| I. | On September 27, 2017, Scott Wilson allowed Phillip Lillard to speak for more than a minute and a half, despite orally recognizing that Mr. Lillard was off-topic. | Mr. Villard was warned twice by the Mayor Pro Tempore that he was off topic.  On the third warning, Mr. Villard was told "I'm going to ask you one more time on 76 or you can sit down."  *(2:12)*  Unlike Mr. McClanahan, Mr. Villard heeded the third off topic warning.  Not a valid comparator.<br><br>Mr. Villard then sat down so there was no need to |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | | order him taken out. |
| 76. | Mr. Lillard began his comment with "I didn't get to finish before. I would really like for y'all to reconsider the one that you just voted on and vote against it."  He then began to speak about the RDA and train stations. Defendant Scott Wilson interrupted Mr. Lillard, and directed him to speak on topic, saying, "I understand, but we're talking about the deleting of these jobs. That's what we're talking about, Number 76. We're not talking about train stations. RDA will come up in Item 78. Well, I'm sorry, that's Item 78. We're on Item 76." | This event occurred on September 27, 2017, after the May 10, 2017 events at issue in this case.  Mr. Villard did appear to want to discuss the previous agenda item, and he was warned twice by the Mayor Pro Tempore that he was off topic. |
| 77. | Mr. Lillard responded "Well, I'm against Item 76, okay, and I wish y'all would reconsider the other item. I'm against Item 76 because the other item shouldn't have passed, okay."  Mr. Lillard continued to speak about the RDA and train stations. Mr. Wilson interjected again, "Mr. Lillard, I'm going to ask you one more time to speak on Item 76, or you can please sit down."  Mr. Lillard made a final comment about asking the council to reconsider, and then sat down. | This is the second warning to Mr. Villard that he is off topic.  At the third warning of "I'm to ask you one more time on 76 or you can sit down."  (P-23, 2:12), unlike Mr. McClanahan, Mr. Villard heeded the third off topic warning and sat down. |

|  | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
| 78. | Mr. Lillard was speaking off the agenda item topic. But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | Mr. Villard was warned three times that he was talking off topic. At the third warning, Mr. Villard sat down. Plaintiff McClanahan was also warned three times that he was talking off topic but Mr. McClanahan did not heed the third warning as Mr. Villard did. Mr. McClanahan's off topic discussions included constitutional rights and Alton Sterling. Mr. Villard's off topic discussions included reconsideration of the prior item and train stations. Not all off topic discussions are of the same topic. |
| 79. | Defendant Scott Wilson explicitly understood Mr. Lillard to be speaking off-topic, and two times directed him to speak on topic. | On the third warning to Mr. Villard of "I'm going to ask you one more time to speak on Item 76, or you can please sit down", Mr. Villard sat down. |
| 80. | But even though Mr. Lillard refused to speak on-topic, Defendant Scott Wilson allowed him to speak for more than a minute and a half. At no point did Defendant Scott Wilson direct that Mr. Lillard be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Mr. Lillard be taken out of the room by police. | Since Mr. Villard heeded the third warning by the Mayor Pro Tempore and sat down, there was no need to order him removed. |
| ii. | On September 27, 2017, Scott Wilson allowed Plaintiff Gary Chambers to speak for more than a minute and a half, despite orally recognizing that Mr. Chambers was off-topic – but not about the police or Alton Sterling. | This event occurred on September 27, 2017, subsequent to the events at issue on May 10, 2017, and cannot be used to show practice of the Metro Council. On this occasion, Mr. Chambers was warned three times that he was talking off topic. At 5:17 on P-23, the Mayor Pro Tempore said "Mr. Chambers, I've asked you three times. You need to sit down." Mr. Chambers heeded that last warning and saw |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  |  | down. |
| 81. | At a Metro-Council meeting on September 27, 2017, Plaintiff Gary Chambers approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at that time.  Plaintiff Gary Chambers approached the podium during discussion of Item 76. The topic of Item 76 was:<br><br>Amend the 2017 allotment of positions for the City of Baton Rouge and Parish of East Baton Rouge, adopted by Ordinance #16404, dated 12/13/2016, so as to change the allotment of the Office of Community Development as follows, effective September 30, 2017, contingent upon execution of interagency professional service contracts. | Note that Mr. Chambers has identified his race as black (Tr., p. 194, lines 16-17) and he talked off topic, was given three warning, heed the third warning and then sat down. |
| 83. | Plaintiff Gary Chambers began his comment with "I promise not to get back up on the next one because it's clear y'all gonna do this anyway." He then began to speak about the allocation of resources and the state of affairs in Baton Rouge. Defendant Scott Wilson questioned the relevancy to Item 76, "It may be, but I'm just saying these are about the job where we're | This may not really be a warning to Mr. Chambers that his comments were off topic because the Mayor Pro Tempore said "It may be...[relevant]."  See P-23 at 4:50. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | adding and deleting. The contract is approved. This has been done. Okay." |  |
| 84. | Plaintiff Gary Chambers continued, "We continue to give the money to BRAF and BRAC and look we have seventy plus murders in Baton Rouge right now…" Scott Wilson warned Plaintiff Gary Chambers a second time, "that's not relevant to Item 76."   Plaintiff Gary Chambers responded, "it is relevant to the money that you use in this council with our tax dollars…" After again allowing Mr. Chambers to continue, Scott Wilson warns him a third time and then orders him to sit down, "I'll ask you to please either talk about the – alright, you need to sit down." But Defendant Scott Wilson allowed Plaintiff Gary Chambers to remain at the podium and finish his statement before stating, "You need to sit down." After this fourth warning and second command to sit down, Plaintiff Gary Chambers left the podium and returned to his seat. | These are not a second and third warning but really a first and second warning because the Mayor Pro Tempore agreed the first time that "It may be [relevant]...".  See P-23 at 4:50. Nonetheless whether it was a third or a fourth warning, Mr. Chambers did sit down and did not have to be removed because he voluntarily complied. |
| 85. | Plaintiff Gary Chambers was speaking off the agenda item topic.   But he was not criticizing the Baton Rouge | Most off topic discussions do not mention Alton Sterling or the police department.  When Mr. Chambers was speaking off topic on May 10, 2017 on Agenda Item 51, his first off topic comments involved |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | Police Department or mentioning Alton Sterling. | robbing him os his constitutional rights and his later off topic commented that got him ordered out involved "the police department who you are responsible for". It was only subsequent to being ordered out that Mr. Chambers mentioned "Alton Sterling was murdered on July the 5th." When Mr. McClanahan was speaking off topic on Agenda Item 50 on May 10, 2017, his first off topic comments also involved his constitutional rights and his last off topic comments were that "Alton Sterling was killed and you all continue to do business." |
| | | What makes these not comparators with the September 27, 2017 off topic comments of Gary Chambers was the fact that Gary Chambers was calm and measured in his September 27, 2017 comments while his behavior on May 10, 2017, was the worst Jonny Dunnam had ever seen him behave. (Tr., p. 165, lines 8-12) and that he continued to talk after being ordered taken out, called the Mayor Pro Tempore a coward three times, fought with Jonny Dunnam, refused removal and all around acted so badly that he was arrested for disturbing the peace and resisting arrest. Likewise, Mr. McClanahan screamed out "Not right" after being ordered "taken out" and had his NAACP members in the audience applauding and chanting "NO JUSTICE. NO PEACE." Thus the substance of the off topic discussion does nothing to make these situations comparators. |
| 86. | Defendant Scott Wilson explicitly understood Plaintiff Gary Chambers to be speaking off-topic, and four times directed him to speak on topic or sit down. | The direction to speak on topic was either three or four times depending on how you consider the first interchange. The mention of sit down definitely did not occur four times. |
| 87. | But even though Plaintiff Gary Chambers refused to speak on-topic, Defendant Scott Wilson allowed him to | Gary Chambers behavior on September 27, 20217 was calm and measured, his comments were sincere even if off topic. Gary Chambers did sit down the last time he was told to do so, there was no need to have him |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | speak for more than a minute and a half. At no point did Defendant Scott Wilson direct that Plaintiff Gary Chambers be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Plaintiff Gary Chambers be taken out of the room by police. | removed from the podium, he voluntarily removed himself.  On September 27, 2017, Gary Chambers did not intend to prevent the Metro Council from doing business as usual as he and Mr. McClanahan intended on May 10, 2017.  These situations are not comparators by any standard. |
| iii. | On June 14, 2017, Scott Wilson allowed Janice Weber to speak over him and to finish delivering her comment despite verbally recognizing that Mrs. Weber was off-topic. | On June 14, 2017, should that situation be relevant for any purpose, Janice Webber was warned immediately by the Mayor Pro Tempore that her comments were off topic.  Ms. Weber responded "Okay" and then asked an on topic question regarding the Cooperative Endeavor Agreement.  The Mayor Pro Tempore responded that he would get an answer to her question and Janice Weber sat down. |
| 90. | Mrs. Weber began her comment with, "I did pay attention to the millage information when it came out and I went to the polls and I voted." Mrs. Weber keeps speaking on the millage for 20 seconds before Defendant Scott Wilson gently interrupts Mrs. Weber and explains the millage is the next item, "Don't let me interrupt you but this is for the CEA. The next item will be for the tax, so if you wanna talk on the tax…" Mrs. Weber begins talking over Mr. Wilson and asks a question about the CEA, and Mr. Wilson allows her to finish. | This is not a complete or accurate representation of what occurred during Janice Weber's public comments on Agenda Item 66 on June 14, 2017.  The following is what actually occurred.  See P-24 from 1:58 to 3:07:<br><br>Janice Weber starts at 1:58 on P-24, saying that she did know that there was an opportunity for the millage to be turned over after the vote occurred; and was warned immediately by the Mayor Pro Tempore that she was off topic.  Ms. Weber responded "Okay" (2:34) and then asked a question on topic regarding the Cooperative Endeavor Agreement.  The Mayor Pro Tempore responds that he will get an answer to her question and Janice Webber sits down. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| 91. | Mrs. Weber was speaking off the agenda item topic. But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | Ms. Weber was warned immediately that she was off topic, complied with the warning, in fact said "Okay" (2:34); asked an on topic question, was told the Mayor Pro Tempore would get an answer for her, and Janice Weber immediately sat down. Also not a valid comparator. |
| 92. | Defendant Scott Wilson explicitly understood Mrs. Weber to be speaking off-topic, but politely told Mrs. Weber he did not mean to interrupt her comment on the tax and merely suggested that the tax would be the next item for comment. | There was no need to remove Ms. Weber. She was warned once, complied with the warning, asked an on topic question, and then sat down. |
| 93. | Even though Mrs. Weber spoke over Defendant Scott Wilson, he allowed her to keep speaking. At no point did Defendant Scott Wilson direct that Mrs. Weber be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Mrs. Weber be taken out of the room by police. | What Ms. Weber said, when Plaintiffs claim that she spoke over the Mayor Pro Tempore, was "Okay" to the Mayor Pro Tempore's comment that the next item concerned the tax. After she said "okay", her question that followed was on topic, she was told the Mayor Pro Tempore would get an answer to her question for her, and she sat down. There was no reason at all to order Ms. Weber removed form the podium or anywhere else. |
| iv. | On June 14, 2017, after Scott Wilson warned Janice Weber that she was speaking off topic, Mr. Wilson allowed the next speaker, Dan Weber, to speak on the same topic as Janice Weber for nearly a full minute without any warning. | The Mayor Pro Tempore did tell Dan Weber that the Item being discussed was really about the Cooperative Endeavor Agreement and the next item concerned the tax. Mr. Weber then said thank you and left the podium. Not a valid comparator. |
| 96. | Dan Weber began his comment with, "My concern if we sign this agreement that | The following is a more accurate representation of Dan Weber's public comments: |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | we have responsible people running the council, and if you go into the numbers…" Defendant Scott Wilson allows Mr. Weber to speak for nearly a full minute about salaries, wages, travel, and amounts spent on food before interrupting him, "I'm sorry but this is really about the CEA. Our next item will be about the tax. If you wanna bring up about those numbers. You can come back… Ladies and gentlemen this is a public hearing I want you to speak on this item." | Dan Weber's comments begin at 3:17 on P-24 on the same topic as discussed by Janice Weber. Dan Weber expressed what seems to be an on topic concern, that if the cooperative endeavor agreement is signed, would there be responsible people running the Council on Aging? Mr. Weber goes on to relate specific concerns about expenditures of the Council on Aging and is warned by the Mayor Pro Tempore that the topic is really about the Cooperative Endeavor Agreement and that the next item is about the tax and that Mr. Weber can discuss those expenditures then. Mr. Weber then says "thank you" and leaves the podium. |
| 97. | Mr. Weber was speaking off the agenda item topic. But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | Even should Mr. Weber's comments been off topic, he heeded the first warning and said "thank you" and left the podium. Not a valid comparator. |
| 98. | Defendant Scott Wilson explicitly understood Mr. Weber to be speaking off-topic, but apologized for interrupting Mr. Weber's comment and directed Mr. Weber to come back to speak on the next item. | True, the Mayor Pro Tempore considered Mr. Weber's comments off topic and warned Mr. Weber that the topic was really about the Cooperative Endeavor Agreement and that the next item was about the tax, and that Mr. Weber could discuss those expenditures then. Mr. Weber then said thank you and then left the podium. |
| 99. | Even though, just before Mr. Weber approaching the podium, Defendant Scott Wilson had just explained that such comments should be directed to the next agenda item, Scott Wilson allowed Mr. Weber to speak off-topic | There was no need to remove Mr. Weber. He heeded the first warning even should his comments have been off topic. Not a valid comparator. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | for nearly a full minute. At no point did Defendant Scott Wilson direct that Mr. Weber be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Mr. Weber be taken out of the room by police. | |
| v. | On August 23, 2017 Scott Wilson allowed Don Ortega to speak for nearly three minutes despite verbally recognizing that Mr. Ortega was off-topic. | On August 17, 2017, on Agenda Item 139, expressing the opposition of the Metropolitan Council to the proposal by BREC staff to move the Baton Rouge Zoo from its location on Thomas Road in East Baton Rouge Parish, Don Ortega was warned by the Mayor Pro Tempore twice that "we are talking about the zoo." After the second warning, Mr. Ortega's comments were more directed to the zoo and the specifics of the BREC proposal. |
| 100. | At a Metro-Council meeting on August 23, 2017, community-member Don Ortega approached the podium to provide public comment. Defendant Scott Wilson was presiding over the meeting at the time. Mr. Ortega approached the podium during discussion of Item 139. The topic of Item 139 was:<br><br>Expressing the opposition of the Metropolitan Council to the proposal by BREC staff to move the Baton Rouge Zoo from its location on Thomas Road in East Baton Rouge Parish. By Councilwoman Banks | It should more correctly read that "Mr. Ortega approached the podium to provide public comments on Item 139." The use of "during the discussion of Item 139" is confusing, it makes it appear that Mr. Ortega was interrupting another party's discussion. |

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | Reason for emergency: The BREC Commission meets on August 24th to consider an item that would allow the BREC Superintendent to explore properties as a new site for the zoo. In order for this resolution to be forwarded to the Commission before its vote, it must be voted on by the Metro Council on August 23rd. |  |
| 102. | Don Ortega began his comment with, "I come to you today hopefully this is a simple unanimous vote sending a message to BREC…" Mr. Ortega then airs particular grievances he has as a former employee of BREC. Defendant Scott Wilson allowed Mr. Ortega to speak on his personal experiences with BREC for 43 seconds before interrupting to request that Mr. Ortega "talk about the item of the zoo." After Mr. Wilson warns Mr. Ortega a second time, Mr. Ortega is allowed to continue for a full minute and a half, "they've already decided what they want to do with the zoo…" Mr. Ortega keeps complaining about BREC's "history of doing things" and tangentially mentions the zoo. | Defendant views the Don Ortega comments differently than Plaintiffs do. Defendant's review of P-25 starting at 0:59 Defendant understands Mr. Ortega's comments in the following light.<br><br>Mr. Ortega's comments begin at 59 seconds on P-25.<br><br>While the Mayor Pro Tempore warned Mr. Ortega twice, at 1:52 and at 2:12 that "we are talking about the zoo", it does appear Mr. Ortega was taking about the BREC proposal although perhaps inartfully.<br><br>Nonetheless after the second warning, Mr. Ortega's comments were more directed to the zoo and the specifics of the BREC proposal.<br><br>Since Mr. Ortega heeded the Mayor Pro Tempore's second warning, there was no need to order his removal. Likewise, no valid comparator here. |
| 103. | Mr. Ortega was speaking off | The Mayor Pro Tempore did consider that Mr. Ortega |

-48-

|  | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
|  | the agenda item topic. But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | was speaking off topic when he gave the first and second warnings. |
| 104. | Defendant Scott Wilson explicitly understood Mr. Ortega to be speaking off-topic and gave Mr. Ortega two warnings over the course of two minutes and fifty-one seconds that Mr. Ortega was at the podium. | True, Mr. Ortega was warned twice but after the second warning, Mr. Ortega's comments were more directed to the zoo and the specifics of the BREC proposal, an on topic discussion. |
| 105. | Even though Defendant Scott Wilson gave Mr. Ortega two warnings, he allowed Mr. Ortega to continue airing his grievances regarding BREC, unrelated to the location of the zoo, for a full minute and a half even after the second warning. At no point did Defendant Scott Wilson direct that Mr. Ortega be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Mr. Ortega be taken out of the room by police. | Since Mr. Ortega heeded the Mayor Pro Tempore's second warning, there was no need to order his removal. |
| vi. | On August 23, 2017 Scott Wilson allowed Russell Kelly to speak for an additional 25 seconds after verbally recognizing that Mr. Kelly was off-topic. | See disputes to Nos. 108-111 below. |
| 108. | Russell Kelly began his comment with, "What I wanna speak about is the | Defendant characterizes the Russell Kelly public comments on August 23, 2017, on Agenda Item 139, "Expressing the support of the Metropolitan Council |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | efficiency of this council on dealing with these types of matters. Is there any type of training? Are y'all just put together? Or do y'all actually do any type of team training to help y'all understand and work with each other? Let me tell ya a bit about team training…." Defendant Scott Wilson allowed Mr. Kelly to speak about team training for about 22 seconds before directing Mr. Kelly to speak on topic, "hold on we're talking really about the attorney general…" After this interruption, Scott Wilson allows Mr. Kelly to keep talking about team training for about another 25 seconds. | for the investigation by the Louisiana Department of Justice into the July 5, 2016 shooting of Alton Sterling to be conducted and concluded as expeditiously as possible," as follows: |
| | | Russell Kelly begins off topic at 7:20 by talking about the efficiency of this Council and asks whether the Council does do team training. Mr. Kelly is warned by the Mayor Pro Tempore that "we're talking really about the Attorney General, that's what it's about." *7:52* Kelly then asks "The attorney general?" and the Mayor Pro Tempore responds "That's correct." Mr. Kelly then comments that he is sure the Attorney General trains his team; and that "ya'll" need to learn to work better together to help deal with situations like this much more efficiently", concluding at 8:15. The Mayor Pro Tempore responds "Thanks Russell" and does not ask that Russell Kelly be excluded. While twice off topic, Mr. Kelly did not need and was not given a second warning like Mr. McClanahan was because he sat down and did not continue talking. Not a valid comparator. |
| 109. | Mr. Kelly was speaking off the agenda item topic.157 But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | This is a ridiculous attempt at a comparator here. Should Mr. Kelly have been criticizing the Baton Rouge Police Department or mentioning Alton Sterling, those matters would be on topic for public comments on Agenda Item 139 on August 23, 2017. |
| 110. | Defendant Scott Wilson explicitly understood Mr. Kelly to be speaking off-topic and gave Mr. Kelly one verbal warning while Mr. Kelly was at the podium. | While twice off topic, Mr. Kelly did not need to be given a second warning like Mr. McClanahan was, because he sat down and did not continue talking. |
| 111. | Even though Defendant Scott Wilson warned Mr. Kelly, he allowed Mr. Kelly to keep speaking about team training | It is true that Mr. Kelly was twice off topic, but there was no need to give him a second warning because he eventually sat down and did not continue talking. |

| | PLAINTIFFS' PROPOSED FINDINGS OF FACT | DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT |
|---|---|---|
| | after this warning. At no point did Defendant Scott Wilson direct that Mr. Kelly be taken away from the podium by police. At no point did Defendant Scott Wilson direct that Mr. Kelly be taken out of the room by police. | |
| vii. | On May 14, 2014, Jim Mora was allowed to read from a Dr. Suess book for two minutes and was not given a single warning. | This event occurred on May 14, 2014, an isolated incident, three years before the events at issue in this litigation, cannot as lone prior act, establish pattern or custom.

These particular public comments can be considered nothing more than a single act of aberrant behavior. |
| 112. | At a Metro-Council meeting on May 14, 2014, community-member Jim Mora approached the podium to provide public comment. Mayor Pro-Tempore Chandler Loupe was presiding over the meeting at the time. Mr. Mora approached the podium during discussion of Items 13Y & 13Z. The topic of Item 13Y & 13Z was:

Y. Providing for the extension of the city limits of the City of Baton Rouge and the inclusion of the area described in the petition for annexation submitted by Our Lady of the Lake Hospital, Inc., Consisting of the Following Parcels . . .
Z. Providing for the extension of the city limits of the City | I guess Jim Mora was a "community member."  I just wonder why Plaintiffs add things like this that are not in evidence. |

|  | **PLAINTIFFS' PROPOSED FINDINGS OF FACT** | **DEFENDANT'S REBUTTAL TO PLAINTIFFS' PROPOSED FINDINGS OF FACT** |
|---|---|---|
|  | of Baton Rouge and the inclusion of the area described in the petition for annexation submitted by Mall of Louisiana, LLC; Mall of Louisiana Land, LLC; General Health System, Baton Rouge General Medical Center; and Level Ventures, LLC, consisting of the following parcels . . . . |  |
| 115. | Mr. Mora was speaking off the agenda item topic.  But he was not criticizing the Baton Rouge Police Department or mentioning Alton Sterling. | No dispute as to the first sentence.  Question as to relevance of the second sentence.  These are truly not valid comparators. |

II.    **Defendant's Rebuttal of Plaintiffs' Conclusions of Law (Doc 198-1) and "Plaintiff's Rebuttal to Defendant's Proposed Findings of Fact and Conclusions of Law and Post Trial Brief" (Doc 200)**

Defendant files this reply/rebuttal to the Conclusions of Law as reply/rebuttal to the Conclusions of Law contained in Plaintiffs' filing of May 27, 2021 (Doc 198-1) as well as a reply/rebuttal to "Plaintiffs' Rebuttal to Defendant's Proposed Findings of Fact and Conclusions of Law and Post Trial Brief" (Doc 200) filed on June 5, 2021 as Doc 200. In so doing, Defendant adopts and incorporates herein by reference the "Post Trial Brief Submitted By Defendant, LaMont Cole, in His Official Capacity as Mayor Pro Tempore of City of Baton Rouge, Parish of East Baton Rouge" filed May 25, 2021 as Doc 197. Defense counsel erroneously assumed that post trial briefing was due that date; and, in the interest of brevity here, adopts rather than repeating those arguments.

**Jurisdiction**

Defendant does contest the jurisdiction of the Court. In Motion To Dismiss (Doc 121) filed by Defendant, Defendant claimed essentially that the claims against him were moot (by virtue of the judgment rendered in Doc 105) dismissing all claims against the City of Baton Rouge/Parish of East Baton Rouge, and that this Court lacked subject matter jurisdiction over this case. By ruling and order dated January 28, 2021, the motion to dismiss was denied by this Court (Doc 159.) Defendant appealed (Doc 160) and that interlocutory appeal is pending in the Fifth Circuit Court of Appeal (Case No. 21-30106).

**Law and Procedure Applicable to Public Comments Before
the Baton Rouge Metropolitan Council**

The statutes and ordinances applied at the May 10, 2017, and at all Metro Council meetings regarding public comments, are found in the following:

-53-

§ 4.05 of the Plan of Government for the City of Baton Rouge/Parish of East Baton Rouge requires the Mayor Pro Tempore to preside over meetings of the Metropolitan Council with the right to speak and vote. Further, § 1:7(a) of the Code of Ordinances permits members of the public to speak "on any item included in the agenda"; and also provided that "Members of the public who wish to speak, must request permission to do so when such time is announced by the Chairman."

In fact, Code of Ordinance §1.7(a) provides in its entirety as follows:

> In view of the many items appearing on the agenda, each councilman will be allowed a maximum of five (5) minutes to express his views on any one (1) subject without interruption from the other members upon initial consideration and five (5) minutes for rebuttal. No member will speak until recognized by the chair. <u>In compliance with R.S. 42:5(D), members of the public will be allowed to speak on any item included on the agenda. Members of the public who wish to speak, must request permission to do so when such time is announced by the chairman.</u> The chairman will allocate time to all nonmembers of the council speaking before the council. Members of the public who wish to submit public comments electronically prior to regular meetings of the council may do so using the mechanism provided by the council.

The City/Parish, its Metropolitan Council, and the chairman of that Council, are required to abide by state law, including Louisiana's Open Meetings Law. Baton Rouge Code of Ordinances, § 1.7(a), also makes explicit reference to La. R.S. 42:5(D), a component of the Open Meetings Law (since redesignated as La. R.S. 42:14(D)), which provides in relevant part:

> §14.  Meetings of public bodies to be open to the public
> *   *   *
> D.  Except school boards, which shall be subject to R.S. 42:15, each public body conducting a meeting which is subject to the notice requirements of R.S. 42:19(A) **shall allow a public comment period** at any point in the meeting prior to action on an agenda item upon which a vote is to be taken. **The governing body may adopt reasonable rules and restrictions regarding such comment period**. (emphasis added)

Note that state law, the Open Meeting Law, at La. R.S. 42:14(D), gives "the governing body" of a public body conducting a meeting subject to the notice requirements of La. R.S. 42:19(A), the

-54-

authority to adopt reasonable rules and regulations regarding the public comment period at its meetings.  The City of Baton Rouge/Parish of East Baton Rouge Metropolitan Council is the governing body of a "public body conducting a meeting which is subject to the notice requirements of R.S. 42:19(A).  See "public body" defined at La. R.S. 42:13A(3); and see La. R.S. 42:19 imposing its notice requirements on all public bodies except the legislature and its committees.  Thus the City of Baton Rouge/Parish of East Baton Rouge Metropolitan Council is the beneficiary of the authority granted by La. R.S. 42:14(D), the Metro Council is authorized by state law to adopt reasonable rules and regulations regarding the public comment period.  No showing has been made that this authority has ever been delegated to the Metro Council either to the Mayor Pro Tempore or to any other individual or entity.

There is evidence of certain rules and regulations adopted by the Baton Rouge Metropolitan Council that are reasonable and that apply to public comments at Council meetings.  For instance, the "three minute rule," limiting the time for public comments on an Agenda Item to three minutes, which rule was not disputed by anyone.  Another reasonable rule adopted by the Council and proven at trial was that public comments could be conducted in one of two ways, by the use of public comment cards (no use of those in evidence on May 10, 2017) and by the individual wishing to make public comments to approach the podium to do so only after the Mayor Pro Tempore asked or announced "anyone wish to make comments on this item."  These procedures comply with the specific provisions in the Code of Ordinances contained in §1.7(a) that "Members of the public who wish to speak, must request permission to do so when such time is announced by the chairman."

Even plaintiff Eugene Collins was aware of these procedures although he tried to indicate that the announcement only had to be made once for a particular item and not prior to the time an

individual would be allowed to approach for comments.  D-2, D-3 and D-5, the videos of the May 10, 2017, meeting public comment periods on Agenda Items 50, 51 and 60 show that Mr. Collins' purported understanding of that particular rule is not correct.  At least two individuals who violated that rule were removed from the podium area after the Mayor Pro Tempore asked for their removal (the "unidentified female" and Eugene Collins, both shown on D-5 during the public comment period for Agenda Item 60).

Several Attorney General opinions have discussed the Open Meetings Law and the Metropolitan Council has chosen to enforce those interpretations of the law during its public comment periods, such as limiting public comments to on topic comments only, only comments that relate to the particular item being discussed, with other comments considered "off topic".  See, for instance, La. Atty. Gen. Op. No. 01-367, 2002 WL 242016:

> In answer to your second question, it is the opinion of this office that the intent of this statute is to afford the public a right to comment on issues being discussed at each particular meeting. **It is not intended to give the public a chance to address the council on issues unrelated to those being discussed at the meeting**. Items subject to public comment include those items found on the agenda and items added to the agenda by the board during the meeting. Therefore, the public comment requirement of La. R.S. 42:5(D), generally applies to agenda items only (emphasis added).

Although La. R.S. 42:14 clearly provides for public comment, this right has been interpreted to apply only to a public body's consideration and deliberation of agenda items. See also La. Atty. Gen. Op. No. 08-0325, 2009 WL 685303.

As opined by the Attorney General, there are hazards involved in taking up items not properly noticed on the Agenda, because doing so risks the type of "subterfuge" that may defeat the purposes of the Open Meetings Law. See, La. Atty. Gen. Op. No. 08-0325, 2009 WL 685303.

Finally, while the Open Meetings Law broadly provides for members of the public to attend

all public meetings, there are exceptions. Per La. R.S. 42:17(C):

> C.  The provisions of this Chapter shall not prohibit the removal of any person or persons who **willfully disrupt** a meeting to the extent that orderly conduct of the meeting is seriously compromised.
> (emphasis added)

The Louisiana Attorney General, in response to a request for clarification from Mr. John Diasselliss, Asst. District Attorney for St. John the Baptist Parish, clarified the right of the Chairman of a public meeting to order the removal of an individual who refuses to comply with the Chair's orders:

> Considering this provision, it is the provision of this office that a person or person, even an appointed or elected official, who willfully disrupt a meeting to an extent that orderly conduct of the meeting is seriously compromised may be removed, by lawful force if necessary. Under these circumstances, **the open meetings law is not violated by removing the disruptive person** or official from the meeting. (emphasis added) See, La. Atty. Gen. Op. No. 91-19, 1991 WL 57273.

And at the beginning of the Metro Council meeting on May 10, 2017, the Mayor Pro Tempore made an announcement that disruption or interference with the meeting would result in the removal of the individual causing the disruption.  See D-1 at 2:19 where the Mayor Pro Tempore states:

> Ladies and Gentlemen, I'd like to make an announcement.  (Time 2:19) <u>If any disruption or interfering with the meeting will be removed by any individual that disrupt the meeting they will be removed.</u>  (Emphasis added.)

Mayor Pro Tempore Wilson, as chair of the Metropolitan Council meeting on May 10, 2017, had an extraordinary obligation to ensure the meeting was conducted in accordance with City and Parish Ordinances, the Plan of Government, and the Open Meetings Law. The evidence shows that he did so on May 10, 2017.

**Each Plaintiff was Removed From The Podium for Violating a Reasonable Rule**

**and Restriction Either Provided By law or Adopted By The Governing Body,
the City of Baton Rouge/Parish of East Baton Rouge Metropolitan Council**

## Plaintiff Michael McClanahan

For a complete discussion of Michael McClanahan's actions during his public comments on Agenda Item 50 at the May 10, 2017 Metropolitan Council meeting, see Doc 196, Defendant's Post Trial Findings of Fact at Nos. 77-111.  These findings make it clear that Mr. McClanahan was speaking off topic, in violation of a provision of the Open Meetings Law, that he was warned <u>three times</u> and asked to limit his comments to "talk on the item."  Mr. McClanahan ignored all three warnings and continued to talk off topic, as was his plan to do all along.  His continuing to speak off topic after being warned is a reasonable restriction.  As the Attorney General opined in La. Atty. Gen. Op. No. 08-0325, 2009 WL 685303, there are hazards involved in taking up topics not on the Agenda, because doing do risks the type of "subterfuge" that may defeat the purpose of the Open Meeting Law.  Mr. McClanahan's continuing refusal to comply with the Mayor Pro Tempore's orders to "talk on the topic" and to not speak off topic about this constitutional rights off topic about "Alton Sterling was killed and you all continue to do business as usual", while yelling NOT RIGHT, was disruptive, did seriously compromise the orderly conduct of the meeting, and did have the potential to create a subterfuge to defeat the purpose of the Open Meetings Law (such as by allowing discussion and even perhaps action on items not noticed on the agenda and which interested members of the public may not have been informed).  Further disruptive of the meeting was the applause and chanting of audience members who were there to support Mr. McClanahan's actions and had seen the NAACP social media post.

The Fifth Circuit held in *Heaney v. Roberts*, 846 F.3d 794, 802, that a topic limitation such

as here applied with respect to Mr. McClanahan is a <u>reasonable restriction</u> which does not result in a constitutional violation.  "If Heaney were to have violated a reasonable restriction, such as a topic or time constraint, there would be no constitutional violation."  Mr. McClanahan's comments about constitutional rights and Alton Sterling were undisputably off topic for the agenda item to authorize settlement of a sewer damage claim.  That being the case, the jurisprudence holds that "No violation occurs when the same result would have occurred in the absence of any illegitimate motive."  See *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017), *Crawford - El v. Britton*, 523 U.S. 574, 593 (1998); *Lowery v. Jefferson City Bd. of Educ.*, 586 F.3d 435 (6th Cir. 2009).  That being the case, no further inquiry is required on Mr. McClanahan's claim of viewpoint discrimination, as he cannot prevail since he violated a reasonable restriction of being off topic, and the same result would have occurred whether or not there was an illegitimate motive on anyone's part.

**Plaintiff Gary Chambers**

For a complete discussion of Gary Chambers' actions during and after his public comments on Agenda Item 51 at the May 10, 2017 Metro Council meeting, see Doc 196, Defendant's Post Trial Findings of Facts at Nos. 112-124 and 126-134.  These findings make it clear that, like Mr. McClanahan's comments, Mr. Chambers' comments were off topic.  Mr. Chambers so admits.  His initial comments accused the Metro Council of "going to rob me of my constitutional rights", he ignored the Mayor Pro Tempore's first warning to "speak on the item or you can leave" but he continued to talk, about the police department (completely off topic for an agenda item to authorize the settlement of a sewer damage claim) and it was asked that Mr. Chambers be taken out.  But Mr. Chambers refused to leave, held on to the podium forcefully, got another warning, mentioned another off topic item of "Alton Sterling" and when the Mayor Pro Tempore tried to ask the sergeant at arms

to take Mr. Chambers away, Mr. Chambers called the Mayor Pro Tempore a coward three times, chanted "We have a right to be here.", continuing to holler and wrangle and all around acted so bad (contrary to his usual behavior) that he was arrested in the hall to the outside of the room for resisting arrest and disturbing the peace.  Like Mr. McClanahan, Mr. Chambers violated the off topic restriction, a reasonable restriction that cannot cause a constitutional violation of viewpoint discrimination. *Heaney v. Roberts*, p. 802.  The same result would have occurred in the absence of any improper motive on anyone's part. *Heaney v. Roberts*, *Lowery v. Jefferson City Bd. Of Educ.,* and *Crawford-El v. Britton*, all *supra.*

Mr. Chambers behavior from the first accusation he made at the podium through his refusal to leave the podium, refusal to heed warnings to stay on topic, continuing to talk and even calling the Mayor Pro Tempore a coward three times were all willfully disruptive so as to seriously compromise the orderly conduct of the council meeting.

No further inquiry is required into Mr. Chambers' claim of viewpoint discrimination as he cannot prevail.  He violated a reasonable restriction by being off topic from his first comment to this last, and the same result would have occurred whether or not there was an illegitimate motive on the part of anyone.

**Plaintiff Eugene Collins**

For a complete discussion of Eugene Collins' actions during his attempt at public comments on Agenda Item 60 at the May 10, 2017 Metro Council meeting, see Doc 196, Defendant's Post Trial Findings of Fact at Nos. 135-180.  While these specific findings include not only Eugene Collins but all individuals attempting to comment or commenting on Agenda Item 60 on May 10, 2017, all should be read in context to see how disruptive and violative of established public comment rules,

-60-

regulations and procedure Eugene Collins' actions were.

We cannot hear what Mr. Collins said when he approached the podium, probably because the microphone was off as he was there before it was time for him or any other person to make a public comment on Agenda Item 60.  All Mr. Collins knows is that he said the one word, "On."  But we do know that Mr. Collins, like the "unidentified female" some time before him, entered the podium area at an inappropriate time for them to do so, according to established rules, regulations and procedures for making public comments (of which Mr. Collins was aware) that a new party may not approach the podium to comment until the Mayor Pro Tempore said "anyone wish to comment on this item", or as Code of Ordinance §1.7(a) requires before requesting permission to do so when such time is announced by the Chairman.   Both the "unidentified female" and Mr. Collins approached before the Mayor Pro Tempore's announcement and while another speaker was still in the area.  For the unidentified female, the previous speaker was still speaking, and for Mr. Collins, the previous speaker had not cleared the podium area before he got his hands around the podium and said "On".  At that point the Mayor Pro Tempore said "Please take him out" and Mr. Collins was removed from the podium.  He too had violated a reasonable restriction adopted by Metro Council to ensure an orderly process for public comments, he grabbed the podium and started to speak before it was time to do so.  The process must be orderly and the rules for procedure and order followed. What if the 'unidentified female" and Mr. Collins decided to violate that reasonable restriction at the same time?  What if others had joined them?

Mr. Collins has no claims for viewpoint discrimination inasmuch as the Mayor Pro Tempore nor anyone heard what he said.  He himself does not know what he said except for the one word "On".  And it was not what he said that got him removed but how he violated council, rules,

regulations and  procedures to get there.  Such are required to preserve the orderly process of the

Metro Council meetings and to prevent chaos.

Mr. Collins violated a reasonable restriction, as reasonable a restriction as the off topic

limitation or the time limitation.  Because he was removed for violating a reasonable restriction,

there is no constitutional violation to address.  *Heaney v. Roberts*, p. 802.

And his actions were disruptive and did seriously compromise the orderly conduct of the

Metro Council meeting, the orderly conduct the rule he violated was designed to prevent.

### The Mayor Pro Tempore Is Not A Policymaking Official For Purposes of *Monell* Liability

The United States Supreme Court has stated that "the identification of policy making officials

is a question of state law."  *City of St. Louis v. Praprotnik*, 108 S.Ct. 915, 924 (1988):

> "Authority to make municipal policy may be granted directly by a legislative
> enactment or may be delegated by an official who possesses such authority, and of
> course, whether an official had final policymaking authority is a question of state
> law."  *Pembauer v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1212, 1300.

One can be confident that state law (which may include valid local ordinances and

regulations) will always direct a court to some official or body that has the responsibility for making

law or setting policy in any given area of local government business.  *City of St. Louis v. Praprotnik*,

108 S.Ct. at 925.  If the mere exercise of discretion by an employee would give rise to a

constitutional violation, the result would be indistinguishable from *respondeat superior* liability

(which does not exist in actions under §1983.  *City of St. Louis v. Praprotnik*, 108 S.Ct. at 926.

The fact that a particular official - even a policy-making official - has discretion in the

exercise of particular functions does not, without more, give rise to municipal liability based on

exercise of that discretion.  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 482 (1986), *citing*

*Oklahoma City v. Tuttle*, 471 U.S., at 822-824, 105 S.Ct., at 2435-2436. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable, *Penbauer*, 475 U.S. at 482-483. Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policy making authority is a question of state law. *Pembauer*, 475 U.S. at 483.

So what does Louisiana law say about this? See La. R.S. 42:14:

§14.  Meetings of public bodies to be open to the public
* * *
D. Except school boards, which shall be subject to R.S. 42:15, each public body conducting a meeting which is subject to the notice requirements of R.S. 42:19(A) shall allow a public comment period at any point in the meeting prior to action on an agenda item upon which a vote is to be taken. The governing body may adopt reasonable rules and restrictions regarding such comment period.

So in this case, the City of Baton Rouge/Parish of East Baton Rouge Metropolitan Council is a governing body under La. R.S. 42:14D that is authorized by state law to "adopt reasonable rules and restrictions regarding such comment period."

Thus state law provides that the policymaker in this case is the Metropolitan Council, not its Mayor Pro Tempore. And there is no showing that the Council has delegated that authority to the Mayor Pro Tempore or anyone else.

Plaintiffs' theory that the Mayor Pro Tempore is the policymaker in this case for purposes of *Monell* is just not correct.

In this regard, plaintiffs' Conclusions of Law Nos. 123-128 in Doc 198-1 are not correct conclusions of law. (This does not mean that Defendant does not dispute other of Plaintiffs' Conclusions of Law. It is just that Defendant believes that this particular dispute will result in denial

of plaintiffs requests for relief and dismissal of the entire case.)  The authority to make rules and regulations regarding public comments belong only to the Metropolitan Council and was not delegated to the Mayor Pro Tempore or anyone else.  *See* La. R.S. 42:14D, "The governing body may adopt reasonable rules and restrictions regarding such comment period."  The fact that the Mayor Pro Tempore has discretion in the public comment policy does not give rise to municipal liability based on the exercise of that discretion.  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 482 (1986). To so hold would impose liability on a municipality under the doctrine of *respondeat superior* which *Monell* does not permit.

### Plaintiffs Have Failed To Establish Any Basis For Liability Under *Monell*

In addition to not proving any official policy of the Council and not proving a persistent or widespread practice which, although not officially adopted, is so widespread and common that it fairly represents municipal policy, and that either caused a constitutional violation for any of plaintiffs' constitutional claims (which plaintiffs admit they have not done, see Doc 200), plaintiffs have failed to establish that the Mayor Pro Tempore is a "policymaker" under *Monell* so as to cause his actions to impose municipal liability for any constitutional violations alleged in this case.  Failing such, there is no need to go on to consider the alleged constitutional violations of either the First or Fourteenth Amendment.  For instance disparate treatment on the basis of race is not proven (even if there were *Monell* liability) as only the plaintiffs' race is identified on the record, not the race of anyone else.  It is also not shown that race was the basis for any disparate treatment, even if disparate treatment had been shown.  And with respect to Colby Weaver, who was removed for talking off topic, the delay, if any, in her removal is explained by the testimony of Jonny Dunnam.  Also,

defendant believes that prior restraint is not pled in the Complaint.  But none of this matters, as whether or not there may have been a constitutional violation need not be considered, where no basis for municipal liability under *Monell* has been established.

## **CONCLUSION**

It is respectfully submitted that this case should be dismissed with prejudice for failure of proof.  Defendant further requests all full, general and equitable relief.

Respectfully Submitted:

s/Celia R. Cangelosi
CELIA R. CANGELOSI
Bar Roll No. 12140
5551 Corporate Blvd., Suite 101
Baton Rouge, LA 70808
Telephone: (225) 231-1453
Facsimile: (225) 231-1456
Email:  celiacan@bellsouth.net

*Attorney for Defendant, LaMont Cole, in his official capacity as Mayor Pro Tempore of the City of Baton Rouge, Parish of East Baton Rouge*

1.The items in regular or plain print are unofficial transcriptions of what was said on the video. The items in italics are a description by the undersigned of what was occurring on the video between or at the time of the transcribed comments.  This is the same for all other transcriptions of the video topics in evidence found in these Findings of Facts.

2.Note that Doc 196, regarding Defendant Finding of Fact No. 176, the testimony cite should be corrected there to read "Collins testimony, Tr., p. 91, lines 7-15).